IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | CHAPTER 11 |
| MADAWASKA HARDSCAPE | ) | |
| PRODUCTS, INC., | ) | Case No. 12-01093-jw |

**NOTICE OF MOTION FOR RELIEF FROM AUTOMATIC STAY**
**(11 U.S.C. Section 362)**

TO:  DEBTOR, TRUSTEE (if applicable), AND THOSE NAMED IN THE ATTACHED MOTION:

PLEASE TAKE NOTICE that a hearing will be held on the attached Motion on:
Date:  April 24, 2012
Time:  9:30 a.m.
Place:  Donald Stuart Russell Federal Courthouse
201 Magnolia Street
Spartanburg, SC 29306-2355

Within 14 days after service of the attached Motion, the Notice of Motion, the movant's Certification of Facts, (and a blank Certification of Facts form (applicable to service on *pro se* parties only)), any party objecting to the relief sought shall:

(1)  File with the clerk a written objection to the 11 U.S.C. 362 Motion;

(2)  File with the clerk a Certification of Facts;

(3)  Serve on the movant items 1 and 2 above at the address shown below;

(4)  File a certificate of such service with the clerk.

If you fail to comply with this procedure, you may be denied the opportunity to appear and be heard on this proceeding before the Court.

| | |
|---|---|
| DATE OF SERVICE: | April 4, 2012 |
| MOVANT: | TD Bank, N.A. |
| ATTORNEYS: | James H. Cassidy & Dana M. Lahey |
| ATTORNEYS' | Roe Cassidy Coates & Price, P.A. |
| ADDRESS: | Post Office Box 10529 |
| | Greenville, SC  29603 |

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | CHAPTER 11 |
| MADAWASKA HARDSCAPE | ) | |
| PRODUCTS, INC., | ) | Case No. 12-01093-jw |

## MOTION FOR RELIEF FROM THE AUTOMATIC STAY
## OR IN THE ALTERNATIVE FOR ADEQUATE PROTECTION

Now comes TD Bank, N.A. (hereinafter the "Bank") a secured creditor of the above-named Debtor Madawaska Hardscape Products, Inc., to show to the Court as follows:

(1)    The Bankruptcy Court has jurisdiction over this proceeding pursuant to Order N-84-3, dated August 15, 1984, of Charles E. Simmons, Jr., Chief Judge, United States District Court for the District of South Carolina and 28 U.S.C. Section 157.

(2)    The Debtor filed for relief under Chapter 11 of the United States Bankruptcy Code on February 22, 2012.

(3)    The Bank holds a pre-petition secured claim against property as follows:

First lien on all of Debtor's assets, including but not limited to, goods, accounts, general intangibles, deposit accounts, money, equipment, furniture, fixtures, inventory, and rights to payment, whether existing at the time the lien was granted or acquired thereafter.    Said property is more particularly described in the Security Agreements and UCC Financing Statements attached hereto (the "collateral").

Said lien secures the following debts:

i.    That certain note executed by Debtor in favor of Movant on or about August 9, 2002, in the original amount of $118,500.00, and thereafter amended by various modification and extension agreements, the most recent of which is dated November 26, 2008, and is in the original amount of $600,000.00.  True and correct copies of the note, most recent extension/amendment agreement, security agreements, and guaranties evidencing the account of Debtor Madawaska Hardscape Products, Inc. (hereinafter, the "Madawaska debt") are attached hereto as Exhibits "A" through "D" and incorporated herein by reference, the same as if fully set forth herein.

ii.  That certain note executed by 222 Riverside Corp. in favor of Movant on or about March 31, 2003, in the original amount of $300,000.00, said debt being duly guaranteed by Debtor and secured by the collateral.  True and correct copies of the note, most recent extension/amendment agreement, security agreements, and guaranties evidencing the account of 222 Riverside Corp. and guaranteed by Debtor Madawaska Hardscape Products, Inc. (hereinafter, the "222 Riverside debt") are attached hereto as Exhibits "E" through "G" and incorporated herein by reference, the same as if fully set forth herein.

iii.  True and correct copies of the UCC financing statements evidencing perfection of Movant's security interests are attached hereto as Exhibit "H."[1]

iv.  Debtor is presently indebted to Movant in the amount of Five Hundred Ninety-Six Thousand Four Hundred Fifty-Six and 12/100 Dollars ($596,456.12) plus interest, fees, and costs from February 22, 2012, on the Madawaska debt.

v.  Debtor is presently indebted to Movant in the amount of Two Hundred Ten Thousand Five Hundred Eighty-Four and 81/100 Dollars ($210,584.81) plus interest, fees, and costs from February 22, 2012, on the 222 Riverside debt.

(4)  Bank is informed and believes that there is no equity in the property listed above.

(5)  Upon information and belief, cause exists to terminate the automatic stay as follows:
   a.  Failure to make full and timely payments (the debt is due and payable in full pursuant to its terms);
   b.  There is little or no equity in the property;
   c.  No proposal for adequate protection; and
   d.  No cash collateral order has been sought.

(6)  Upon information and belief, if the Bank is not permitted to take possession of its collateral, it will suffer irreparable injury as the property is rapidly depreciating and/or Debtor continues to use and liquidate the collateral without a cash collateral order.

---

[1] The Madawaska debt and the 222 Riverside debt are further secured by a mortgage on real property located in Maine, which, upon information and belief, has a value of approximately $430,000 (see Exhibit "J"), and which is owned by 222 Riverside Corp.  Given the balances of these debts, Debtor's cash collateral constitutes a substantial portion of the Movant's security in this matter.

(7)     The undersigned does hereby certify that she has consulted with opposing counsel and attempted in good faith to resolve the matter contained in this motion; however, the parties have been unable to resolve the matter.

(8)     Should this Court not grant the Bank's motion for relief from the automatic stay, the Bank requests that this Court grant it adequate protection.

(9)     The Claimant agrees to waive any claim that may arise under 11 U.S.C. Section 503(b) or Section 507(b) as a result of this Order.  The Claimant further agrees that any funds realized from any sale, in excess of all liens, costs, and expenses, will be paid to the Trustee.

(10)     The Bank requests that the automatic 14-day stay of the Order granting relief from the automatic say under Fed. R. Bankr. P. 4001 (a)(3) be avoided and that the relief sought be effective immediately upon the entry of the Order.

WHEREFORE, movant prays for the entry of an order against the Debtor granting relief from the automatic stay on the grounds that there is no equity in the subject property or alternatively, for cause, including lack of adequate protection.  In the event relief is not granted, the Bank seeks an order for adequate protection under Section 361(1) and (2) of the United States Bankruptcy code and for such other relief as the Court may deem just and proper.

/s/ James H. Cassidy, Federal Ct. ID# 73
/s/ Dana M. Lahey, Federal Ct. ID #8018
Roe Cassidy Coates & Price, PA
Attorneys for Creditor TD Bank, N.A.
Post Office Box 10529
Greenville, SC  29603
Phone: 864-349-2600
Fax: 864-349-0303
jcassidy@roecassidy.com
dlahey@roecassidy.com

Date: April 4, 2012

# COMMERCIAL LINE OF CREDIT AGREEMENT

Ceiling Amount  $100,000.00

Portland _____ Maine

Expiration Date: August 29, 2001

August 29, 2001

PEOPLES HERITAGE BANK, N.A. (hereinafter called the "Lender"), by its acceptance hereof, commits itself subject to the terms of this Commercial Line Of Credit Agreement (hereinafter called the "Agreement") to make Loans to the undersigned Borrower up to a maximum aggregate principal amount at any one time outstanding of One Hundred Thousand and 00/100 ($100,000.00) (hereinafter called the "Ceiling Amount"), which the Borrower may borrow in full or in part, repay in full or in part, and reborrow, in accordance with the terms of this Agreement. This commitment shall expire on the first to occur of the following: (a) Lender's Demand for payment of all Advances outstanding hereunder; (b) the occurrence of an event of default defined in paragraph 9 below, or (c) the Expiration Date set forth above. In consideration of this commitment by Lender, the Borrower (and if more than one Borrower, each of them jointly and severally) agrees with the Lender as follows:

**LOAN TERMS:**

1.  The Borrower promises to pay to Lender, ON DEMAND, all Advances outstanding under this Agreement (including any Advances which may, in Lender's sole discretion, be made in excess of the Ceiling Amount), together with interest thereon at the rates provided below, at any of Lender's banking offices. Interest shall continue to accrue on all Advances outstanding under this Agreement until all Advances have been repaid in full and the Lender's commitment to advance funds hereunder has terminated.

2.  The interest to be paid on all amounts advanced hereunder (collectively called "Advances") shall be computed from the date of each Advance at a fluctuating interest rate equal to the Base Rate, as it may vary plus One and One Half Percent (1.50%) per annum. The "Base Rate" shall mean the Prime Rate as published in the Money rates section of the *Wall Street Journal*. Lender shall not be required to notify Borrower of adjustments in said variable interest rate and such adjustments shall become effective immediately upon any change in such Base Rate. In the event that the Prime Rate shall no longer be available, Lender shall designate a comparable base rate and spread in substitution therefor.

3.  Interest on outstanding Advances under this Agreement shall be paid on September 29, 2001 and Monthly thereafter (each called the "Interest Payment Date").

4.  All Advances outstanding under this Agreement, together with interest thereon, shall be due and payable in full, without notice or demand, on the Expiration Date.

5.  All payments shall be applied first to accrued interest, then to outstanding principal, until paid in full. All interest hereunder shall be computed on the basis of the actual number of days elapsed over a 360-day year. If any payment is not received within fifteen (15) days of when due, then Borrower shall pay to Lender a late payment fee of six percent (6.0%) of the amount of such delinquent payment.

6.  DEFAULT INTEREST RATE. Lender shall have the right to charge interest on the unpaid principal balance hereof at an interest rate of six percent (6%) per annum in excess of the rate of interest otherwise payable as provided herein, for any period after an event of default (as defined below) shall have occurred and until the same shall have been cured or expressly waived by Lender in writing.

7.  The Borrower hereby requests and authorizes the Lender to:

(a) Charge Borrower's Line of Credit Account and credit any of Borrower's checking accounts with Lender or otherwise disburse sums as requested in Borrower's properly executed Advance Request Form(s) received by Lender, in such form as may be required by Lender, otherwise, as requested orally by Borrower as long as such oral requests are permitted by Lender.

(b) Bill Borrower for interest due hereunder as of each succeeding Interest Payment Date or, at the option of Lender, charge any of Borrower's checking accounts for interest when due hereunder.

(c) Record all Advances, payments, interest, other charges and any other items, properly chargeable or creditable in accordance with customary accounting practice, arising out of this Agreement to Borrower's Line of Credit Account maintained by Lender, Lender shall render a monthly advice of interest due and of the then outstanding principal balance, and all items shown thereon shall be considered correct, complete, accepted by and conclusively binding upon Borrower unless Borrower gives Lender written notice of exceptions within thirty (30) days of receipt of said advice.

(d) The Line of Credit established under this Agreement shall be cleared for a minimum of thirty (30) consecutive days during each fiscal year of the Borrower (or each calendar year if the Borrower does not have a fiscal year), beginning with the fiscal year or calendar year during which this Agreement is executed provided that if on the date of this Agreement there is less than ninety (90) days remaining in the Borrower's fiscal year (or the calendar year if Borrower does not have a fiscal year) then the requirement set forth in this paragraph shall first apply during the next upcoming fiscal year (or calendar year).


Ex. A

SECURITY:

Agreement... and/or... and/or... the documents... the following documents which, unless otherwise noted below, pertain to about the subject Agreement (check as many as apply):

☐ a mortgage and security agreement on property located at _____.

☐ a collateral assignment of leases and rentals relating to the property described in said mortgage and security agreement.

☒ a security agreement respecting personal property, namely (but without limitation): <u>All Business Assets, 1995 Mack Truck Vin # IM2B212C65M003332 and a 1998 Daewoo G25 Fork Lift Vin # J208676 and any other equipment purchased with loan proceeds.</u>

☒ a guaranty or guaranties executed by <u>Daniel G. Albert and 222 Riverside Corp secured by a Real Estate Mortgage at 222 Riverside Street, Portland, Maine.</u>

☐ other: _____.

Borrower hereby grants to Lender, as security for the payment and performance of this Agreement, a continuing lien on and security interest in any and all deposit accounts and funds on deposit therein (general or specific, time or demand, regardless of maturity or the bank branch where the deposit accounts are held) now or hereafter held by Lender and other sums credited by or due from Lender to Borrower or subject to withdrawal by Borrower, whether or not any other person or persons could also withdraw money therefrom (collectively hereinafter called the "Deposits"). After any event of default, Lender may "freeze" or place a "hold" on any Deposits by suspending Borrower's right to withdraw the Deposits and may set off any Deposits (including those previously frozen or placed on hold) against any amounts payable by Borrower under this Agreement or any other Liabilities. Failure of Lender to take necessary steps to preserve rights against any parties with respect to any property in its possession shall not be deemed a failure to exercise reasonable care.

This Agreement may also be secured by documents executed in the future by Borrower or by any Guarantor. If checked here ☐, Advances under this Agreement are secured as future advances pursuant to the terms of an existing Mortgage and Security Agreement from Borrower to Lender dated _____, and recorded in the _____ County Registry of Deeds in Book _____, Page _____. This Agreement may also secured by existing security agreements, guaranties or other documents if the provisions of such existing documents state that they shall secure all future obligations or liabilities of Borrower to Lender. All documents which secure or guaranty this Agreement, whether executed prior hereto, on even date herewith or in the future, are hereinafter called "Security Documents."

DEFAULT:

9. All Advances outstanding hereunder, together with all interest and other charges, as applicable, shall immediately become due and payable, and the Lender's commitment to make further Advances to the Borrower under this Agreement shall automatically and immediately cease and be terminated, all without notice or demand of any nature whatsoever, upon the occurrence of any one or more of the following events, each of which shall constitute an event of default hereunder: (a) the insolvency of the Borrower or any Guarantor; or (b) the making of any assignment for the benefit of creditors of the Borrower or any Guarantor; or (c) the issuance of filing any attachment, levy, or other judicial process on or against any of the Borrower's or any Guarantor's assets; or (d) the appointment of a receiver, trustee or custodian for all or any portion of the property of the Borrower or any Guarantor; or (e) the commencement of any proceedings under any state or federal bankruptcy or insolvency law or under laws for relief of debtors, by or against the Borrower or any Guarantor; or (f) the occurrence of such a change in the condition or affairs (financial or otherwise) of the Borrower or any Guarantor as, in the opinion of the Lender, materially impairs the collateral (if any) or the prospect of repayment of any amounts outstanding hereunder; or (g) the death, incompetency, dissolution, business failure (which term includes, without limitation, the cessation of normal business operations) or termination of existence of the Borrower or any Guarantor; or (h) the failure of the Borrower or any Guarantor to pay their respective debts as they mature; or (i) any representation or statement made or furnished to Lender by or on behalf of any Borrower or Guarantor is false or misleading in any material respect; (j) any default in the payment of any sums due under this Agreement when due, or default by the Borrower or any Guarantor in performance of any other obligation under this Agreement; (k) the failure of Borrower or any Guarantor to timely provide to Lender the financial statements, tax returns or other information required pursuant to the terms of any loan commitment letter from Lender relating to the loan evidenced by this Agreement or the failure of Borrower to perform any other obligations or agreements set forth in any such commitment letter; or (l) default beyond any applicable cure period in the payment, satisfaction or performance by the Borrower or any Guarantor of any condition or obligation under any of the Security Documents or under any documents executed in connection with any other Liabilities of the Borrower or any Guarantor to the Lender.

REMEDIES:

10. Upon the occurrence of any event of default under this Agreement the Lender shall have all rights and remedies available under this Agreement, any of the Security Documents or pursuant to applicable law. The Lender shall not be required to pursue or to exhaust its remedies against the Borrower, or its successors, or against any other party liable for payment hereof, whether maker, Guarantor, or otherwise, or against any property or assets mortgaged or pledged as security herefor, but upon nonpayment or nonperformance hereof may immediately demand and enforce payment and performance from any one or more of Borrower(s) or Guarantor(s), or may seek to realize upon the value of any collateral, without the necessity of joining any other Borrower(s) or Guarantor(s), and in each case without any requirement of first seeking to collect the debt evidenced by this Agreement from any other source. Each Borrower hereby irrevocably agrees that any legal action or proceeding arising out of or relating to this Agreement may be brought in any state or federal court in the State of Maine, at the election of Lender. By the execution and delivery hereof, each Borrower hereby irrevocably submits to the non-exclusive jurisdiction of any such court in any such action or proceeding. Borrower irrevocably agrees that in addition to any methods of service provided for under applicable law, all service of process in any such legal action or proceeding may be made by certified mail, return receipt requested to the Borrower's address pursuant to paragraph 13 below. Each Borrower and each Guarantor shall be liable for, and hereby agrees to pay, upon demand, any and all costs or expenses of any nature whatsoever incurred by the Lender in endeavoring to collect or enforce this Agreement against any party including, without limiting the generality of the foregoing, reasonable attorneys' fees and expenses. The Lender shall not be deemed to have waived any of its rights or remedies under this Agreement or under any of the Security Documents by any act, delay, omission or failure or refusal to exercise any of such rights or remedies. No waiver by Lender of any kind shall be valid unless it is in writing and signed by an officer of the Lender, and then only to the extent specifically stated. All of the rights and remedies of the Lender shall be cumulative and not exclusive, and may be exercised on any one or more occasions either singularly or concurrently.

WAIVERS:

11. The Borrower ... ch ...rantor hereby (1) waive presentment, notice lish protest, and any ... all other notices of any ... why ...oever in connection with the delivery, acceptance, ... ... ... ...fer... or ... ... ... Agreement and (2) consent and agree that the Lender may at any time and from time to time without affecting the liability of Borrower or of any Guarantor or of any other person ... person expressly released in ...ting) for payment of the debt evidenced by this Agreement or for performance of any obligation contained herein, and without affecting Lender's rights with respect to any security not expressly released in writing: (a) release any person liable for all or any part of the indebtedness or for performance of any obligation; (b) amend this Agreement to change the Expiration Date, the Ceiling Amount or the interest rate; (c) grant any releases, compromises or indulgences with respect to this Agreement or any extensions, renewals, or amendments hereof or substitutions herefor or with respect to any collateral securing the payment of sums outstanding under this Agreement to any party primarily or secondarily liable hereunder; or (d) modify the provisions of this Agreement all without notice to or consent of any Borrower or any Guarantor; (3) waive all recourse to suretyship and guarantorship defenses generally; and (4) waive the right to direct the application of any payment hereunder. BORROWER HEREBY IRREVOCABLY AND UNCONDITIONALLY WAIVES ANY AND ALL RIGHTS, WHETHER ARISING UNDER THE CONSTITUTIONS OF THE UNITED STATES OR OF ANY STATE, ANY RULES OF CIVIL PROCEDURE, COMMON OR STATUTORY LAW, OR OTHERWISE, TO DEMAND A TRIAL BY JURY IN ANY ACTION, SUIT, PROCEEDING OR COUNTERCLAIM INVOLVING LENDER ARISING OUT OF OR IN ANY WAY CONNECTED WITH THIS AGREEMENT OR ANY OF THE SECURITY DOCUMENTS.

MISCELLANEOUS:

12. If, for any reason, any payment to Lender applied to amounts outstanding hereunder is required to be refunded by Lender to Borrower or to any Guarantor or turned over by Lender to any other person or entity, Borrower and each Guarantor agree to pay to Lender on demand an amount equal to the payment so refunded or turned over by Lender and the liability of Borrower and each Guarantor shall not be treated as having been discharged by the original payment to Lender giving rise to such refunded or turned over payment.

13. All notices, demands or requests provided for or permitted to be given pursuant to this Agreement must be in writing and shall be given by personal delivery or by depositing the same in the United States mail, post-paid and certified, return receipt requested at the address set forth below, as such addresses may be changed by notice given to the other party.

Lender's Address (for purposes of demanding termination of security interests created hereby):
Peoples Heritage Bank, N.A.
P. O. Box 9540
Portland, ME 04112-9540
ATTN: Commercial Loan Administration Manager

Lender's Address (for all other purposes):
Peoples Heritage Bank, N.A.
One Portland Square
P.O. Box 9540
Portland, ME 04112-9540
ATTN: Commercial Loan Dept.

Borrower's Address:
Daniel Albert
101 Balfer Drive
Greenville, SC 29615

14. Each Borrower and each Guarantor shall be jointly and severally liable to the Lender under this Agreement and each Borrower has subscribed his/her/its name hereto without condition that any other person or entity shall sign or become bound hereunder and without any other conditions whatever. Any Borrower that is a corporation hereby warrants that it is validly formed, in existence and in good standing at the present time, with all necessary authority to enter into, execute and deliver this Agreement. No invalidity or unenforceability of an portion or obligation of this Agreement shall affect the validity or enforceability of the remaining portions or obligations hereof. This Agreement and all actions taken pursuant hereto shall be governed by, and interpreted and construed in accordance with, the laws of the State of Maine. This Agreement evidences a loan for business and commercial purposes and not for personal, household, or family purposes. If Borrower is an individual, Borrower represents that it is voluntarily acting as a sole proprietorship and is not acting in an individual capacity in connection with this loan. The use of captions in this Agreement is for purposes of convenience only, and no caption shall affect the meaning of this Agreement. As used herein, the word: (1) Liabilities means any and all liabilities, indebtedness, and obligations of each Borrower and Guarantor to Lender of any nature whatsoever, now existing or hereafter arising, due or to become due, absolute or contingent, direct or indirect and whether joint, several, or joint and several; (2) Guarantor shall mean and include each endorser, surety, guarantor or other party primarily or secondarily liable to the Lender with respect to this Agreement other than the Borrower; (3) Borrower shall mean each undersigned party; and (4) Lender shall mean Peoples Heritage Bank, N.A and each future assignee of this Agreement. This Agreement may not be assigned by Borrower. This Agreement and the provisions hereof shall be binding upon the heirs, executors, administrators, successors, legal representatives and assigns of the Borrower and each Guarantor and shall inure to the benefit of the Lender, its successors, legal representatives and assigns. This Agreement is intended to take effect as a sealed instrument.

Witness

PEOPLES HERITAGE BANK, N.A.

By: _____
Frederick G. Proctor
Its: Vice President

MADAWASKA HARDSCAPE PRODUCTS, INC.
(Borrower)

Witness

By: _____
Daniel B. Albert
Its: President

Page 5



### SECURITY AGREEMENT

SECURITY AGREEMENT, dated as of the 29th day of August,2001 by and between Madawaska Hardscape Products, Inc.,

- [x] a corporation duly organized and validly existing under the laws of Maine,
- [ ] a limited liability company duly organized and validly existing under the laws of _____,
- [ ] a limited partnership duly organized and validly existing under the laws of _____,
- [ ] a general partnership duly organized and validly existing under the laws of _____,
- [ ] an unincorporated association,
- [ ] (an) individual(s) as Trustee(s) of _____ Trust,
- [ ] (an) individual(s),

with chief executive office at 222 Riverside Street, Portland, Maine 04102 (the "Debtor" or the "Borrower"), and PEOPLES HERITAGE BANK, N.A., with a place of business at One Portland Square, PO BOX 9540, Portland, Maine 04112 (the "Secured Party" or the "Bank").

### WITNESSETH:

WHEREAS, Debtor agreed to borrow from the Bank and the Bank agreed to lend to Debtor $100,000.00 (the "Loan" or the "Loans") pursuant to the terms and provisions of a promissory note in the original principal amount of $100,000.00 (together with any and all amendments or modifications thereto, substitutions therefor, and renewals, extensions and rearrangements thereof, and any related loan agreements and other Loan Documents executed in connection therewith, collectively, the "Note"); and

WHEREAS, the obligation of the Secured Party to make the Loan is subject to the condition, among others, that Debtor shall execute and deliver this Agreement and grant the security interests hereinafter described; and

NOW, THEREFORE, in consideration of the willingness of the Secured Party to make the Loan and for other good and valuable consideration, the receipt of which is hereby acknowledged, it is hereby agreed as follows:

1. Grant of Security Interest in Collateral. As security for the Secured Obligations described in section 2 hereof, Debtor hereby grants to the Secured Party a present and continuing security interest in and valid lien on all of the Debtor's property described on Exhibit A attached hereto, together with any and all additions and accessions thereto, replacements, proceeds (including without limitation insurance proceeds) and products thereof, and substitutions therefor, wherever the same may be located and whether now existing or hereafter arising or acquired (hereinafter referred to collectively as the "Collateral"), authorizes Secured Party to file financing statements reflecting such grant, and ratifies any such financing statements filed prior to the execution of this Agreement.

2. Obligations Secured by the Collateral. The security interest hereby granted in the Collateral shall secure the due and punctual payment and performance of the following liabilities and obligations of Debtor (hereinafter called the "Secured Obligations" and each individually a "Secured Obligation"):

(a) Payment of principal of, premium, if any, and interest on the Note and any modifications or amendments thereto, renewals or extensions thereof or substitutions therefor;

(b) Performance or payment of any and all other obligations of Debtor to the Secured Party under the Note and the loan documents executed in connection with the Note (collectively, the "Loan Documents") or under any agreement or instrument relating thereto, as the same may be amended from time to time;

3. Special Representations, Warranties and Covenants of Debtor. Debtor hereby warrants and covenants to the Secured Party that:
(a) Debtor's full, legal name is Madawaska Hardscape Products, Inc.. Debtor is organized and existing in good standing under the laws of the State of Maine, and its organizational number is _____ The chief executive office of Debtor and all of Debtor's additional places of business, if any, and the location of all the Collateral are listed in Exhibit B attached hereto. Debtor will not change its name, organizational number, the jurisdiction of its organization and existence, nor chief executive office nor any other place of business, nor the location of any Collateral, without at least 30 days' prior written notice to the Secured Party.

(b) Debtor shall not sell or otherwise dispose of any of the Collateral or any interest therein, except for dispositions of inventory in the ordinary course of its business or as otherwise expressly authorized in the Note.



EXHIBIT
B

(c)    Debtor shall keep the Collateral in good order and repair, and adequately insure the Collateral at all times in accordance with the provisions of the Note and shall maintain and/or operate such Collateral in compliance with all laws, and with all regulations, ordinances, or contractual undertakings governing the same.

(d)    Debtor shall pay or cause to be paid promptly when due all taxes and assessments on the Collateral or for its use or operation, except for taxes and assessments contested in good faith by appropriate proceedings promptly initiated and diligently conducted, and provided that Debtor shall make such payment reserves or other appropriate provision therefor, if any, as shall be required by generally accepted accounting principles, and shall discharge the same prior to the attachment of any lien or encumbrance.

(e)    Debtor will promptly execute and deliver to the Secured Party such financing statements, certificates and other documents or instruments as may be necessary to enable the Secured Party to perfect or from time to time renew the security interest granted hereby, including without limitation such financing statements, certificates of title and other documents as may be necessary to perfect a security interest in any additional property or rights hereafter acquired by Debtor or in any replacements or proceeds thereof. Debtor grants Secured Party an irrevocable power of attorney coupled with an interest to execute on Debtor's behalf and in Debtor's name financing statements and amendments thereto necessary to perfect or renew the security interest granted in this Agreement.

(f)    Debtor shall immediately notify the Secured Party of any material loss in the value of the Collateral, other than losses resulting from ordinary depreciation or amortization taken in accordance with generally accepted accounting principles.

(g)    To the extent that the indebtedness of Debtor to the Secured Party evidenced by the Note and secured by this Agreement, or other value furnished by the Secured Party to or for the benefit of Debtor, shall be used for the purchase of Collateral, the security interest created under the terms of this Agreement and such Collateral shall be deemed a purchase money security interest.

(h)    Debtor is not now, and as a result of this transaction will not be, insolvent.

(i)    The representations and warranties of the Debtor set forth in the Note are incorporated herein by reference as if set forth herein in their entirety.

(j)    The Debtor has not conducted its business under any tradename or trade style other than the name identified at Section 3(a) of this Agreement as its name. The Debtor will not conduct its business hereafter under any other tradename or trade style and will not change its name or its legal status, nor merge or consolidate with any entity, nor sell all or substantially all of Debtor's assets, except upon 30 days prior written notice to the Bank.

(k)    All records pertaining to the Collateral are or will continue to be located at the Debtor's chief executive office. If the Collateral or any part thereof is of a type for which a certificate of title is issuable under the laws of the United States or of any state, Debtor will, upon request from the Bank, cause a statement of the Bank's security interest to be noted thereon and will cause such certificate to be delivered to the Bank forthwith after its issuance.

(l)    The Borrower is and shall hereafter remain the owner of the Collateral free from any adverse attachments, liens, security interests or other encumbrances with the exception of the security interest granted hereby and such other permitted encumbrances and liens specified in the Note. Debtor has the right and authority to grant, bargain, sell, assign and transfer the Collateral and will warrant and defend the Collateral against all claims and demands of all persons at any time claiming the same or any interest therein except as aforesaid. No financing statements have been filed with respect to the Collateral other than such as relate to the security interest created hereby or any security interest specifically listed in the Note.

(m)    Debtor shall maintain casualty insurance coverage on the Collateral in such amounts and of such types as may be requested by the Bank and in any event at least in such amounts and of such types as are ordinarily carried by similar businesses. All such insurance policies shall contain a provision whereby they cannot be canceled except after 30 days written notice to the Bank and acknowledge the Bank as a holder of a lien on the Collateral and shall be payable to the Bank and Borrower as their interests may appear. Borrower shall immediately notify Bank of any event causing loss or depreciation in value of any of the Collateral. Bank may act as the attorney for the Debtor with an irrevocable power to obtain, adjust, settle and cancel such insurance and/or any claims arising thereunder, and in endorsing any drafts or checks issued with respect thereto. In the event of any failure of the Debtor to provide insurance as herein required, the Bank may at its option (but without any obligation) obtain and/or maintain insurance coverage with respect to the Collateral, without waiving any event of default by the Debtor and any sums expended by the Bank in procuring such insurance shall be deemed a Secured Obligation. The Bank may apply the proceeds of any insurance against the Secured Obligations, whether or not the same have matured, in such order of application as the Bank may determine.

(n)    The Debtor shall take adequate care of the Collateral, reasonable wear and tear excepted, as required by law for its regular use, cause the equipment to be duly licensed and registered; pay all costs necessary to obtain, preserve and enforce this security interest and to collect and preserve the Collateral including but not limited to taxes, assessments, repairs, rent, storage costs and expenses of sales; assist the Bank in complying with the

Federal Assignment of Claims Act, where necessary to enable the Bank to become an assignee under that Act; take all necessary steps to preserve the liability of the account debtors, obligors and secondary parties whose obligations are part of the Collateral; immediately transfer possession of all instruments, documents, chattel paper which are part of the Collateral to the Bank or as to those hereafter acquired immediately following acquisition; perfect a security interest in goods covered by chattel paper which is part of the Collateral.

(o)    The Loan is not a consumer loan and will not be used for primarily personal, family or household purposes. Accordingly, the transactions contemplated by this Agreement are not consumer transactions.

4.    Fixtures  It is the intention of the parties hereto that none of the Collateral shall become fixtures and Debtor will take all reasonable action or actions as may be necessary to prevent the Collateral from becoming fixtures. Without limiting the generality of the foregoing, Debtor will obtain waivers of lien or disclaimers with respect to any interest in the Collateral, in form satisfactory to the Secured Party, from each lessor and owner of real property on which any of the Collateral is or is to be located.

5.    Events of Default.  Debtor shall be in default under this Agreement upon the happening of any of the following events or conditions (herein called "Events of Default"):

(a)  The occurrence of Default or Event of Default under the Note, the Loan Documents or any other agreement between Debtor and the Secured Party, or any other material agreement or instrument issued by or by and between Debtor and any third party, and such default shall continue beyond the expiration of the applicable period of grace, if any; or

(b)  Any material representation or warranty made by Debtor shall be false or incorrect when made or if Debtor shall breach or fail to perform or discharge any covenant or obligations made herein; or

(c)  The loss, theft, substantial damage, destruction, sale, encumbrance to or on the Collateral, or the making of any levy, seizure or attachment thereof or thereon.

If any Event of Default shall occur pursuant hereto, then, or at anytime thereafter, Secured Party may declare all Secured Obligations to be in default, whereupon such Secured Obligations shall become due and payable, without notice, protest, presentment, or demand, all of which are expressly waived by Debtor, in addition to and not in any respect in limitation of any other rights or remedies granted to Secured Party hereunder, under the Loan Documents, in any other agreement or document executed in connection therewith or under applicable law.

6.    Rights of Secured Party on Default -- General.  (a)  The Secured Party shall also have the rights and remedies of a secured party under the Maine Uniform Commercial Code ("UCC") or under any other applicable law, including the right to take possession of the Collateral, and in addition thereto, the right to enter upon any premises on which the Collateral or any part thereof may be situated and remove the same therefrom.  The Secured Party may require Debtor to make the Collateral (to the extent the same is moveable) available to the Secured Party at a place to be designated by the Secured Party which is reasonably convenient to all parties.  Unless the Collateral is perishable or threatens to decline speedily in value or is of a type customarily sold on a recognized market, the Secured Party will give Debtor at least five (5) days' prior written notice by registered or certified mail or as otherwise provided in paragraph 13 below, at the address of Debtor set forth above (or at such other address or addresses as Debtor shall specify in writing to the Secured Party) of the time and place of any public sale thereof or of the time after which any private sale or any other intended disposition thereof is to be made.  Any such notice shall be deemed to meet any requirement hereunder or under any applicable law (including the UCC) that reasonable notification be given of the time and place of such sale or other disposition.  After deducting all costs and expenses of collection, storage, custody, sale or other disposition and delivery (including, without limitation, legal costs and attorneys' and paralegals' fees and disbursements, including, without limitation, those incurred in bankruptcy proceedings (collectively, "Legal Expenses")) and all other charges against the Collateral, the net proceeds of any such sale or disposition shall be applied to the payment of the Secured Obligations in such order of priority as the Secured Party shall determine, and any surplus shall be returned to Debtor or to whomever may be legally entitled thereto.  In the event the proceeds of any sale, lease or other disposition of the Collateral hereunder are insufficient to pay all of the Secured Obligations in full, Debtor will be liable for the deficiency, together with interest thereon, at the maximum rate provided in the Note, and for the cost and expenses of collection of such deficiency, including (to the extent permitted by law) without limitation Legal Expenses.  Debtor recognizes that in the event Debtor defaults hereunder, no remedy of law will provide adequate relief to Secured Party, and, therefore, Debtor agrees that Secured Party shall be entitled to temporary and permanent injunctive relief in any such case without the necessity of proving actual damages.  Insofar as the Collateral may consist of insurance policies, instruments, choses in action or the like, the Secured Party may demand, collect, receipt for, settle, renew, extend, exchange, compromise, adjust, sue for, foreclose or realize upon the Collateral in whole or in part as the Secured Party may determine, and for the purpose of realizing the Secured Party's rights therein, the Secured Party may receive, open and dispose of mail addressed to the Secured Party and endorse notes, checks, drafts, money orders, documents of title and other evidences of payment, shipment or storage or any form of the Collateral on behalf of and in the name of Debtor and apply the proceeds thereof to the Secured Obligations.  All costs and expenses, including without limitation, Legal Expenses, incurred by the Secured Party in enforcing this Agreement shall be chargeable to and secured by the Collateral.  Any failure by Secured Party to take necessary steps to preserve rights against any parties with respect to any property in its possession shall not be deemed a failure to exercise reasonable care.  It is also agreed that any sale or other disposition of the Collateral permitted hereunder may be made without any warranties by the Secured Party,

may be made by an auctioneer or by any other means (at Secured Party's discretion), and may be made without registration of any securities, and that all such sales or dispositions will be deemed to be commercially reasonable.

(b)    The Bank shall have the right to enter and/or remain upon the premises of the Debtor without any obligation to pay rent to the Debtor or any other place or places where the Collateral is located and kept in connection with the exercise of its remedies hereunder.

(c)    Upon the occurrence of an Event of Default, the Secured Party shall have the right to have a receiver appointed by a court. Said receiver shall be authorized, without notice, to enter upon and take possession of the Collateral and to take such other acts as the receiver shall deem appropriate to collect, conserve and liquidate the Collateral, including, without limitation, the operation of Debtor's business for said purposes.

(d)    It is agreed that a public or private sale, for cash or for credit, to a wholesaler or retailer or any investor, or at public auction or dealer auction, to which public access is restricted, are all commercially reasonable since the differences in the sales prices generally realized in such different kinds of sales are ordinarily offset by the differences in the costs and credit and other risks of such sales.

(e)    The Debtor hereby grants to the Bank a non-exclusive irrevocable license in connection with the Bank's exercise of its rights hereunder to use, apply and affix any trademark, tradename, logo or the like in which the Debtor now or hereafter has a right (after license but with power to sublicense). Secured Party shall have the right to set off, without notice to Debtor, any and all deposits or sums anytime credited by or due from Secured Party to Debtor, whether in a special account or other account represented by a certificate of deposit (whether or not matured).

7    Rights of Secured Party to Use and Operate Collateral, etc. In addition to any other rights or remedies of the Secured Party set forth herein or in any related documents, the Secured Party shall have the right and power to take possession of all or any part of the Collateral, and to exclude Debtor and all persons claiming under Debtor wholly or partly therefrom, and thereafter to hold, store, and/or use, operate, manage and control the same. Upon any such taking of possession, the Secured Party may, from time to time, at the expense of Debtor, make all such repairs, replacements, alterations, additions and improvements to or in respect of the Collateral as the Secured Party may deem proper. In any such case, subject as aforesaid, the Secured Party shall have the right, but no obligation, to manage and control the Collateral and to carry on the business and to exercise all rights and powers of Debtor in respect thereto as the Secured Party shall deem best, including the right to enter into any and all such agreements with respect to the leasing and/or operation of the Collateral or any part thereof as the Secured Party may see fit; and the Secured Party shall be entitled to collect and receive all rents, issues, profits, fees, revenues and other income of the same and every part thereof. Such rents, issues, profits, fees, revenues and other income shall be applied to pay the expenses of holding and operating the Collateral and of conducting the business thereof, and of all maintenance, repairs, replacements, alterations, additions and improvements, and to make all payments which the Secured Party may be required or may elect to make, if any, for taxes, assessments, insurance and other charges upon the Collateral or any part thereof, and all other payments which the Secured Party may be required or authorized to make under any provision of this Agreement (including reasonableLegal Expenses). The remainder of such rents, issues, profits, fees, revenues and other income shall be applied to the payment of the Secured Obligations in such order of priority as the Secured Party shall determine and any surplus shall be returned to Debtor or to whomever may be legally entitled thereto. Without limiting the generality of the foregoing, the Secured Party shall have the right to have a receiver appointed by a court of competent jurisdiction in any action taken by the Secured Party to enforce its rights and remedies hereunder in order to manage, protect and preserve the Collateral and continue the operation of the business of Debtor and to collect all revenues and profits thereof and apply the same to the payment of all expenses and other charges of such receivership, including the compensation of the receiver and to the payment of the Secured Obligations as aforesaid until a sale or other disposition of such Collateral shall be finally made and consummated.

8.    Collection of Accounts Receivable Upon Default. If Debtor has granted Secured party a security interest in accounts hereunder, until written notice to the contrary, Secured Party authorizes Debtor to collect any and all amounts owing on all accounts, and Debtor shall use its best efforts to effect the prompt collection of the same, which authorization shall be automatically terminated without necessity of notice by the Secured Party to Debtor at any time as of the occurrence of an Event of Default hereunder and after such occurrence and termination, the Secured Party may, in its sole discretion, give notice to any account debtors identified of the rights of the Secured Party to and the security interest of Secured Party in the accounts, and effect collection of any such account, directly from the account debtor obligated in respect of such account with full power and the sole discretion to settle or compromise disputes or claims relating to such account or, in the alternative, Secured Party may deliver a written request to Debtor (with which request Debtor agrees to comply) providing that Debtor shall deliver and promptly endorse to the Secured Party all checks, drafts, cash and other remittances and proceeds in payment or account of such accounts in the original form received by Debtor no later than the business day following receipt of the same, for deposit in a non-interest bearing account maintained by the bank hereinafter called the Collection Account. Pending such delivery and endorsement, Debtor agrees not to commingle any such collections with any other funds or property and to hold them apart from its other funds and property in trust for the benefit of Secured Party until delivery of such collections is made to the Secured Party. Debtor agrees to execute and deliver to the Secured Party all instruments and specific assignments with recourse of accounts and to take all other steps required by the Secured Party to protect its security interest in the accounts. The proceeds of collection of accounts subject to this agreement delivered by Debtor to the Secured Party and on deposit in the Collection Account and the net sums collected directly by the Secured Party after first deducting the cost of collection, will, at least monthly, be either credited

against the amount owed by Debtor to the Secured Party, or in the alternative, and at the sole discretion of the Secured Party, released to Debtor for use in the operation of the business of Debtor without waiving any right the Secured Party may have to retain the subsequent proceeds.

9.     <u>Rights Are Cumulative</u>. The Bank shall have, in addition to any other rights or remedies contained in this Agreement and any other agreement or related instrument, all of the rights and remedies of a secured party under the UCC and enforced in the State of Maine as of the date of this Agreement and as otherwise provided by law. Secured Party shall also have an irrevocable power of attorney, coupled with an interest, which is hereby granted to Secured Party by Debtor, to act for Debtor in order to execute or file any document or take any other action desirable to Secured Party, in its discretion, to effect, protect, perfect or preserve Secured Party's lien on the Collateral and any repossession and/or liquidation thereof provided for hereunder, and any expense borne by Secured Party in exercising said power of attorney shall be a cost of collection, as defined in Section 11 hereof. All of the Secured Party's rights and remedies whether evidenced hereby or by any other agreement or instrument or whether otherwise available shall be cumulative. All rights and remedies available to the Secured Party hereunder may be exercised on behalf of the Secured Party by any agent. No waiver by the Secured Party or by any other holder of Secured Obligations of any default shall be effective unless in writing, and any such waiver shall not operate as a waiver of any other default or of the same default on a future occasion.

10.    <u>Waivers, etc.</u> Debtor hereby waives presentment, demand, notice, protest and, except as is otherwise provided herein, all other demands and notices in connection with this Agreement or the enforcement of the Secured Party's rights hereunder or in connection with any Secured Obligations or any Collateral; waives its right, if any, to require the Secured Party to proceed against any guarantor of the Secured Obligations prior to proceeding against any of the Collateral; agrees that the rights of the Secured Party hereunder shall not be affected by any extensions, renewals, indulgences, settlements, or compromises respecting any of the Secured Obligations; consents to and waives notice of the granting of renewals, extensions of time for payment or other indulgences to Debtor or to any account debtor in respect of any account receivable, or substitution, release, surrender or impairment of any Collateral, the addition or release of persons primarily or secondarily liable on any Secured Obligation or on any account receivable or other Collateral, the acceptance of partial payments on any Secured Obligation or on any account receivable or other Collateral and/or the settlement or compromise thereof. No delay or omission on the part of the Secured Party in exercising any right hereunder shall operate as a waiver of such right or of any other right hereunder. Any waiver of any such right on any one occasion shall not be construed as a bar to or waiver of any such right on any such future occasion.

11.    <u>Costs of Collection</u>. Debtor shall pay any and all costs of collection that Secured Party may incur, together with any accrued interest thereon. For purposes of this Agreement, the "costs of collection" include without limitation all costs and expenses incurred by the Bank (including Legal Expenses) which are directly or indirectly related to or in respect of the Bank's efforts to preserve, collect and enforce any of the Secured Obligations and to preserve and/or enforce any of the Bank's rights, remedies or powers against or in respect of the Debtor or any guarantor or any other person liable for any of the Secured Obligations (whether or not instituted in connection with such efforts and whether before or after an event of default). Costs of collection shall also include any costs or expenses that are incurred by the Bank in commencing, defending or intervening in, filing a petition, complaint or answer, motion or other pleadings or taking any other action in any suit or proceeding (bankruptcy or otherwise) related to this Agreement, the Collateral or any other agreement, guaranty, note, instrument, or document in the possession of the Bank and relating in any way to the Secured Obligations to protect, insure, collect, sell, lease, take possession of, or liquidate any of the Collateral or to enforce any of the Bank's rights hereunder or before or after the occurrence of an event of default.

12.    <u>Termination; Assignments, etc.</u> This Agreement and the security interest in the Collateral created hereby shall terminate when all of the Secured Obligations have been fully and indefeasibly paid and performed (provided that the Secured Party is no longer obligated to make any additional loans to Debtor or any affiliate) and the expiration of any applicable preference period. In the event of a sale or assignment by the Secured Party of all or any of the Secured Obligations, the Secured Party may assign or transfer its rights and interests under this Agreement in whole or in part to the purchaser or purchasers of such Secured Obligations, whereupon such purchaser or purchasers shall become vested with all of the powers and rights of the Secured Party hereunder, and the Secured Party shall thereafter be forever released and fully discharged from any liability or responsibility hereunder, with respect to the rights and interests so assigned.

13.    <u>Notices</u>. All notices, requests and other communications to any party hereunder shall be in writing (including bank wire, telex, telecopy or similar writing), except for any telephone notices as specifically provided for herein, may be personally served or sent by telex, telecopier, mail or the express mail service of the United States Postal Service, Federal Express or other reputable overnight or expedited delivery service which provides evidence of delivery, and (a) if given by personal service, telex (confirmed by telephone) or telecopier (confirmed by telephone), it shall be deemed to have been given upon receipt; (b) if sent by telex or telecopier without telephone confirmation, it shall be deemed to have been given twenty-four (24) hours after being sent; (c) if sent by mail, it shall be deemed to have been given upon the earlier of (i) actual receipt, or (ii) three (3) Business Days after deposit in a depository of the United States Postal Service, first class mail, postage prepaid, or actual receipt; (d) if sent by Federal Express, the express mail service of the United States Postal Service or other equivalent overnight or expedited delivery service, it shall be deemed given upon the earlier of (i) actual receipt or (ii) twenty-four (24) hours after delivery to such overnight or expedited delivery service, delivery charges prepaid, and properly addressed to Debtor or the Bank. <u>For purposes of demanding termination of security interests created hereby, the address of Secured party shall be: Peoples Heritage Bank, N.A., P. O. Box 9540, Portland, **Maine 04112-**</u>

9540  ATTN: Commercial Loan Administration Manager.  For all other purposes hereof, the address of the parties to this Agreement shall be at their respective addresses as set forth above or at such other address as the party to whom such notice is directed may have designated in writing to the other parties hereto.

14.    Invalidated Payments.  Debtor agrees that to the extent that Debtor makes a payment or payments to the Secured Party which payment or payments or any part thereof are subsequently invalidated, declared to be fraudulent or preferential, set aside and/or required to be repaid to Debtor, its estate, trustee, receiver or any other party under any bankruptcy law, state or federal law, common law or equitable cause, then to the extent of such payment or repayment, or any part thereof which has been paid, or reduced or satisfied, the amount so repaid shall be reinstated and included within the Secured Obligations as of the date of such initial payment, reduction or satisfaction occurred.  This Agreement shall secure all renewals and extensions of instruments initially secured hereby.

15.    Indemnity.  The Borrower shall indemnify, defend and hold the Bank harmless of and from any loss, liability, claim or demands suffered or asserted against the Bank with respect to the Bank's interest in the Collateral (each of which may be defended by the Bank with counsel at the Bank's selection at the expense of the Debtor as if such costs or expenses were costs of collection hereunder).  The foregoing indemnification shall survive any termination, release or discharge executed by the Bank in favor of the Debtor.

16.    Waiver of Jury Trial.  THE BANK AND THE DEBTOR AGREE THAT NEITHER OF THEM NOR ANY ASSIGNEE OR SUCCESSOR SHALL (A) SEEK A JURY TRIAL IN ANY LAWSUIT, PROCEEDING, OR COUNTERCLAIM RELATING TO THIS AGREEMENT, THE NOTE, OR ANY RELATED INSTRUMENTS, OR THE DEALINGS OR THE RELATIONSHIP BETWEEN OR AMONG ANY OF THEM, OR (B) SEEK TO CONSOLIDATE ANY SUCH ACTION WITH ANY OTHER ACTION IN WHICH A JURY TRIAL CANNOT BE OR HAS NOT BEEN WAIVED.  THE PROVISIONS OF THIS PARAGRAPH HAVE BEEN FULLY DISCUSSED BY THE BANK AND THE DEBTOR, AND THESE PROVISIONS SHALL BE SUBJECT TO NO EXCEPTIONS.  NEITHER THE BANK NOR THE DEBTOR HAS AGREED WITH OR REPRESENTED TO THE OTHER THAT THE PROVISIONS OF THIS PARAGRAPH WILL NOT BE FULLY ENFORCED IN ALL INSTANCES.

17.    Submission to Jurisdiction.  Debtor submits to the jurisdiction of any state or federal court located within the State of Maine in connection with any suits or proceedings arising from or under this Agreement, and Debtor hereby waives personal service of any and all process upon Debtor, and consents that all such service of process be made by registered mail, or certified mail, return receipt requested, directed to Debtor at the address stated at the commencement of this Agreement (or such other address as Debtor may have given Bank notice of under the terms of this Agreement) and service so made shall be deemed to be completed five (5) days after the same shall have been mailed to Debtor's address.

18.    Disclosure Consent.  Debtor hereby consents to the release and disclosure from time to time by Bank to any institution now or hereafter acquiring a participation interest in any of the Secured Obligations, to any guarantor now or hereafter existing as to any of the Secured Obligations and to Bank's parent and affiliated financial institutions of any of the following items or matters:  (i) copies or originals of any and all "financial records" (as defined at 9-B M.R.S.A §161, as amended) of Debtor now or hereafter in the possession or under the control of Bank, and (ii) any and all notices, financial and operating reports, balance sheets, financial statements, consultants' reports, and any and all documentation and information of or regarding Debtor heretofore or hereafter provided to or generated by or for the benefit of Bank in connection with this Agreement or any of the Secured Obligations now or hereafter existing.

19.    Governing Law.  This Agreement shall be governed by and construed in accordance with and governed by the laws of the State of Maine, except its conflicts of law rules.

20.    Miscellaneous.  This Agreement shall inure to the benefit of and be binding upon the Secured Party and Debtor and their respective successors and assigns, and the term "Secured Party" shall be deemed to include any other holder or holders of any of the Secured Obligations.  This Agreement may be executed in any number of counterparts, each of which shall be an original, but all of which together shall constitute one instrument.  If any provision hereof shall be invalid or unenforceable in any respect or in any jurisdiction, the remaining provisions hereof shall remain in full force and effect and shall be enforceable to the maximum extent permitted by applicable law.  There are no oral understandings or agreements, and no representation, consent, approval or waiver shall be binding on Bank unless in writing.  The consent, approval or waiver by one or more of the parties constituting a secured party hereunder shall not be binding upon any other party constituting a secured party unless given by an authorized agent.  The section headings hereunder are for convenience of reference only and shall not be considered in construing the meaning of the terms and provisions of this Agreement.  All representations and warranties of Debtor and all terms, provisions, conditions or agreements to be performed by Debtor contained herein or in any of the other documents delivered pursuant hereto or in connection herewith shall be true at the time of the execution of this Agreement and shall survive the execution and delivery hereof.

IN WITNESS WHEREOF, the undersigned has executed this Agreement as a sealed instrument as of the date above written.

WITNESS:

PEOPLES HERITAGE BANK, N.A.

By: _____

Frederick G. Proctor

Its:   Vice President

MADAWASKA HARDSCAPE PRODUCTS,
INC.

By: _____

Daniel B. Albert

Its:   President

i:\office\shared\loandocs\security.doc  Revised 7/1/2001

Page 7

## EXHIBIT A

(a)  All of Debtor's goods, accounts, instruments, chattel paper, documents, investment property, commercial tort claims, letter of credit rights, general intangibles, deposit accounts and money (as these terms are defined in the Maine Uniform Commercial Code) including but not limited to the following:

(b) all of Debtor's equipment, including all equipment, machinery, furniture, fixtures, trade fixtures, goods, computer hardware and software, motor vehicles, rolling stock and all other tangible personal property of Debtor other than inventory, any parts or accessions for any of the foregoing, and all documents evidencing Debtor's title to any of the foregoing, all whether now owned or hereafter acquired and wherever located, as well as Debtor's right, title and interest in and to any such goods and equipment as may now or hereafter be held or used by Debtor under any lease, lease purchase, conditional sales, use or other agreements pursuant to which Debtor is or may become entitled to the use or possession thereof, with any and all other rights and benefits flowing from or under or in respect of such agreements, all as may be used or useful in connection with the ownership and/or operation of Debtor's business, and any operations incidental to or associated with the same, or otherwise; and

(c) all of Debtor's inventory, whether now owned or hereafter acquired, including without limitation all goods, merchandise and other personal property of every type held by and intended for sale, use or lease by Debtor or to be furnished by Debtor under contracts of service, and all raw materials, work-in-process, finished goods, materials and other supplies of every nature used or usable in connection with the packing, shipping, advertising, selling, leasing or furnishing of the foregoing, including all goods used or consumed in Debtor's business, and also all goods of said description that are in transit, and all returned, rejected goods of said description and all documents (whether or not negotiable) relating thereto; and

(d) any and all of Debtor's rights to payments for goods sold or leased or for services rendered whether or not evidenced by instruments or chattel paper and whether or not earned by performance, including without limitation all accounts, accounts receivable, instruments, chattel paper, any other obligations or Indebtedness owed to the Debtor from whatever source arising, all rights of Debtor to receive any payments in money or in kind, and further including without limitation all right, title and interest in and to any and all goods, and/or inventory which give rise to any of the foregoing, and any security for any of the foregoing, and any cash or non-cash proceeds thereof, whether now existing or hereafter arising; and

(e) all of Debtor's other tangible or intangible personal property of every type or nature not described above, including without limitation, all present and future contract rights (including without limitation any and all rights of Debtor as lessor or lessee under any real property or equipment leases arising from time to time), patents, trademarks, trade names (including Debtor's corporate name and all assumed names), trade secrets, copyright materials, goodwill, computer programs, customer lists, business records, licenses, notes, money, instruments, bills, drafts, chattel paper, acceptances, general intangibles, choses in action, rights to tax refunds, and all debts, obligations and liabilities in whatever form, owing to Debtor from any person, firm or corporation, whether now existing or hereafter arising, now or hereafter received by or belonging or owing to Debtor, and all guaranties and security therefor, all of Debtor's rights as an unpaid vendor or lienor, including the rights of stoppage in transit, replevin and reclamation, and all monies, securities and other property (and any proceeds thereof), now or hereafter held or received by or in transit to the Secured Party from Debtor, whether for safekeeping, pledge, custody, transmission, collection or otherwise and all credits and balances of Debtor at any time existing with the Secured Party.

(f) Commercial tort claim(s) described as follows:  [DESCRIBE SPECIFICALLY]

(g) other:  1995 Mack Truck, Vin # IM2B212C65M003332.
             1998 Daewoo G25 Fork Lift Vin # 1208676

EXHIBIT B

to

Security Agreement

(Place of Business and Locations of Collateral)

1.      Debtor's Chief Executive Office:

            222 Riverside Street, Portland, Maine 04102

2.      Location of all Collateral:

            222 Riverside Street, Portland, Maine 04102

# Peoples Heritage Bank, N.A.

### Member FDIC

## GUARANTY

FOR VALUE RECEIVED, namely the loans or other financial accommodations by Peoples Heritage Bank, N.A. ("Lender") to Madawaska Hardscape Products, Inc. (the "Borrower") and in consideration of any and all other loans or financial accommodations now or hereafter granted by said Lender in its discretion to said Borrower, whether direct or indirect, absolute or contingent, the undersigned hereby unconditionally guarantees the full and prompt payment and performance of all obligations of the Borrower to the Lender, including without limitation the obligations of Borrower to Lender under the terms and conditions of the documents, as each such document may be amended, extended, renewed or replaced by a written instrument executed by the applicable parties, and all other obligations, debts and liabilities of Borrower to Lender whatsoever, now existing or hereafter created, whether or not the undersigned has notice thereof or consents thereto, further including without limitation the payment of all principal, interest and other charges and amounts that may be due and owing from Borrower to Lender from time to time (all of the foregoing obligations, debts and liabilities of Borrower being hereinafter referred to collectively as the "Liabilities"); the Lender shall not be required to pursue or to exhaust its remedies against the Borrower, or its successors, or against any other party liable for payment of any obligation of Borrower, whether maker, guarantor, or otherwise, or against any property or assets mortgaged or pledged as security therefor, but upon nonpayment or nonperformance thereof may immediately demand and enforce payment and performance from the undersigned pursuant to this Guaranty. The undersigned hereby waives demand, notice and protest, and waives recourse to all suretyship and guarantorship defenses generally and agrees that the liability of the undersigned hereunder shall not be affected in any way by any release of security or by the granting of any indulgence by the Lender to any party liable for payment of any obligations guaranteed hereby, or to any other guarantor thereof, or to any other party; nor shall the liability of the undersigned be affected in any way by any failure, inability or neglect of the holder of said promissory note to take any action with respect to, to realized upon or to obtain, any security, rights, endorsements or guaranties relating to any of said obligations guaranteed hereby; nor shall the liability of the undersigned be affected by any fraud, bankruptcy, reduction of the amounts owed by Borrower to Lender to zero, or by any other matter; the undersigned hereby meaning to waive any and all matters whatsoever whereby the undersigned as Guarantor would or might be released, in whole or in part, from obligations hereof, it being the intent hereof that the undersigned Guarantor at all times be and remain liable to the Lender to the same extent as if the undersigned were jointly and severally liable with the Borrower to the Lender for payment of all Liabilities and performance of all of the terms and provisions of such Liabilities.

If any payment or amount paid on any debt of Borrower to Lender, whether or not the same has been applied to such debt by the holder thereof, must be returned by the Lender for any reason or turned over by the Lender to any other person or entity, the undersigned shall be liable for payment of such amounts as though they had never been so paid or applied. This Guaranty shall be binding upon the heirs, successors and assigns of the undersigned.

The undersigned hereby irrevocably agrees that any legal action or proceeding arising out of or relating to this Guaranty may be brought in any state or federal court in the State of Maine, at the election of Lender. By the execution and delivery hereof, the undersigned hereby irrevocably waives personal service of any and all process upon the undersigned in connection herewith, and consents that any or all such service of process be made by registered or certified mail, return receipt requested, postage prepaid, directed to the undersigned at the address given below (or such other addresses as the undersigned may from time to time provide to the Lender in writing), and any service so made shall be deemed to have been completed five (5) days after the same shall have been so mailed.

The amount of indebtedness of the Borrower guaranteed hereby is unlimited. The undersigned hereby agrees to pay all costs and expenses incurred by the Lender in seeking to enforce this Guaranty and in collecting or in attempting to collect any Liabilities from any party liable therefor, including without limitation all attorney's fees incurred in connection therewith.

The undersigned hereby grants to Lender, as security for the payment and performance of this Guaranty, a continuing lien on and security interest in any and all deposit accounts and funds on deposit therein (general or specific, time or demand, regardless of maturity or the Bank branch where the deposits are held) now or hereafter held by Lender and other sums credited by or due from Lender to the undersigned or subject to withdrawal by the undersigned, whether or not any other person or persons could also withdraw money therefrom (collectively hereinafter called the "Deposits"). During the continuance of any event of default Lender may "freeze" or place a "hold" on any Deposits by suspending the undersigned's right to withdraw the Deposits and may set off any Deposits (including those previously frozen or placed on hold) against any amounts payable by the undersigned under this Guaranty. Failure of the Lender to take necessary steps to preserve rights against any parties with respect to any property in its possession shall not be deemed a failure to exercise due care.

If, for any reason, any payment to Lender applied to amounts outstanding under any of the Liabilities is required to be refunded by Lender to Borrower or to any other Guarantor or turned over by Lender to any other person, the undersigned agrees to pay to Lender on demand an amount equal to the payment so refunded or turned over by Lender and the liability of the undersigned hereunder shall not be treated as having been discharged by the original payment to Lender giving rise to such refunded or turned over payment.

This Guaranty shall in all respects be a continuing, absolute and unconditional guaranty, and shall remain in full force and effect (notwithstanding, without limitation, the death or incompetency of the undersigned or that at any time or from time to time all Liabilities may have been paid in full), subject to discontinuance only upon actual receipt by the Lender of written notice from the undersigned or any person duly authorized and acting on behalf of the undersigned of the discontinuance hereof; provided, however, that no such notice of discontinuance shall affect or impair any of the agreements and obligations of the undersigned hereunder with respect to any Liabilities existing prior to the time of actual receipt of such notice by the Lender, any Liabilities created or guaranteed pursuant to any commitments to Borrower made by the Lender prior to the time of actual receipt of such notice by the Lender, any extensions or renewals of any of the foregoing, any interest on any of the foregoing, any expenses paid or incurred by the Lender in endeavoring to collect any of the foregoing and in enforcing this Guaranty against the undersigned; and all of the agreements and obligations of the undersigned under this Guaranty shall, notwithstanding any such notice of discontinuance, remain fully in effect until all such Liabilities (including any extensions or renewals thereof) and all such interest and expenses shall have been paid in full. Any amount received by the Lender from any source on account of the Liabilities may be applied by the Lender to the payment of such of the Liabilities, and in such order of application, as the Lender may from time to time elect.



EXHIBIT

E

The Lender may, from time to time, whether before or after any discontinuance of this Guaranty, without notice to the undersigned, assign or transfer any or all of the Liabilities or any interest therein; and, notwithstanding any such assignment or transfer or any subsequent assignment or transfer thereof, such Liabilities shall be and remain Liabilities for the purposes of this Guaranty, and each and every immediate and successive assignee or transferee of any of the Liabilities or of any interest therein shall, to the extent of the interest of such assignee or transferee in the Liabilities, be entitled to the benefits of this Guaranty to the same extent as if such assignee or transferee were the Lender; provided, however, that unless the Lender shall otherwise consent in writing (which consent shall not impair this Guaranty in any way whatsoever), the Lender shall have an unimpaired right, prior and superior to that of any such assignee or transferee, to enforce this Guaranty, for the benefit of the Lender, as to those of the Liabilities which the Lender has not assigned or transferred.

This Guaranty is secured pursuant to the terms and conditions of the following documents which, unless otherwise noted below, are dated on or about the date of this Guaranty (check as many as apply):

☐   a mortgage and security agreement on property located at _____.

☐   a collateral assignment of leases and rentals relating to the property described in said mortgage and security agreement.

☐   a security agreement respecting personal property, namely (but without limitation):_____.

☐   other:

☐   Guaranty Rider attached.

☒   this Guaranty is presently unsecured.

This Guaranty may also be secured by documents executed in the future by the undersigned. This Guaranty may also be secured by existing security agreements, mortgages, guaranties or other documents from the undersigned to the Lender if the provisions of such existing documents state that they shall secure all future obligations or liabilities of the undersigned to Lender.

No delay on the part of the Lender in the exercise of any right or remedy shall operate as a waiver thereof, and no single or partial exercise by the Lender of any right or remedy shall preclude any other or further exercise thereof or the exercise of any other right or remedy; nor shall any modification or waiver of any of the provisions of this Guaranty be binding upon the Lender except as expressly set forth in a writing duly signed and delivered by an officer of the Lender. All rights and remedies of the Lender shall be cumulative, and may be exercised at one time or from time to time, either singly or in combination. No action of the Lender permitted hereunder shall in any affect or impair the rights of the Lender or the obligation of the undersigned under the Guaranty. For the purposes of this Guaranty, Liabilities shall include all obligations of the Borrower to the Lender, notwithstanding any right or power of the Borrower or any other person or entity to assert any claim or defense as to the invalidity or unenforceability of any such obligation, and no such claim or defense shall affect or impair the obligations of the undersigned hereunder.

This Guaranty shall be construed in accordance with, and shall be governed by, the laws of the State of Maine. Wherever possible each provision of this Guaranty shall be interpreted in such manner as to be effective and valid under applicable law, but if any provision hereof should be invalid or unenforceable under such law, such invalidity or unenforceability shall not affect in any way the continued validity and enforceability of any other provision hereof.

The undersigned hereby expressly waives: (a) notice of acceptance by the Lender of this Guaranty, (b) notice of the existence or creation or nonpayment of all or any of the Liabilities, (c) presentment, demand, notice of dishonor, protest, and all other notices whatsoever, and any right to indemnity, contribution, exoneration or reimbursement of any kind by any other party directly or indirectly liable for any of the Liabilities, whether maker, endorser, guarantor or otherwise on account of any payment made hereunder, and any right of subrogation to the rights, remedies or security of the holder hereof on account of any payment made hereunder, and (e) all diligence in collection or protection of or realization upon the Liabilities or any thereof, any obligation hereunder, or any security for or guaranty of any of the foregoing. THE UNDERSIGNED HEREBY IRREVOCABLY AND UNCONDITIONALLY WAIVES ANY AND ALL RIGHTS, WHETHER ARISING UNDER THE CONSTITUTIONS OF THE UNITED STATES OR OF ANY STATE, ANY RULES OF CIVIL PROCEDURE, COMMON OR STATUTORY LAW, OR OTHERWISE, TO DEMAND A TRIAL BY JURY IN ANY ACTION, SUIT, PROCEEDING OR COUNTERCLAIM INVOLVING LENDER ARISING OUT OF OR IN ANY WAY CONNECTED WITH THIS GUARANTY OR ANY OF THE LIABILITIES.

Dated: August 29, 2001

WITNESS:                                    GUARANTOR

                                           Printed Name:   Daniel B. Albert
                                           Address:        101 Bolfer Drive
                                                           Greenville, South Carolina 29615

i:\office\shared\loandocs\guaranty.doc   Rev. 06/01/00



**Banknorth**

## UNLIMITED GUARANTY

TO:    TD Banknorth, N.A., a National Association (the "Bank")

RE:    Madawaska Hardscape Products, Inc., a Maine corporation (the "Borrower")

To induce the Bank to make or continue to make loans, advances, or grant other financial accommodations to the Borrower, in consideration thereof and for loans, advances or financial accommodations heretofore or hereafter granted by the Bank to or for the account of the Borrower, the undersigned Keystone Northeast, Inc. (the "Guarantor") absolutely and unconditionally guarantees the full and punctual payment to the Bank of all sums which may be presently due and owing and of all sums which shall in the future become due and owing to the Bank from the Borrower, whether direct or indirect, whether as a borrower, guarantor, surety or otherwise, including, without limitation, interest, attorneys' fees and other amounts accruing after the filing of a petition in bankruptcy by or against Borrower, notwithstanding the discharge of Borrower from such obligations, together with all costs and expenses incurred by the Bank in connection with such obligations, this Unlimited Guaranty (this "Guaranty") and the enforcement thereof, and also guarantees the due performance by the Borrower of all its obligations under all other present and future contracts and agreements with the Bank, including, without limitation, all rate swap transactions, basis swaps, forward rate transactions, commodity swaps, commodity options, equity or equity index swaps, equity or equity index options, bond options, interest rate options, foreign exchange transactions, cap transactions, floor transactions, collar transactions, forward transactions, currency swap transactions, cross-currency rate swap transactions and currency options. This is a guaranty of payment and not collection.

Guarantor also agrees:

(1)    to indemnify and hold the Bank and its directors, officers, employees, agents and attorneys harmless from and against all claims, obligations, demands and liabilities, by whomsoever asserted, and against all losses in any way suffered, incurred or paid as a result of or in any way arising out of or following or consequential to transactions with the Borrower, except for any claim arising out of the gross negligence or willful misconduct of the Bank;

(2)    that this Guaranty shall not be impaired by any modification, supplement, extension, renewal or amendment of any contract or agreement to which the parties thereto may hereafter agree, nor by any modification, increase, release or other alteration of any of the obligations hereby guaranteed or of any security therefor, nor by any agreements or arrangements whatsoever with the Borrower or anyone else, all of which may be done without notice to or consent by the Guarantor;

(3)    that the liability of the Guarantor hereunder is direct and unconditional and due immediately upon default of the Borrower without demand or notice and without requiring the Bank first to resort to any other right, remedy or security;

(4)    that Guarantor shall have no right of subrogation, reimbursement or indemnity whatsoever until the Bank is indefeasibly paid in full, nor any right of recourse to security for the debts and obligations of the Borrower to the Bank;

(5)    that the liability of the Guarantor is unlimited and shall be joint and several with the liabilities of any other guarantors;

(6)    that if the Borrower or the Guarantor or any other guarantor should at any time become insolvent or make a general assignment, or if a petition in bankruptcy or any insolvency or reorganization proceedings shall be filed or commenced by, against or in respect of the Borrower or the Guarantor, or any other guarantor of the obligations guaranteed hereby, any and all obligations of the Guarantor shall be immediately due and payable without notice;

(7)    that the Bank's books and records showing the account between the Bank and the Borrower shall be admissible in any action or proceeding, shall be binding upon the Guarantor for the purpose of establishing the items therein set forth and shall constitute conclusive proof thereof;

(8)    that this Guaranty is, as to the Guarantor, a continuing Guaranty that shall remain effective under successive transactions until expressly terminated as hereinafter provided;

(9)    that this Guaranty may be terminated as to the Guarantor only by giving the Bank Sixty (60) days' prior written notice by registered or certified mail, and thereupon this Guaranty shall terminate with respect to Guarantor only at the expiration of said Sixty (60) day period, which shall then be the effective date of termination, and that such termination shall be applicable only to transactions having their inception after the effective date of termination and shall not affect rights and obligations arising out of transactions or indebtedness or extensions or renewals thereof having their inception prior to such date, including renewals, extensions, modifications and refinancings of such prior transactions, and also extensions of credit made pursuant to a commitment previously made by the Bank;

(10) that the termination or dissolution of Guarantor shall not effect the termination of this Guaranty as to Guarantor;

(11) that termination, release or limitation of any guaranty of the obligations guaranteed hereby by any other guarantor shall not affect the continuing liability hereunder of the Guarantor;

(12) that nothing shall discharge or satisfy the liability of the Guarantor hereunder except the full indefeasible payment and performance of all of the Borrower's debts and obligations to the Bank with interest and costs of collection;

(13) that this Guaranty shall not be affected by the illegality, invalidity or unenforceability of the obligations guaranteed, by any fraudulent, illegal or improper act by the Borrower, the legal incapacity or any other defense of the Borrower, the Guarantor or any other person obligated to the Bank consequential to transactions with the Borrower nor by the invalidation, by operation of law or otherwise, of all or any part of the obligations guaranteed hereby, including but not limited to any interest accruable on the obligations guaranteed hereby during the pendency of any bankruptcy or receivership proceeding of the Borrower;

(14) that any and all present and future debts and obligations of the Borrower to Guarantor are hereby waived and postponed in favor of and subordinated to the full indefeasible payment and performance of all present and future debts and obligations of the Borrower to the Bank;

(15) the Guarantor hereby grants to the Bank a continuing lien and security interest in all deposits or other sums at any time credited by or due from the Bank to the Guarantor and any property of the Guarantor at any time in the possession of the Bank whether for safekeeping or otherwise, or in transit to or from the Bank (regardless of the reason the Bank had received the same or whether the Bank has conditionally released the same) as security for the full and punctual payment and performance of all of the obligations guaranteed hereby, and such deposits and other sums may be applied or set off against such obligations at any time, whether or not such are then due, whether or not demand has been made and whether or not other collateral is then available to the Bank;

(16) that if at any time payment of all or any part of the obligations guaranteed hereunder is rescinded or otherwise must be restored by the Bank to the Borrower or to the creditors of the Borrower or any representative of the Borrower or representative of the Borrower's creditors as a voidable preference or fraudulent transfer or conveyance upon the insolvency, bankruptcy or reorganization of the Borrower or the Guarantor, or to the creditors of the Guarantor or any representative of the Guarantor or representative of the creditors of Guarantor upon the insolvency, bankruptcy or reorganization of the Guarantor or otherwise, this Guaranty shall continue to be effective or be reinstated, as the case may be, as though such payments had not been made, and shall survive as an obligation of the Guarantor, and shall not be discharged or satisfied by said payment or payments, notwithstanding the return of the original of this Guaranty to the Guarantor or to the Borrower, or any other apparent termination of Guarantor's obligations hereunder;

(17) that any rights and remedies available to the Bank under this Guaranty are cumulative, and not exclusive of any rights and remedies otherwise available to the Bank at law or in equity;

(18) that the Bank's delay or omission in exercising any of the Bank's rights and remedies shall not constitute a waiver of these rights and remedies, nor shall the Bank's waiver of any right or remedy operate as a waiver of any other right or remedy available to the Bank. The Bank's waiver of any right or remedy on any one occasion shall not be considered a waiver of same on any subsequent occasion, nor shall this be considered to be a continuing waiver;

(19) that this Guaranty incorporates all discussions and negotiations between the Bank and the Guarantor concerning the guaranty and indemnification provided by the undersigned hereby, and that no such discussions or negotiations shall limit, modify, or otherwise affect the provisions hereof, there are no preconditions to the effectiveness of this Guaranty and that no provision hereof may be altered, amended, waived, canceled or modified, except by a written instrument executed, sealed and acknowledged by the Bank's duly authorized officer; and

(20) that this Guaranty and all documents which have been or may be hereinafter furnished by the Guarantor to the Bank may be reproduced by the Bank by any photographic, photostatic, microfilm, xerographic or similar process, and that any such reproduction shall be admissible in evidence as the original itself in any judicial or administrative proceeding (whether or not the original is in existence and whether or not such reproduction was made in the regular course of business).

Guarantor waives: notice of acceptance hereof, presentment and protest of any instrument and notice thereof, notice of default and all other notices to which the Guarantor might otherwise be entitled; and any and all defenses, including without limitation, any and all defenses which the Borrower or any other party may have to the fullest extent permitted by law, any defense to this Guaranty based on impairment of collateral or on suretyship defenses of every type; any right to exoneration or marshaling. To the maximum extent permitted by law, Guarantor waives and terminates any homestead rights and/or

exemptions respecting any premises under the provisions of any applicable homestead law, including without limitation, 14 M.R.S.A. Section 4422. To the extent that it lawfully may, Guarantor hereby further agrees not to invoke any law relating to the marshaling of collateral which might cause delay in or impede the enforcement of the Bank's rights under this Guaranty or otherwise respecting the guaranteed obligations, and to the extent that it lawfully may do so, the Guarantor hereby irrevocably waives the benefits of all such laws. Except as otherwise provided by applicable law, the Bank shall have no duty as to the collection or protection of any collateral, if any, securing the guaranteed obligations beyond the safe custody thereof.

Guarantor will from time to time execute and deliver to the Bank, and take or cause to be taken, all such other further action as the Bank may request in order to effect and confirm or vest more securely in the Bank all the rights contemplated in this Guaranty (including, without limitation, to correct clerical errors) or respecting any of the obligations guaranteed hereby or to comply with applicable statute or law.

The execution and delivery of this Guaranty is in furtherance of the Guarantor's corporate purposes, is not contrary to or in violation of its charter or by-laws and the person executing this Guaranty on Guarantor's behalf has been duly authorized to do so.

This Guaranty, all acts and transactions hereunder, and the rights and obligations of the parties hereto shall be governed, construed and interpreted according to the laws of the State of Maine, shall be binding upon the heirs, executors, administrators, successors and assigns of the Guarantor and shall inure to the benefit of the Bank's successors and assigns.

If any provision of this Guaranty is found to be invalid, illegal or unenforceable, the validity of the remainder of the Guaranty shall not be affected.

Guarantor irrevocably submits to the nonexclusive jurisdiction of any Federal or state court sitting in Maine, over any suit, action or proceeding arising out of or relating to this Guaranty. Guarantor irrevocably waives, to the fullest extent it may effectively do so under applicable law, any objection it may now or hereafter have to the laying of the venue of any such suit, action or proceeding brought in any such court and any claim that the same has been brought in an inconvenient forum.

Guarantor is hereby notified that Maine law provides that a borrower or obligor may not maintain an action upon any agreement to lend money, extend credit, forbear from collection of a debt or make any other accommodation for the repayment of a debt for more than $250,000 unless the promise, contract or agreement is in writing and signed by a person lawfully authorized to sign for the party to be charged with the promise, contract or agreement. Guarantor agrees that the term "borrower" shall, for purposes of this paragraph, include Guarantor, and that the provisions of this paragraph shall apply to the notes and the guaranteed obligations whether or not the amount thereof exceeds $250,000.

GUARANTOR AND BANK EACH HEREBY KNOWINGLY, VOLUNTARILY AND INTENTIONALLY, AND AFTER AN OPPORTUNITY TO CONSULT WITH LEGAL COUNSEL, (A) WAIVE ANY AND ALL RIGHTS TO A TRIAL BY JURY IN ANY ACTION OR PROCEEDING IN CONNECTION WITH THIS GUARANTY, THE OBLIGATIONS GUARANTEED HEREBY, ALL MATTERS CONTEMPLATED HEREBY AND DOCUMENTS EXECUTED IN CONNECTION HEREWITH AND (B) AGREE NOT TO SEEK TO CONSOLIDATE ANY SUCH ACTION WITH ANY OTHER ACTION IN WHICH A JURY TRIAL CAN NOT BE, OR HAS NOT BEEN WAIVED. GUARANTOR CERTIFIES THAT NEITHER THE BANK NOR ANY OF ITS REPRESENTATIVES, AGENTS OR COUNSEL HAS REPRESENTED, EXPRESSLY OR OTHERWISE, THAT THE BANK WOULD NOT IN THE EVENT OF ANY SUCH PROCEEDING SEEK TO ENFORCE THIS WAIVER OF RIGHT TO TRIAL BY JURY.

Executed as an instrument under seal and dated August 22, 2006.

Guarantor:

Keystone Northeast, Inc.

By: _____
       Daniel Albert, President

Address:    3146 Wade Hampton Blvd
                  Taylors, South Carolina
                  29687

# Peoples Heritage Bank, N.A.

Member FDIC

## GUARANTY

FOR VALUE RECEIVED, namely the loans or other financial accommodations by Peoples Heritage Bank, N.A. ("Lender") to Madawaska Hardscape Products, Inc. (the "Borrower") and in consideration of any and all other loans or financial accommodations now or hereafter granted by said Lender in its discretion to said Borrower, whether direct or indirect, absolute or contingent, the undersigned hereby unconditionally guarantees the full and prompt payment and performance of all obligations of the Borrower to the Lender, including without limitation the obligations of Borrower to Lender under the terms and conditions of the documents, as each such document may be amended, extended, renewed or replaced by a written instrument executed by the applicable parties, and all other obligations, debts and liabilities of Borrower to Lender whatsoever, now existing or hereafter created, whether or not the undersigned has notice thereof or consents thereto, further including without limitation the payment of all principal, interest and other charges and amounts that may be due and owing from Borrower to Lender from time to time (all of the foregoing obligations, debts and liabilities of Borrower being hereinafter referred to collectively as the "Liabilities"); the Lender shall not be required to pursue or to exhaust its remedies against the Borrower, or its successors, or against any other party liable for payment of any obligation of Borrower, whether maker, guarantor, or otherwise, or against any property or assets mortgaged or pledged as security therefor, but upon nonpayment or nonperformance thereof may immediately demand and enforce payment and performance from the undersigned pursuant to this Guaranty. The undersigned hereby waives demand, notice and protest, and waives recourse to all suretyship and guarantorship defenses generally and agrees that the liability of the undersigned hereunder shall not be affected in any way by any release of security or by the granting of any indulgence by the Lender to any party liable for payment of any obligations guaranteed hereby, or to any other guarantor thereof, or to any other party; nor shall the liability of the undersigned be affected in any way by any failure, inability or neglect of the holder of said promissory note to take any action with respect to, to realized upon or to obtain, any security, rights, endorsements or guaranties relating to any of said obligations guaranteed hereby; nor shall the liability of the undersigned be affected by any fraud, bankruptcy, reduction of the amounts owed by Borrower to Lender to zero, or by any other matter; the undersigned hereby meaning to waive any and all matters whatsoever whereby the undersigned as Guarantor would or might be released, in whole or in part, from obligations hereof, it being the intent hereof that the undersigned Guarantor at all times be and remain liable to the Lender to the same extent as if the undersigned were jointly and severally liable with the Borrower to the Lender for payment of all Liabilities and performance of all of the terms and provisions of such Liabilities.

If any payment or amount paid on any debt of Borrower to Lender, whether or not the same has been applied to such debt by the holder thereof, must be returned to the Lender for any reason or turned over by the Lender to any other person or entity, the undersigned shall be liable for payment of such amounts as though they had never been so paid or applied. This Guaranty shall be binding upon the heirs, successors and assigns of the undersigned.

The undersigned hereby irrevocably agrees that any legal action or proceeding arising out of or relating to this Guaranty may be brought in any state or federal court in the State of Maine, at the election of Lender. By the execution and delivery hereof, the undersigned hereby irrevocably waives personal service of any and all process upon the undersigned in connection herewith, and consents that any or all such service of process be made by registered or certified mail, return receipt requested, postage prepaid, directed to the undersigned at the address given below (or such other addresses as the undersigned may from time to time provide to the Lender in writing), and any service so made shall be deemed to have been completed five (5) days after the same shall have been so mailed.

The amount of indebtedness of the Borrower guaranteed hereby is unlimited. The undersigned hereby agrees to pay all costs and expenses incurred by the Lender in seeking to enforce this Guaranty and in collecting or in attempting to collect any Liabilities from any party liable therefor, including without limitation all attorney's fees incurred in connection therewith.

The undersigned hereby grants to Lender, as security for the payment and performance of this Guaranty, a continuing lien on and security interest in any and all deposit accounts and funds on deposit therein (general or specific, time or demand, regardless of maturity or the Bank branch where the deposits are held) now or hereafter held by Lender and other sums credited by or due from Lender to the undersigned or subject to withdrawal by the undersigned, whether or not any other person or persons could also withdraw money therefrom (collectively hereinafter called the "Deposits"). During the continuance of any event of default Lender may "freeze" or place a "hold" on any Deposits by suspending the undersigned's right to withdraw the Deposits and may set off any Deposits (including those previously frozen or placed on hold) against any amounts payable by the undersigned under this Guaranty. Failure of the Lender to take necessary steps to preserve rights against any parties with respect to any property in its possession shall not be deemed a failure to exercise due care.

If, for any reason, any payment to Lender applied to amounts outstanding under any of the Liabilities is required to be refunded by Lender to Borrower or to any other Guarantor or turned over by Lender to any other person, the undersigned agrees to pay to Lender on demand an amount equal to the payment so refunded or turned over by Lender and the liability of the undersigned hereunder shall not be treated as having been discharged by the original payment to Lender giving rise to such refunded or turned over payment.

This Guaranty shall in all respects be a continuing, absolute and unconditional guaranty, and shall remain in full force and effect (notwithstanding, without limitation, the death or incompetency of the undersigned or that at any time or from time to time all Liabilities may have been paid in full), subject to discontinuance only upon actual receipt by the Lender of written notice from the undersigned or any person duly authorized and acting on behalf of the undersigned of the discontinuance hereof; provided, however, that no such notice of discontinuance shall affect or impair any of the agreements and obligations of the undersigned hereunder with respect to any Liabilities existing prior to the time of actual receipt of such notice by the Lender, any Liabilities created or acquired thereafter pursuant to any commitments to Borrower made by the Lender prior to the time of actual receipt of such notice by the Lender, any extensions or renewals of any of the foregoing, any interest on any of the foregoing, any expenses paid or incurred by the Lender in endeavoring to collect any of the foregoing and in enforcing this Guaranty against the undersigned; and all of the agreements and obligations of the undersigned under this Guaranty shall, notwithstanding any such notice of discontinuance, remain fully in effect until all such Liabilities (including any extensions or renewals thereof) and all such interest and expenses shall have been paid in full. Any amount received by the Lender from any source on account of the Liabilities may be applied by the Lender to the payment of such of the Liabilities, and in such order of application, as the Lender may from time to time elect.

The Lender may, from time to time, whether before or after any discontinuance of this Guaranty, without notice to the undersigned, assign or transfer any or all of the Liabilities or any interest therein; and, notwithstanding any such assignment or transfer or any subsequent assignment or transfer thereof, such Liabilities shall be and remain Liabilities for the purposes of this Guaranty, and each and every immediate and successive assignee or transferee of any of the Liabilities or of any interest therein shall, to the extent of the interest of such assignee or transferee in the Liabilities, be entitled to the benefits of this Guaranty to the same extent as if such assignee or transferee were the Lender; provided, however, that unless the Lender shall otherwise consent in writing (which consent shall not impair this Guaranty in any way whatsoever), the Lender shall have an unimpaired right, prior and superior to that of any such assignee or transferee, to enforce this Guaranty, for the benefit of the Lender, as to those of the Liabilities which the Lender has not assigned or transferred.

This Guaranty is secured pursuant to the terms and conditions of the following documents which, unless otherwise noted below, are dated on or about the date of this Guaranty (check as many as apply):

☒    a mortgage and security agreement on property located at <u>222 Riverside Street, Portland, Maine 04102</u>.

☐    a collateral assignment of leases and rentals relating to the property described in said mortgage and security agreement.

☐    a security agreement respecting personal property, namely (but without limitation):____.

☐    other:

☐    Guaranty Rider attached.

☐    this Guaranty is presently unsecured.

This Guaranty may also be secured by documents executed in the future by the undersigned.  This Guaranty may also be secured by existing security agreements, mortgages, guaranties or other documents from the undersigned to the Lender if the provisions of such existing documents state that they shall secure all future obligations or liabilities of the undersigned to Lender.

No delay on the part of the Lender in the exercise of any right or remedy shall operate as a waiver thereof, and no single or partial exercise by the Lender of any right or remedy shall preclude any other or further exercise thereof or the exercise of any other right or remedy; nor shall any modification or waiver of any of the provisions of this Guaranty be binding upon the Lender except as expressly set forth in a writing duly signed and delivered by an officer of the Lender.  All rights and remedies of the Lender shall be cumulative, and may be exercised at one time or from time to time, either singly or in combination.  No action of the Lender permitted hereunder shall in any affect or impair the rights of the Lender or the obligation of the undersigned under the Guaranty.  For the purposes of this Guaranty, Liabilities shall include all obligations of the Borrower to the Lender, notwithstanding any right or power of the Borrower or any other person or entity to assert any claim or defense as to the invalidity or unenforceability of any such obligation, and no such claim or defense shall affect or impair the obligations of the undersigned hereunder.

This Guaranty shall be construed in accordance with, and shall be governed by, the laws of the State of Maine.  Wherever possible each provision of this Guaranty shall be interpreted in such manner as to be effective and valid under applicable law, but if any provision hereof should be invalid or unenforceable under such law, such invalidity or unenforceability shall not affect in any way the continued validity and enforceability of any other provision hereof.

The undersigned hereby expressly waives: (a) notice of acceptance by the Lender of this Guaranty, (b) notice of the existence or creation or nonpayment of all or any of the Liabilities, (c) presentment, demand, notice of dishonor, protest, and all other notices whatsoever, and (d) any right to indemnity, contribution, exoneration or reimbursement of any kind by any other party directly or indirectly liable for any of the Liabilities, whether maker, endorser, guarantor or otherwise on account of any payment made hereunder, and any right of subrogation to the rights, remedies or security of the holder hereof on account of any payment made hereunder, and (e) all diligence in collection or protection of or realization upon the Liabilities or any thereof, any obligation hereunder, or any security for or guaranty of any of the foregoing.  THE UNDERSIGNED HEREBY IRREVOCABLY AND UNCONDITIONALLY WAIVES ANY AND ALL RIGHTS, WHETHER ARISING UNDER THE CONSTITUTIONS OF THE UNITED STATES OR OF ANY STATE, ANY RULES OF CIVIL PROCEDURE, COMMON OR STATUTORY LAW, OR OTHERWISE, TO DEMAND A TRIAL BY JURY IN ANY ACTION, SUIT, PROCEEDING OR COUNTERCLAIM INVOLVING LENDER ARISING OUT OF OR IN ANY WAY CONNECTED WITH THIS GUARANTY OR ANY OF THE LIABILITIES.

Dated: August 29, 2001

WITNESS:                                              GUARANTOR

                                                     222 RIVERSIDE CORP.


                                                     Printed Name:  Daniel B. Albert
                                                     By:            President
                                                     Address:       222 Riverside Street
                                                                    Portland, Maine 04102

i:\office\shared\loandocs\guaranty.doc   Rev. 06/01/00

ORIGINAL

## EXTENSION AGREEMENT

This MODIFICATION AGREEMENT is entered into as of **November 26, 2008**, between Madawaska Hardscape Products, Inc., a Maine corporation, with an address of 3146 Wade Hampton Blvd, Taylors, South Carolina 29687 (the "Borrower") and TD Bank, N.A., formerly known as TD Banknorth, N.A., f/k/a Banknorth, N.A., successor by merger to Peoples Heritage Bank, N.A., a National Association with an address of PO Box 9540, One Portland Square, Portland, Maine 04112-9540 (the "Bank").

WHEREAS, the Bank established a revolving line of credit (the "Revolving Loan") for Borrower respecting which Bank agreed to make advances to Borrower until **October 30, 2008** (the "Expiration Date") upon Borrower's request, but subject to the terms and conditions set forth in various loan documents, of up to **Six Hundred Thousand Dollars and Zero Cents ($600,000.00)** (the "Revolving Loan Amount");

WHEREAS, the Revolving Loan is evidenced by that certain Commercial Line of Credit Agreement, dated **August 29, 2001** (as previously amended, modified or supplemented, the "Note"), by the Borrower in favor of the Bank in the face amount of the Revolving Loan Amount;

WHEREAS, notwithstanding that the Note is due and payable ON DEMAND, the Bank's agreement to advance funds respecting the Note expires on the Expiration Date and there shall be no further advances respecting the Note unless the Bank agrees in writing in the sole discretion of the Bank to extend the Expiration Date;

WHEREAS, pursuant to one or more previous amendments, modifications or supplements the original principal amount of the Note was changed to **$600,000.00;**

WHEREAS, the Note and all other documents and instruments executed in connection with or relating to the Loan are referred to herein, collectively, as the "Loan Documents"; and all collateral granted to the Bank to secure the Loan is referred to herein, collectively, as the "Collateral";

WHEREAS, the Borrower has requested and the Bank has agreed to extend the Expiration Date of the Loan;

WHEREAS, the Borrower has requested and the Bank has agreed to amend certain of the covenants applicable to the Loan;

WHEREAS, the Borrower has requested and the Bank has agreed to reduce the amount of availability under the Loan Documents;

WHEREAS, the Borrower and the Bank have agreed to modify the interest rate(s) applicable to the Loan;

WHEREAS, the Borrower and the Bank have agreed to modify the Loan and the Loan Documents in accordance with the terms of this Agreement.

NOW THEREFORE, for good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Bank and the Borrower mutually agree as follows:



# 1. EXTENSION

1.1     Recitals and Representations Accurate. The above recitals are hereby made a part of this Agreement and the Borrower acknowledges and agrees that each of the recitals is true and correct.

1.2     Ratification. All of the terms, covenants, provisions, representations, warranties, and conditions of the Loan Documents, as amended or modified hereby, are ratified, acknowledged, confirmed, and continued in full force and effect as if fully restated herein.

1.3     Extension. The Expiration Date is hereby extended to **October 30, 2009** (the "New Expiration Date"), and accordingly, the Bank shall continue to make advances respecting the Revolving Loan, subject to the terms and conditions of the Loan Documents, until the New Expiration Date; provided, however, notwithstanding that the Bank has agreed to extend the Expiration Date until the New Expiration Date, the Note shall continue to be due and payable ON DEMAND. There shall be no advances respecting the Note after the New Expiration Date unless the Bank agrees in writing in the sole discretion of the Bank to extend the New Expiration Date.

1.4     Reduced Availability. Availability under the Loan Documents shall be reduced from **Six Hundred Thousand Dollars and Zero Cents ($600,000.00)** to **Four Hundred Thousand Dollars and Zero Cents ($400,000.00)** effective **June 30, 2009** (the "Revised Borrowing Limit") and all references to availability in the Loan Documents shall be modified accordingly. All amounts outstanding under the Loan Documents in excess of the Revised Borrowing Limit, and all fees due and owing under the Loan Documents, shall be paid to the Bank simultaneously with the execution of this Agreement.

1.5     Interest Rate. The Borrower and the Bank agree that notwithstanding anything to the contrary in the Note as of the date of this Agreement, the outstanding principal balance of the Note, as modified hereby, shall bear interest at a per annum rate equal to **Two Percent (2.00%)** above the Wall Street Journal Prime Rate (as hereinafter defined).

1.6     Index. Wall Street Journal Prime Rate means the rate published from time to time by the Wall Street Journal as the Base Rate on Corporate loans posted by at least 75% of the nation's 30 largest banks, or, in the event the Wall Street Journal ceases publication of the Prime Rate, the base, reference or other rate then designated by the Bank, in its sole discretion, for general commercial loan reference purposes, it being understood that such rate is a reference rate, not necessarily the lowest, established from time to time, which serves as the basis upon which effective interest rates are calculated for loans making reference thereto.

1.7     Amendment to Covenants. Notwithstanding anything to the contrary contained in the Loan Documents, the Borrower will not at any time or during any fiscal period (as applicable) fail to be in compliance with any of the financial covenants set forth in Schedule 1.7, attached hereto (the "Amended Covenants").

1.8     Representations and Warranties. The Borrower hereby represents and warrants to the Bank that:

    (a)     The person executing this Agreement is duly authorized to do so and to bind the Borrower to the terms hereof;

    (b)     Each of the Loan Documents is a valid and legal binding obligation of the Borrower, enforceable in accordance with its terms, and is not subject to any defenses, counterclaims, or offsets of any kind;

    (c)     All financial statements delivered to the Bank were true, accurate and complete, in all material respects, as of the date of delivery to the Bank;

    (d)     Since the date of the Loan Documents there has been no material adverse change in the

2

condition, financial or otherwise, of the Borrower, except as disclosed to the Bank in writing;

(e)    There exists no action, suit, proceeding or investigation, at law or in equity, before any court, board, administrative body or other entity, pending or threatened, affecting the Borrower or its property, wherein an unfavorable decision, ruling or finding would materially adversely affect the business operations, property or financial condition of the Borrower; and

(f)    There exists no event of default, or other circumstance that with the passage of time or giving of notice or both will become an event of default, under any of the Loan Documents.

1.9    Interest, Fees, Costs and Expenses. The Borrower shall, simultaneously with the execution of this Agreement, pay to the Bank all accrued interest owing on the Loan as of the date of this Agreement together with all fees, costs and expenses due and owing to the Bank by the Borrower under the Loan Documents.

## 2.  MISCELLANEOUS

2.1    Set-Off. The Borrower hereby grants to the Bank a continuing lien and security interest in any and all deposits or other sums at any time credited by or due from the Bank to the Borrower and any cash, securities, instruments or other property of the Borrower in the possession of the Bank, whether for safekeeping or otherwise, or in transit to or from the Bank (regardless of the reason the Bank had received the same or whether the Bank has conditionally released the same) as security for the full and punctual payment and performance of all of the liabilities and obligations of the Borrower to the Bank and such deposits and other sums may be applied or set off against such liabilities and obligations of the Borrower to the Bank at any time, whether or not such are then due, whether or not demand has been made and whether or not other collateral is then available to the Bank.

2.2    Release of the Bank. The Borrower hereby confirms that as of the date hereof it has no claim, set-off, counterclaim, defense, or other cause of action against the Bank including, but not limited to, a defense of usury, any claim or cause of action at common law, in equity, statutory or otherwise, in contract or in tort, for fraud, malfeasance, misrepresentation, financial loss, usury, deceptive trade practice, or any other loss, damage or liability of any kind, including, without limitation, any claim to exemplary or punitive damages arising out of any transaction between the Borrower and the Bank. To the extent that any such set-off, counterclaim, defense, or other cause of action may exist or might hereafter arise based on facts known or unknown that exist as of this date, such set-off, counterclaim, defense and other cause of action is hereby expressly and knowingly waived and released by the Borrower. The Borrower acknowledges that this release is part of the consideration to the Bank for the financial and other accommodations granted by the Bank in this Agreement.

2.3    Costs and Expenses. The Borrower shall pay to the Bank on demand any and all costs and expenses (including, without limitation, reasonable attorneys' fees and disbursements, court costs, litigation and other expenses) incurred or paid by the Bank in establishing, maintaining, protecting or enforcing any of the Bank's rights or any of the obligations owing by the Borrower to the Bank, including, without limitation, any and all such costs and expenses incurred or paid by the Bank in defending the Bank's security interest in, title or right to, the Collateral or in collecting or attempting to collect or enforcing or attempting to enforce payment of the Loan.

2.4    Indemnification. The Borrower shall indemnify, defend and hold the Bank and its directors, officers, employees, agents and attorneys (each an "Indemnitee") harmless against any claim brought or threatened against any Indemnitee by the Borrower or any guarantor or endorser of the obligations of the Borrower to the Bank, or any other person (as well as from attorneys' fees and expenses in connection therewith) on account of the Bank's relationship with the Borrower, or any guarantor or endorser of the obligations of the Borrower to the Bank (each of which may be defended, compromised, settled or pursued by the Bank with counsel of the Bank's election, but at the expense of the Borrower), except for any claim arising out of the gross negligence or willful misconduct of the Bank. The within indemnification

3

shall survive payment of the obligations of the Borrower to the Bank, and/or any termination, release or discharge executed by the Bank in favor of the Borrower.

2.5    Severability.  If any provision of this Agreement or portion of such provision or the application thereof to any person or circumstance shall to any extent be held invalid or unenforceable, the remainder of this Agreement (or the remainder of such provision) and the application thereof to other persons or circumstances shall not be affected thereby.

2.6    Counterparts.  This Agreement may be executed in two or more counterparts, each of which shall be an original, but all of which shall constitute but one agreement.

2.7    Complete Agreement.  This Agreement and the other Loan Documents constitute the entire agreement and understanding between and among the parties hereto relating to the subject matter hereof, and supersedes all prior proposals, negotiations, agreements and understandings among the parties hereto with respect to such subject matter.

2.8    Binding Effect of Agreement.  This Agreement shall be binding upon and inure to the benefit of the respective heirs, executors, administrators, legal representatives, successors and assigns of the parties hereto, and shall remain in full force and effect (and the Bank shall be entitled to rely thereon) until released in writing by the Bank.  The Bank may transfer and assign this Agreement and deliver the Collateral to the assignee, who shall thereupon have all of the rights of the Bank; and the Bank shall then be relieved and discharged of any responsibility or liability with respect to this Agreement and the Collateral.  Except as expressly provided herein or in the other Loan Documents, nothing, expressed or implied, is intended to confer upon any party, other than the parties hereto, any rights, remedies, obligations or liabilities under or by reason of this Agreement or the other Loan Documents.

2.9    Further Assurances.  The Borrower will from time to time execute and deliver to the Bank such documents, and take or cause to be taken, all such other further action, as the Bank may request in order to effect and confirm or vest more securely in the Bank all rights contemplated by this Agreement (including, without limitation, to correct clerical errors) or to vest more fully in or assure to the Bank the security interest in the Collateral or to comply with applicable statute or law and to facilitate the collection of the Collateral (including, without limitation, the execution of stock transfer orders and stock powers, endorsement of promissory notes and instruments and notifications to obligors on the Collateral).  To the extent permitted by applicable law, the Borrower authorizes the Bank to file financing statements, continuation statements or amendments without the Borrower's signature appearing thereon, and any such financing statements, continuation statements or amendments may be signed by the Bank on behalf of the Borrower, if necessary, and may be filed at any time in any jurisdiction.  The Bank may at any time and from time to time file financing statements, continuation statements and amendments thereto which contain any information required by the Maine Uniform Commercial Code, Title 11 M.R.S.A. as amended from time to time (the "Code") for the sufficiency or filing office acceptance of any financing statement, continuation statement or amendment, including whether the Borrower is an organization, the type of organization and any organization identification number issued to the Borrower.  The Borrower agrees to furnish any such information to the Bank promptly upon request.  In addition, the Borrower shall at any time and from time to time take such steps as the Bank may reasonably request for the Bank (i) to obtain an acknowledgment, in form and substance satisfactory to the Bank, of any bailee having possession of any of the Collateral that the bailee holds such Collateral for the Bank, (ii) to obtain "control" (as defined in the Code) of any Collateral comprised of deposit accounts, electronic chattel paper, letter of credit rights or investment property, with any agreements establishing control to be in form and substance satisfactory to Bank, and (iii) otherwise to insure the continued perfection and priority of the Bank's security interest in any of the Collateral and the preservation of its rights therein.  The Borrower hereby constitutes the Bank its attorney-in-fact to execute, if necessary, and file all filings required or so requested for the foregoing purposes, all acts of such attorney being hereby ratified and confirmed; and such power, being coupled with an interest, shall be irrevocable until this Agreement terminates in accordance with its terms, all obligations of the Borrower to the Bank are irrevocably paid in full and the Collateral is released.

4

2.10    Amendments and Waivers. This Agreement may be amended and the Borrower may take any action herein prohibited, or omit to perform any act herein required to be performed by it, if the Borrower shall obtain the Bank's prior written consent to each such amendment, action or omission to act. No delay or omission on the part of the Bank in exercising any right hereunder shall operate as a waiver of such right or any other right and waiver on any one or more occasions shall not be construed as a bar to or waiver of any right or remedy of the Bank on any future occasion.

2.11    Terms of Agreement. This Agreement shall continue in force and effect so long as any obligation of the Borrower to Bank shall be outstanding and is supplementary to each and every other agreement between the Borrower and Bank and shall not be so construed as to limit or otherwise derogate from any of the rights or remedies of Bank or any of the liabilities, obligations or undertakings of the Borrower under any such agreement, nor shall any contemporaneous or subsequent agreement between the Borrower and the Bank be construed to limit or otherwise derogate from any of the rights or remedies of Bank or any of the liabilities, obligations or undertakings of the Borrower hereunder, unless such other agreement specifically refers to this Agreement and expressly so provides.

2.12    Notices. Any notices under or pursuant to this Agreement shall be deemed duly received and effective if delivered in hand to any officer of agent of the Borrower or Bank, or if mailed by registered or certified mail, return receipt requested, addressed to the Borrower or Bank at the address set forth in this Agreement or as any party may from time to time designate by written notice to the other party.

2.13    ORAL AGREEMENTS. UNDER MAINE LAW, NO PROMISE, CONTRACT OR AGREEMENT TO LEND MONEY, EXTEND CREDIT, FOREBEAR FROM COLLECTION OF A DEBT OR MAKE ANY OTHER ACCOMMODATION FOR THE REPAYMENT OF A DEBT FOR MORE THAN $250,000 MAY BE ENFORCED IN COURT AGAINST A LENDER UNLESS THE PROMISE, CONTRACT OR AGREEMENT IS IN WRITING AND SIGNED BY THE LENDER. ACCORDINGLY, BORROWER CANNOT ENFORCE ANY ORAL PROMISE UNLESS IT IS CONTAINED IN LOAN DOCUMENTS SIGNED BY THE BANK, NOR CAN ANY CHANGE, FORBEARANCE, OR OTHER ACCOMMODATION RELATING TO ANY OF THE LOAN DOCUMENTS BE ENFORCED, UNLESS IT IS IN WRITING AND SIGNED BY THE BANK. BORROWER ALSO UNDERSTANDS AND AGREES THAT ALL FUTURE PROMISES, CONTRACTS OR AGREEMENTS OF THE BANK RELATING TO ANY OTHER TRANSACTION BETWEEN IT AND THE BANK CANNOT BE ENFORCED IN COURT UNLESS THEY ARE IN WRITING AND SIGNED BY THE BANK. BY EXECUTION OF THIS AGREEMENT AND ANY ALL NOTES, BORROWER HEREBY ACKNOWLEDGES AND AGREES THAT THE REQUIREMENT OF A WRITING DESCRIBED IN THIS PARAGRAPH SHALL APPLY TO EACH SUCH NOTE, THE LOAN DOCUMENTS, ANY EXTENSION, MODIFICATION, RENEWAL, FORBEARANCE OR OTHER ACCOMMODATION RELATING HERETO OR THERETO, AND TO ANY OTHER CREDIT RELATIONSHIP BETWEEN BORROWER AND THE BANK (WHETHER NOW EXISTING OR CREATED IN THE FUTURE), WHETHER OR NOT THE AMOUNT INVOLVED EXCEEDS $250,000.

2.14    Maine Law. This Agreement is intended to take effect as a sealed instrument and has been executed or completed and is to be performed in Maine, and it and all transactions thereunder or pursuant thereto shall be governed as to interpretation, validity, effect, rights, duties and remedies of the parties thereunder and in all other respects by the laws of Maine.

2.15    Reproductions. This Agreement and all documents which have been or may be hereinafter furnished by Borrower to the Bank may be reproduced by the Bank by any photographic, photostatic, microfilm, xerographic or similar process, and any such reproduction shall be admissible in evidence as the original itself in any judicial or administrative proceeding (whether or not the original is in existence and whether or not such reproduction was made in the regular course of business).

2.16    Venue. Borrower irrevocably submits to the nonexclusive jurisdiction of any Federal or state court sitting in Maine, over any suit, action or proceeding arising out of or relating to this Agreement. Borrower irrevocably waives to the fullest extent it may effectively do so under applicable law, any objection it may

now or hereafter have to the laying of the venue of any such suit, action or proceeding brought in any such court and any claim that the same has been brought in an inconvenient forum.

2.17    JURY WAIVER.  BORROWER AND BANK EACH HEREBY KNOWINGLY, VOLUNTARILY AND INTENTIONALLY, AND AFTER AN OPPORTUNITY TO CONSULT WITH LEGAL COUNSEL, WAIVE (A) ANY AND ALL RIGHTS TO A TRIAL BY JURY IN ANY ACTION OR PROCEEDING IN CONNECTION WITH THIS AGREEMENT, THE OBLIGATIONS, ALL MATTERS CONTEMPLATED HEREBY AND DOCUMENTS EXECUTED IN CONNECTION HEREWITH AND (B) AGREE NOT TO SEEK TO CONSOLIDATE ANY SUCH ACTION WITH ANY OTHER ACTION IN WHICH A JURY TRIAL CAN NOT BE, OR HAS NOT BEEN WAIVED.  THE BORROWER CERTIFIES THAT NEITHER THE BANK NOR ANY OF ITS REPRESENTATIVES, AGENTS OR COUNSEL HAS REPRESENTED, EXPRESSLY OR OTHERWISE, THAT THE BANK WOULD NOT IN THE EVENT OF ANY SUCH PROCEEDING SEEK TO ENFORCE THIS WAIVER OF RIGHT TO TRIAL BY JURY.

Executed under seal on this day November 26, 2008.

Borrower:

Madawaska Hardscape Products, Inc.

By:    _____
         Daniel B. Albert, President


Accepted: TD Bank, N.A.

By: _____
Name: Frederick G. Proctor
Title:   Duly Authorized Representative

6

© 2008 Medici, a division of Wolters Kluwer Financial Services

SCHEDULE 1.7

AMENDED COVENANTS

Non-Financial:

Operating Accounts.  Borrower shall maintain its operating accounts at **TD Banknorth, N.A.**

Line Advance Formula.  Advances on the Line of Credit are limited to **Seventy Percent (70%)** of qualifying Accounts Receivable aged less than 90 days, plus **Fifty Percent (50%)** of qualifying inventory.

**Financial:**

Line Clearance Covenant:

The Line Clearance covenant shall be waived for the Fiscal Year ending **2007**.  This shall be a one time waiver and shall not be deemed as a waiver for compliance in the future.

The Line of Credit is required to clear for a minimum of **30** consecutive days during the Fiscal Years of the Borrower commencing with Fiscal Year **2008**.

Debt Service Coverage - Post Distributions:

The Minimum Debt Service Coverage covenant shall be waived for the Fiscal Year ending **2007**.  This shall be a one time waiver and shall not be deemed as a waiver for compliance in the future.

Borrower shall maintain a minimum Debt Service Coverage Ratio of not less than 1.20 to 1.00, to be tested annually commencing with Fiscal Year **2008**.

Debt Service Coverage - Post Distributions shall be defined as (Net Income After Tax + Depreciation/Depletion/Amortization + Interest - Dividends/Distributions + Net Operating Income From 222 Riverside St. +/- Non-Recurring Items) divided by (Required Annual Principal & Interest Payments). Non-Recurring Items will include other income/expenses that are not part of the normal ongoing operations of the company, as determined by the Bank.

**Peoples**

*A division of Banknorth, N.A.*

Customer Loan #
Customer Note # ....
Customer Name 222 RIVERSIDE
Old Loan #
Old Note # ---.
SSN/TIN 0-

## PROMISSORY NOTE

| Principal | Loan Date | Maturity | Loan No | Call/.Coll | Account | Officer | Initials |
|---|---|---|---|---|---|---|---|
| $300,000.00 | 03-31-2003 | 03-30-2013 | | | 1067.14 | 102 | |

References in the shaded area are for Lender's use only and do not limit the applicability of this document to any particular loan or item.
Any item above containing " **** " has been omitted due to text length limitations.

Borrower: 222 Riverside Corp.
222 Riverside Street
Portland, ME 04102

Lender: Banknorth, N.A.
P.O. Box 9540
One Portland Square
Portland, ME 04112-9540

---

Principal Amount: $300,000.00                                    Date of Note: March 31, 2003

**PROMISE TO PAY.** 222 Riverside Corp. ("Borrower") promises to pay to Banknorth, N.A. ("Lender"), or order, in lawful money of the United States of America, the principal amount of Three Hundred Thousand & 00/100 Dollars ($300,000.00), together with interest on the unpaid principal balance from March 31, 2003, until paid in full.

**PAYMENT.** Subject to any payment changes resulting from changes in the Index, Borrower will pay this loan in 119 regular payments of $2,034.43 each and one irregular last payment estimated at $190,969.28. Borrower's first payment is due April 30, 2003, and all subsequent payments are due on the same day of each month after that. Borrower's final payment will be due on March 30, 2013, and will be for all principal and all accrued interest not yet paid. Payments include principal and interest. Unless otherwise agreed or required by applicable law, payments will be applied first to accrued unpaid interest, then to principal, and any remaining amount to any unpaid collection costs and late charges. The annual interest rate for this Note is computed on a 365/360 basis; that is, by applying the ratio of the annual interest rate over a year of 360 days, multiplied by the outstanding principal balance, multiplied by the actual number of days the principal balance is outstanding. Borrower will pay Lender at Lender's address shown above or at such other place as Lender may designate in writing.

**VARIABLE INTEREST RATE.** The interest rate on this Note is subject to change from time to time based on changes in an independent index which is the Prime Rate as published in the Money rates section of the Wall Street Journal (the "Index"). The Index is not necessarily the lowest rate charged by Lender on its loans. If the Index becomes unavailable during the term of this loan, Lender may designate a substitute index after notice to Borrower. Lender will tell Borrower the current index rate upon Borrower's request. The interest rate change will not occur more often than each day. Borrower understands that Lender may make loans based on other rates as well. The interest rate to be applied to the unpaid principal balance of this Note will be at a rate of 1.000 percentage point over the Index. NOTICE: Under no circumstances will the interest rate on this Note be more than the maximum rate allowed by applicable law. Whenever increases occur in the interest rate, Lender, at its option, may do one or more of the following: (A) increase Borrower's payments to ensure Borrower's loan will pay off by its original final maturity date, (B) increase Borrower's payments to cover accruing interest, (C) increase the number of Borrower's payments, and (D) continue Borrower's payments at the same amount and increase Borrower's final payment.

**PREPAYMENT.** Borrower may pay without penalty all or a portion of the amount owed earlier than it is due. Early payments will not, unless agreed to by Lender in writing, relieve Borrower of Borrower's obligation to continue to make payments under the payment schedule. Rather, early payments will reduce the principal balance due and may result in Borrower's making fewer payments. Borrower agrees not to send Lender payments marked "paid in full", "without recourse", or similar language. If Borrower sends such a payment, Lender may accept it without losing any of Lender's rights under this Note, and Borrower will remain obligated to pay any further amount owed to Lender. All written communications concerning disputed amounts, including any check or other payment instrument that indicates that the payment constitutes "payment in full" of the amount owed or that is tendered with other conditions or limitations or as full satisfaction of a disputed amount must be mailed or delivered to: Banknorth, N.A.; P.O. Box 9540; One Portland Square; Portland, ME 04112-9540.

**LATE CHARGE.** If a payment is 15 days or more late, Borrower will be charged 6.000% of the unpaid portion of the regularly scheduled payment.

**INTEREST AFTER DEFAULT.** Upon default, including failure to pay upon final maturity, Lender, at its option, may, if permitted under applicable law, increase the variable interest rate on this Note to 7.000 percentage points over the Index. The interest rate will not exceed the maximum rate permitted by applicable law.

**DEFAULT.** Each of the following shall constitute an event of default ("Event of Default") under this Note:

**Payment Default.** Borrower fails to make any payment when due under this Note.

**Other Defaults.** Borrower fails to comply with or to perform any other term, obligation, covenant or condition contained in this Note or in any of the related documents or to comply with or to perform any term, obligation, covenant or condition contained in any other agreement between Lender and Borrower.

**Default in Favor of Third Parties.** Borrower or any Grantor defaults under any loan, extension of credit, security agreement, purchase or sales agreement, or any other agreement, in favor of any other creditor or person that may materially affect any of Borrower's property or Borrower's ability to repay this Note or perform Borrower's obligations under this Note or any of the related documents.

**Environmental Default.** Failure of any party to comply with or perform when due any term, obligation, covenant or condition contained in any environmental agreement executed in connection with any loan.

**False Statements.** Any warranty, representation or statement made or furnished to Lender by Borrower or on Borrower's behalf under this Note or the related documents is false or misleading in any material respect, either now or at the time made or furnished or becomes false or misleading at any time thereafter.

**Insolvency.** The dissolution or termination of Borrower's existence as a going business, the insolvency of Borrower, the appointment of a receiver for any part of Borrower's property, any assignment for the benefit of creditors, any type of creditor workout, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Borrower.

**Creditor or Forfeiture Proceedings.** Commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help, repossession or any other method, by any creditor of Borrower or by any governmental agency against any collateral securing the loan. This includes a garnishment of any of Borrower's accounts, including deposit accounts, with Lender. However, this Event of Default shall not apply if there is a good faith dispute by Borrower as to the validity or reasonableness of the claim which is the basis of the creditor or forfeiture proceeding and if Borrower gives Lender written notice of the creditor or forfeiture proceeding and deposits with Lender monies or a surety bond for the creditor or forfeiture proceeding, in an amount determined by Lender, in its sole discretion, as being an adequate reserve or bond for the dispute.

**Events Affecting Guarantor.** Any of the preceding events occurs with respect to any Guarantor of any of the indebtedness or any Guarantor dies or becomes incompetent, or revokes or disputes the validity of, or liability under, any guaranty of the indebtedness evidenced by this Note.

**Change in Ownership.** Any change in ownership of twenty-five percent (25%) or more of the common stock of Borrower.

**Adverse Change.** A material adverse change occurs in Borrower's financial condition, or Lender believes the prospect of payment or performance of this Note is impaired.

**Insecurity.** Lender in good faith believes itself insecure.

**LENDER'S RIGHTS.** Upon default, Lender may declare the entire unpaid principal balance on this Note and all accrued unpaid interest immediately due, and then Borrower will pay that amount.

**ATTORNEYS' FEES; EXPENSES.** Lender may hire or pay someone else to help collect this Note if Borrower does not pay. Borrower will pay Lender that amount. This includes, subject to any limits under applicable law, Lender's attorneys' fees and Lender's legal expenses, whether or not there is a lawsuit, including attorneys' fees and legal expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), and appeals. If not prohibited by applicable law, Borrower also will pay any court costs, in addition to all other sums provided by law.

**WAIVE JURY.** Borrower hereby expressly and voluntarily waives any and all rights, whether arising under the Maine constitution, and any Rules of Civil Procedure, common law or otherwise, to demand a trial by jury in any action, suit, proceeding or counterclaim involving Lender as to any matter, claim or cause of action whatsoever arising out of or in any way related to any agreement or loan with Lender or any of the transactions

*Ex. E*

Loan No:

**PROMISSORY NOTE**
(Continued)

contemplated between the parties.

**GOVERNING LAW.** This Note will be governed by, construed and enforced in accordance with federal law and the laws of the State of Maine. This Note has been accepted by Lender in the State of Maine.

**DISHONORED ITEM FEE.** Borrower will pay a fee to Lender of $25.00 if Borrower makes a payment on Borrower's loan and the check or preauthorized charge with which Borrower pays is later dishonored.

**RIGHT OF SETOFF.** To the extent permitted by applicable law, Lender reserves a right of setoff in all Borrower's accounts with Lender (whether checking, savings, or some other account). This includes all accounts Borrower holds jointly with someone else and all accounts Borrower may open in the future. However, this does not include any IRA or Keogh accounts, or any trust accounts for which setoff would be prohibited by law. Borrower authorizes Lender, to the extent permitted by applicable law, to charge or setoff all sums owing on the indebtedness against any and all such accounts, and, at Lender's option, to administratively freeze all such accounts to allow Lender to protect Lender's charge and setoff rights provided in this paragraph.

**COLLATERAL.** Borrower acknowledges this Note is secured by a mortgage and security agreement and an assignment of rents both on property located at 222 Riverside Street, Portland, Maine;

Guaranties executed by Daniel B. Albert and Keystone Northeast, Inc.;

Guaranty executed by Madawaska Hardscape Products, Inc. secured by All Business Assets.

**SUCCESSOR INTERESTS.** The terms of this Note shall be binding upon Borrower, and upon Borrower's heirs, personal representatives, successors and assigns, and shall inure to the benefit of Lender and its successors and assigns.

**GENERAL PROVISIONS.** Lender may delay or forgo enforcing any of its rights or remedies under this Note without losing them. Borrower and any other person who signs, guarantees or endorses this Note, to the extent allowed by law, waive presentment, demand for payment, and notice of dishonor. Upon any change in the terms of this Note, and unless otherwise expressly stated in writing, no party who signs this Note, whether as maker, guarantor, accommodation maker or endorser, shall be released from liability. All such parties agree that Lender may renew or extend (repeatedly and for any length of time) this loan or release any party or guarantor or collateral; or impair, fail to realize upon or perfect Lender's security interest in the collateral; and take any other action deemed necessary by Lender without the consent of or notice to anyone. All such parties also agree that Lender may modify this loan without the consent of or notice to anyone other than the party with whom the modification is made. The obligations under this Note are joint and several.

**PRIOR TO SIGNING THIS NOTE, BORROWER READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS NOTE, INCLUDING THE VARIABLE INTEREST RATE PROVISIONS. BORROWER AGREES TO THE TERMS OF THE NOTE.**

**BORROWER ACKNOWLEDGES RECEIPT OF A COMPLETED COPY OF THIS PROMISSORY NOTE.**

**BORROWER:**

**222 RIVERSIDE CORP.**

By: _____
Daniel Albert, President of 222 Riverside Corp.

LASER PRO Lending  Ver. 1.31.00.002 Copr. Harland Financial Solutions, Inc. 1997, 2012   All Rights Reserved.   ME  D:\CAPPS\CFI\LPL\D20.FC  TR-1611  PR-10

**Peoples**
*A division of Banknorth, N.A.*

## COMMERCIAL SECURITY AGREEMENT

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|---|---|---|---|---|---|---|---|
| $300,000.00 | 03-31-2003 | 03-30-2013 | | | | 102 | |

References in the shaded area are for Lender's use only and do not limit the applicability of this document to any particular loan or item.
Any item above containing "****" has been omitted due to text length limitations.

**Borrower:** 222 Riverside Corp.
222 Riverside Street
Portland, ME 04102

**Lender:** Banknorth, N.A.
P.O. Box 9540
One Portland Square
Portland, ME 04112-9540

**Grantor:** Madawaska Hardscape Products, Inc.
222 Riverside Street
Portland, ME 04102

---

**THIS COMMERCIAL SECURITY AGREEMENT** dated March 31, 2003, is made and executed among Madawaska Hardscape Products, Inc. ("Grantor"); 222 Riverside Corp. ("Borrower"); and Banknorth, N.A. ("Lender").

**GRANT OF SECURITY INTEREST.** For valuable consideration, Grantor grants to Lender a security interest in the Collateral to secure the Indebtedness and agrees that Lender shall have the rights stated in this Agreement with respect to the Collateral, in addition to all other rights which Lender may have by law.

**COLLATERAL DESCRIPTION.** The word "Collateral" as used in this Agreement means the following described property, whether now owned or hereafter acquired, whether now existing or hereafter arising, and wherever located, in which Grantor is giving to Lender a security interest for the payment of the Indebtedness and performance of all other obligations under the Note and this Agreement:

All Inventory, Chattel Paper, Accounts, Equipment and General Intangibles

In addition, the word "Collateral" also includes all the following, whether now owned or hereafter acquired, whether now existing or hereafter arising, and wherever located:

(A) All accessions, attachments, accessories, tools, parts, supplies, replacements of and additions to any of the collateral described herein, whether added now or later.

(B) All products and produce of any of the property described in this Collateral section.

(C) All accounts, general intangibles, instruments, rents, monies, payments, and all other rights, arising out of a sale, lease, or other disposition of any of the property described in this Collateral section.

(D) All proceeds (including insurance proceeds) from the sale, destruction, loss, or other disposition of any of the property described in this Collateral section, and sums due from a third party who has damaged or destroyed the Collateral or from that party's insurer, whether due to judgment, settlement or other process.

(E) All records and data relating to any of the property described in this Collateral section, whether in the form of a writing, photograph, microfilm, microfiche, or electronic media, together with all of Grantor's right, title, and interest in and to all computer software required to utilize, create, maintain, and process any such records or data on electronic media.

Despite any other provision of this Agreement, Lender is not granted, and will not have, a nonpurchase money security interest in household goods, to the extent such a security interest would be prohibited by applicable law. In addition, if because of the type of any Property, Lender is required to give a notice of the right to cancel under Truth in Lending for the Indebtedness, then Lender will not have a security interest in such Collateral unless and until such a notice is given.

**BORROWER'S WAIVERS AND RESPONSIBILITIES.** Except as otherwise required under this Agreement or by applicable law, (A) Borrower agrees that Lender need not tell Borrower about any action or inaction Lender takes in connection with this Agreement; (B) Borrower assumes the responsibility for being and keeping informed about the Collateral; and (C) Borrower waives any defenses that may arise because of any action or inaction of Lender, including without limitation any failure of Lender to realize upon the Collateral or any delay by Lender in realizing upon the Collateral; and Borrower agrees to remain liable under the Note no matter what action Lender takes or fails to take under this Agreement.

**GRANTOR'S REPRESENTATIONS AND WARRANTIES.** Grantor warrants that: (A) this Agreement is executed at Borrower's request and not at the request of Lender; (B) Grantor has the full right, power and authority to enter into this Agreement and to pledge the Collateral to Lender; (C) Grantor has established adequate means of obtaining from Borrower on a continuing basis information about Borrower's financial condition; and (D) Lender has made no representation to Grantor about Borrower or Borrower's creditworthiness.

**GRANTOR'S WAIVERS.** Grantor waives all requirements of presentment, protest, demand, and notice of dishonor or non-payment to Borrower or Grantor, or any other party to the Indebtedness or the Collateral. Lender may do any of the following with respect to any obligation of any Borrower, without first obtaining the consent of Grantor: (A) grant any extension of time for any payment, (B) grant any renewal, (C) permit any modification of payment terms or other terms, or (D) exchange or release any Collateral or other security. No such act or failure to act shall affect Lender's rights against Grantor or the Collateral.

**RIGHT OF SETOFF.** To the extent permitted by applicable law, Lender reserves a right of setoff in all Grantor's accounts with Lender (whether checking, savings, or some other account). This includes all accounts Grantor holds jointly with someone else and all accounts Grantor may open in the future. However, this does not include any IRA or Keogh accounts, or any trust accounts for which setoff would be prohibited by law. Grantor authorizes Lender, to the extent permitted by applicable law, to charge or setoff all sums owing on the Indebtedness against any and all such accounts, and, at Lender's option, to administratively freeze all such accounts to allow Lender to protect Lender's charge and setoff rights provided in this paragraph.

**GRANTOR'S REPRESENTATIONS AND WARRANTIES WITH RESPECT TO THE COLLATERAL.** With respect to the Collateral, Grantor represents and promises to Lender that:

**Perfection of Security Interest.** Grantor agrees to execute financing statements and to take whatever other actions are requested by Lender to perfect and continue Lender's security interest in the Collateral. Upon request of Lender, Grantor will deliver to Lender any and all of the documents evidencing or constituting the Collateral, and Grantor will note Lender's interest upon any and all chattel paper if not delivered to Lender for possession by Lender.

**Notices to Lender.** Grantor will promptly notify Lender in writing at Lender's address shown above (or such other addresses as Lender may designate from time to time) prior to any (1) change in Grantor's name; (2) change in Grantor's assumed business name(s); (3) change in the management of the Corporation Grantor; (4) change in the authorized signer(s); (5) change in Grantor's principal office address; (6) change in Grantor's state of organization; (7) conversion of Grantor to a new or different type of business entity; or (8) change in any other aspect of Grantor that directly or indirectly relates to any agreements between Grantor and Lender. No change in Grantor's name or state of organization will take effect until after Lender has received notice.

**No Violation.** The execution and delivery of this Agreement will not violate any law or agreement governing Grantor or to which Grantor is a party, and its certificate or articles of incorporation and bylaws do not prohibit any term or condition of this Agreement.

**Enforceability of Collateral.** To the extent the Collateral consists of accounts, chattel paper, or general intangibles, as defined by the Uniform Commercial Code, the Collateral is enforceable in accordance with its terms, is genuine, and fully complies with all applicable laws and regulations concerning form, content and manner of preparation and execution, and all persons appearing to be obligated on the Collateral have authority and capacity to contract and are in fact obligated as they appear to be on the Collateral. At the time any Account becomes subject to a security interest in favor of Lender, the Account shall be a good and valid account representing an undisputed, bona fide indebtedness incurred by the account debtor, for merchandise held subject to delivery instructions or previously shipped or delivered pursuant to a contract of sale, or for services previously performed by Grantor with or for the account debtor. So long as this Agreement remains in effect, Grantor shall not, without Lender's prior written consent, compromise, settle, adjust, or extend payment under or with regard to any such Accounts. There shall be no setoffs or counterclaims against any of the Collateral, and no agreement shall have been made under which any deductions or discounts may be claimed concerning the Collateral except those disclosed to Lender in writing.


Ex. F

Loan No:

## COMMERCIAL SECURITY AGREEMENT
### (Continued)

**Location of the Collateral.** Except in the ordinary course of Grantor's business, Grantor agrees to keep the Collateral (or to the extent the Collateral consists of intangible property such as accounts or general intangibles, the records concerning the Collateral) at Grantor's address shown above or at such other locations as are acceptable to Lender. Upon Lender's request, Grantor will deliver to Lender in form satisfactory to Lender a schedule of real properties and Collateral locations relating to Grantor's operations, including without limitation the following: (1) all real property Grantor owns or is purchasing; (2) all real property Grantor is renting or leasing; (3) all storage facilities Grantor owns, rents, leases, or uses; and (4) all other properties where Collateral is or may be located.

**Removal of the Collateral.** Except in the ordinary course of Grantor's business, including the sales of inventory, Grantor shall not remove the Collateral from its existing location without Lender's prior written consent. To the extent that the Collateral consists of vehicles, or other titled property, Grantor shall not take or permit any action which would require application for certificates of title for the vehicles outside the State of Maine, without Lender's prior written consent. Grantor shall, whenever requested, advise Lender of the exact location of the Collateral.

**Transactions Involving Collateral.** Except for inventory sold or accounts collected in the ordinary course of Grantor's business, or as otherwise provided for in this Agreement, Grantor shall not sell, offer to sell, or otherwise transfer or dispose of the Collateral. While Grantor is not in default under this Agreement, Grantor may sell inventory, but only in the ordinary course of its business and only to buyers who qualify as a buyer in the ordinary course of business. A sale in the ordinary course of Grantor's business does not include a transfer in partial or total satisfaction of a debt or any bulk sale. Grantor shall not pledge, mortgage, encumber or otherwise permit the Collateral to be subject to any lien, security interest, encumbrance, or charge, other than the security interest provided for in this Agreement, without the prior written consent of Lender. This includes security interests even if junior in right to the security interests granted under this Agreement. Unless waived by Lender, all proceeds from any disposition of the Collateral (for whatever reason) shall be held in trust for Lender and shall not be commingled with any other funds; provided however, this requirement shall not constitute consent by Lender to any sale or other disposition. Upon receipt, Grantor shall immediately deliver any such proceeds to Lender.

**Title.** Grantor represents and warrants to Lender that Grantor holds good and marketable title to the Collateral, free and clear of all liens and encumbrances except for the lien of this Agreement. No financing statement covering any of the Collateral is on file in any public office other than those which reflect the security interest created by this Agreement or to which Lender has specifically consented. Grantor shall defend Lender's rights in the Collateral against the claims and demands of all other persons.

**Repairs and Maintenance.** Grantor agrees to keep and maintain, and to cause others to keep and maintain, the Collateral in good order, repair and condition at all times while this Agreement remains in effect. Grantor further agrees to pay when due all claims for work done on, or services rendered or material furnished in connection with the Collateral so that no lien or encumbrance may ever attach to or be filed against the Collateral.

**Inspection of Collateral.** Lender and Lender's designated representatives and agents shall have the right at all reasonable times to examine and inspect the Collateral wherever located.

**Taxes, Assessments and Liens.** Grantor will pay when due all taxes, assessments and liens upon the Collateral, its use or operation, upon this Agreement, upon any promissory note or notes evidencing the Indebtedness, or upon any of the other Related Documents. Grantor may withhold any such payment or may elect to contest any lien if Grantor is in good faith conducting an appropriate proceeding to contest the obligation to pay and so long as Lender's interest in the Collateral is not jeopardized. If the Collateral is subjected to a lien which is not discharged within fifteen (15) days, Grantor shall deposit with Lender cash, a sufficient corporate surety bond or other security satisfactory to Lender in an amount adequate to provide for the discharge of the lien plus any interest, costs, attorneys' fees or other charges that could accrue as a result of foreclosure or sale of the Collateral. In any contest Grantor shall defend itself and Lender and shall satisfy any final adverse judgment before enforcement against the Collateral. Grantor shall name Lender as an additional obligee under any surety bond furnished in the contest proceedings. Grantor further agrees to furnish Lender with evidence that such taxes, assessments, and governmental and other charges have been paid in full and in a timely manner. Grantor may withhold any such payment or may elect to contest any lien if Grantor is in good faith conducting an appropriate proceeding to contest the obligation to pay and so long as Lender's interest in the Collateral is not jeopardized.

**Compliance with Governmental Requirements.** Grantor shall comply promptly with all laws, ordinances, rules and regulations of all governmental authorities, including without limitation all environmental laws, ordinances, rules and regulations, now or hereafter in effect, applicable to the ownership, production, disposition, or use of the Collateral, including all laws or regulations relating to the undue erosion of highly-erodible land or relating to the conversion of wetlands for the production of an agricultural product or commodity, and further including without limitation the Federal Fair Labor Standards Act. Grantor may contest in good faith any such law, ordinance or regulation and withhold compliance during any proceeding, including appropriate appeals, so long as Lender's interest in the Collateral, in Lender's opinion, is not jeopardized.

**Hazardous Substances.** Grantor represents and warrants that the Collateral never has been, and never will be so long as this Agreement remains a lien on the Collateral, used in violation of any Environmental Laws or for the generation, manufacture, storage, transportation, treatment, disposal, release or threatened release of any Hazardous Substance. The representations and warranties contained herein are based on Grantor's due diligence in investigating the Collateral for Hazardous Substances. Grantor hereby (1) releases and waives any future claims against Lender for indemnity or contribution in the event Grantor becomes liable for cleanup or other costs under any Environmental Laws, and (2) agrees to indemnify and hold harmless Lender against any and all claims and losses resulting from a breach of this provision of this Agreement. This obligation to indemnify shall survive the payment of the Indebtedness and the satisfaction of this Agreement.

**Maintenance of Casualty Insurance.** Grantor shall procure and maintain all risks insurance, including without limitation fire, theft and liability coverage together with such other insurance as Lender may require with respect to the Collateral, in form, amounts, coverages and basis reasonably acceptable to Lender and issued by a company or companies reasonably acceptable to Lender. Grantor, upon request of Lender, will deliver to Lender from time to time the policies or certificates of insurance in form satisfactory to Lender, including stipulations that coverages will not be cancelled or diminished without at least thirty (30) days' prior written notice to Lender and not including any disclaimer of the insurer's liability for failure to give such a notice. Each insurance policy also shall include an endorsement providing that coverage in favor of Lender will not be impaired in any way by any act, omission or default of Grantor or any other person. In connection with all policies covering assets in which Lender holds or is offered a security interest, Grantor will provide Lender with such loss payable or other endorsements as Lender may require. If Grantor at any time fails to obtain or maintain any insurance as required under this Agreement, Lender may (but shall not be obligated to) obtain such insurance as Lender deems appropriate, including if Lender so chooses "single interest insurance," which will cover only Lender's interest in the Collateral.

**Application of Insurance Proceeds.** Grantor shall promptly notify Lender of any loss or damage to the Collateral. Lender may make proof of loss if Grantor fails to do so within fifteen (15) days of the casualty. All proceeds of any insurance on the Collateral, including accrued proceeds thereon, shall be held by Lender as part of the Collateral. If Lender consents to repair or replacement of the damaged or destroyed Collateral, Lender shall, upon satisfactory proof of expenditure, pay or reimburse Grantor from the proceeds for the reasonable cost of repair or restoration. If Lender does not consent to repair or replacement of the Collateral, Lender shall retain a sufficient amount of the proceeds to pay all of the Indebtedness, and shall pay the balance to Grantor. Any proceeds which have not been disbursed within six (6) months after their receipt and which Grantor has not committed to the repair or restoration of the Collateral shall be used to prepay the Indebtedness.

**Insurance Reserves.** Lender may require Grantor to maintain with Lender reserves for payment of insurance premiums, which reserves shall be created by monthly payments from Grantor of a sum estimated by Lender to be sufficient to produce, at least fifteen (15) days before the premium due date, amounts at least equal to the insurance premiums to be paid. If fifteen (15) days before payment is due, the reserve funds are insufficient, Grantor shall upon demand pay any deficiency to Lender. The reserve funds shall be held by Lender as a general deposit and shall constitute a non-interest-bearing account which Lender may satisfy by payment of the insurance premiums required to be paid by Grantor as they become due. Lender does not hold the reserve funds in trust for Grantor, and Lender is not the agent of Grantor for payment of the insurance premiums required to be paid by Grantor. The responsibility for the payment of premiums shall remain Grantor's sole responsibility.

**Insurance Reports.** Grantor, upon request of Lender, shall furnish to Lender reports on each existing policy of insurance showing such information as Lender may reasonably request including the following: (1) the name of the insurer; (2) the risks insured; (3) the amount of the policy; (4) the property insured; (5) the then current value on the basis of which insurance has been obtained and the manner of determining that value; and (6) the expiration date of the policy. In addition, Grantor shall upon request by Lender (however not more often than annually) have an independent appraiser satisfactory to Lender determine, as applicable, the cash value or replacement cost of the Collateral.

**Financing Statements.** Grantor authorizes Lender to file a UCC-1 financing statement, or alternatively, a copy of this Agreement to perfect Lender's security interest. At Lender's request, Grantor additionally agrees to sign all other documents that are necessary to perfect, protect, and continue Lender's security interest in the Property. This includes making sure Lender is shown as the first and only security interest holder on the title covering the Property. Grantor will pay all filing fees, title transfer fees, and other fees and costs involved unless prohibited by law or unless Lender is required by law to pay such fees and costs. Grantor irrevocably appoints Lender to execute financing

Loan No:

## COMMERCIAL SECURITY AGREEMENT
### (Continued)

Page 3

statements and documents of title in Grantor's name and to execute all documents necessary to transfer title if there is a default. Lender may file a copy of this Agreement as a financing statement. If Grantor changes Grantor's name or address, or the name or address of any person granting a security interest under this Agreement changes, Grantor will promptly notify the Lender of such change.

**GRANTOR'S RIGHT TO POSSESSION AND TO COLLECT ACCOUNTS.** Until default and except as otherwise provided below with respect to accounts, Grantor may have possession of the tangible personal property and beneficial use of all the Collateral and may use it in any lawful manner not inconsistent with this Agreement or the Related Documents, provided that Grantor's right to possession and beneficial use shall not apply to any Collateral where possession of the Collateral by Lender is required by law to perfect Lender's security interest in such Collateral. Until otherwise notified by Lender, Grantor may collect any of the Collateral consisting of accounts. At any time and even though no Event of Default exists, Lender may exercise its rights to collect the accounts and to notify account debtors to make payments directly to Lender for application to the Indebtedness. If Lender at any time has possession of any Collateral, whether before or after an Event of Default, Lender shall be deemed to have exercised reasonable care in the custody and preservation of the Collateral if Lender takes such action for that purpose as Grantor shall request or as Lender, in Lender's sole discretion, shall deem appropriate under the circumstances, but failure to honor any request by Grantor shall not of itself be deemed to be a failure to exercise reasonable care. Lender shall not be required to take any steps necessary to preserve any rights in the Collateral against prior parties, nor to protect, preserve or maintain any security interest given to secure the Indebtedness.

**LENDER'S EXPENDITURES.** If any action or proceeding is commenced that would materially affect Lender's interest in the Collateral or if Grantor fails to comply with any provision of this Agreement or any Related Documents, including but not limited to Grantor's failure to discharge or pay when due any amounts Grantor is required to discharge or pay under this Agreement or any Related Documents, Lender on Grantor's behalf may (but shall not be obligated to) take any action that Lender deems appropriate, including but not limited to discharging or paying all taxes, liens, security interests, encumbrances and other claims, at any time levied or placed on the Collateral and paying all costs for insuring, maintaining and preserving the Collateral. All such expenditures incurred or paid by Lender for such purposes will then bear interest at the rate charged under the Note from the date incurred or paid by Lender to the date of repayment by Grantor. All such expenses will become a part of the Indebtedness and, at Lender's option, will (A) be payable on demand; (B) be added to the balance of the Note and be apportioned among and be payable with any installment payments to become due during either (1) the term of any applicable insurance policy; or (2) the remaining term of the Note; or (C) be treated as a balloon payment which will be due and payable at the Note's maturity. The Agreement also will secure payment of these amounts. Such right shall be in addition to all other rights and remedies to which Lender may be entitled upon Default.

**DEFAULT.** Each of the following shall constitute an Event of Default under this Agreement:

**Payment Default.** Borrower fails to make any payment when due under the Indebtedness.

**Environmental Default.** Failure of any party to comply with or perform when due any term, obligation, convenant or condition contained in any environmental agreement executed in connection with any Indebtedness.

**Other Defaults.** Borrower or Grantor fails to comply with or to perform any other term, obligation, covenant or condition contained in this Agreement or in any of the Related Documents or to comply with or to perform any term, obligation, covenant or condition contained in any other agreement between Lender and Borrower or Grantor.

**Default in Favor of Third Parties.** Should Borrower or any Grantor default under any loan, extension of credit, security agreement, purchase or sales agreement, or any other agreement, in favor of any other creditor or person that may materially affect any of Grantor's property or Borrower's or any Grantor's ability to repay the Indebtedness or perform their respective obligations under this Agreement or any of the Related Documents.

**False Statements.** Any warranty, representation or statement made or furnished to Lender by Borrower or Grantor or on Borrower's or Grantor's behalf under this Agreement or the Related Documents is false or misleading in any material respect, either now or at the time made or furnished or becomes false or misleading at any time thereafter.

**Defective Collateralization.** This Agreement or any of the Related Documents ceases to be in full force and effect (including failure of any collateral document to create a valid and perfected security interest or lien) at any time and for any reason.

**Insolvency.** The dissolution or termination of Borrower's or Grantor's existence as a going business, the insolvency of Borrower or Grantor, the appointment of a receiver for any part of Borrower's or Grantor's property, any assignment for the benefit of creditors, any type of creditor workout, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Borrower or Grantor.

**Creditor or Forfeiture Proceedings.** Commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help, repossession or any other method, by any creditor of Borrower or Grantor or by any governmental agency against any collateral securing the Indebtedness. This includes a garnishment of any of Borrower's or Grantor's accounts, including deposit accounts, with Lender. However, this Event of Default shall not apply if there is a good faith dispute by Borrower or Grantor as to the validity or reasonableness of the claim which is the basis of the creditor or forfeiture proceeding and if Borrower or Grantor gives Lender written notice of the creditor or forfeiture proceeding and deposits with Lender monies or a surety bond for the creditor or forfeiture proceeding, in an amount determined by Lender, in its sole discretion, as being an adequate reserve or bond for the dispute.

**Events Affecting Guarantor.** Any of the preceding events occurs with respect to Guarantor of any of the Indebtedness or Guarantor dies or becomes incompetent or revokes or disputes the validity of, or liability under, any Guaranty of the Indebtedness.

**Adverse Change.** A material adverse change occurs in Borrower's or Grantor's financial condition, or Lender believes the prospect of payment or performance of the Indebtedness is impaired.

**Insecurity.** Lender in good faith believes itself insecure.

**RIGHTS AND REMEDIES ON DEFAULT.** If an Event of Default occurs under this Agreement, at any time thereafter, Lender shall have all the rights of a secured party under the Maine Uniform Commercial Code. In addition and without limitation, Lender may exercise any one or more of the following rights and remedies:

**Accelerate Indebtedness.** Lender may declare the entire Indebtedness, including any prepayment penalty which Borrower would be required to pay, immediately due and payable, without notice of any kind to Borrower or Grantor.

**Assemble Collateral.** Lender may require Grantor to deliver to Lender all or any portion of the Collateral and any and all certificates of title and other documents relating to the Collateral. Lender may require Grantor to assemble the Collateral and make it available to Lender at a place to be designated by Lender. Lender also shall have full power to enter upon the property of Grantor to take possession of and remove the Collateral. If the Collateral contains other goods not covered by this Agreement at the time of repossession, Grantor agrees Lender may take such other goods, provided that Lender makes reasonable efforts to return them to Grantor after repossession.

**Sell the Collateral.** Lender shall have full power to sell, lease, transfer, or otherwise deal with the Collateral or proceeds thereof in Lender's own name or that of Grantor. Lender may sell the Collateral at public auction or private sale. Unless the Collateral threatens to decline speedily in value or is of a type customarily sold on a recognized market, Lender will give Grantor, and other persons as required by law, reasonable notice of the time and place of any public sale, or the time after which any private sale or any other disposition of the Collateral is to be made. However, no notice need be provided to any person who, after Event of Default occurs, enters into and authenticates an agreement waiving that person's right to notification of sale. The requirements of reasonable notice shall be met if such notice is given at least ten (10) days before the time of the sale or disposition. All expenses relating to the disposition of the Collateral, including without limitation the expenses of retaking, holding, insuring, preparing for sale and selling the Collateral, shall become a part of the Indebtedness secured by this Agreement and shall be payable on demand, with interest at the Note rate from date of expenditure until repaid.

**Appoint Receiver.** Lender shall have the right to have a receiver appointed to take possession of all or any part of the Collateral, with the power to protect and preserve the Collateral, to operate the Collateral preceding foreclosure or sale, and to collect the Rents from the Collateral and apply the proceeds, over and above the cost of the receivership, against the Indebtedness. The receiver may serve without bond if permitted by law. Lender's right to the appointment of a receiver shall exist whether or not the apparent value of the Collateral exceeds the Indebtedness by a substantial amount. Employment by Lender shall not disqualify a person from serving as a receiver.

**Collect Revenues, Apply Accounts.** Lender, either itself or through a receiver, may collect the payments, rents, income, and revenues from the Collateral. Lender may at any time in Lender's discretion transfer any Collateral into Lender's own name or that of Lender's nominee and receive the payments, rents, income, and revenues therefrom and hold the same as security for the Indebtedness or apply it to payment of the Indebtedness in such order of preference as Lender may determine. Insofar as the Collateral consists of accounts, general intangibles, insurance policies, instruments, chattel paper, choses in action, or similar property, Lender may demand, collect, receipt for, settle, compromise, adjust, sue for, foreclose, or realize on the Collateral as Lender may determine, whether or not Indebtedness or Collateral is then due. For these purposes, Lender may, on behalf of and in the name of Grantor, receive, open and dispose of mail addressed to Grantor; change any address to which mail and payments are to be sent; and endorse notes, checks, drafts, money orders, documents of title, instruments and items pertaining to payment, shipment, or storage of any Collateral. To facilitate collection, Lender

Loan No: ⌐

## COMMERCIAL SECURITY AGREEMENT
### (Continued)

Page 4

may notify account debtors and obligors on any Collateral to make payments directly to Lender.

**Obtain Deficiency.** If Lender chooses to sell any or all of the Collateral, Lender may obtain a judgment against Borrower for any deficiency remaining on the Indebtedness due to Lender after application of all amounts received from the exercise of the rights provided in this Agreement. Borrower shall be liable for a deficiency even if the transaction described in this subsection is a sale of accounts or chattel paper.

**Other Rights and Remedies.** Lender shall have all the rights and remedies of a secured creditor under the provisions of the Uniform Commercial Code, as may be amended from time to time. In addition, Lender shall have and may exercise any or all other rights and remedies it may have available at law, in equity, or otherwise.

**Election of Remedies.** Except as may be prohibited by applicable law, all of Lender's rights and remedies, whether evidenced by this Agreement, the Related Documents, or by any other writing, shall be cumulative and may be exercised singularly or concurrently. Election by Lender to pursue any remedy shall not exclude pursuit of any other remedy, and an election to make expenditures or to take action to perform an obligation of Grantor under this Agreement, after Grantor's failure to perform, shall not affect Lender's right to declare a default and exercise its remedies.

**LEGAL EXISTENCE.** Grantor's full, legal name is <u>Madawaska Hardscapes Products, Inc.</u> Grantor is organized and existing in good standing under the State of Maine, and its organizational number is ____ ne chief executive office of Grantor and all Grantor's additional places of business, if any, and the location of all the Collateral is <u>444 Riverside Street, Portland, Maine 04102</u>. Grantor will not change its name, organizational number, the jurisdiction of its organization and existence, nor their chief executive office nor any other place of business, nor the location on any Collateral, without 30 days' prior written notice to the Grantee.

**MISCELLANEOUS PROVISIONS.** The following miscellaneous provisions are a part of this Agreement:

**Amendments.** This Agreement, together with any Related Documents, constitutes the entire understanding and agreement of the parties as to the matters set forth in this Agreement. No alteration of or amendment to this Agreement shall be effective unless given in writing and signed by the party or parties sought to be charged or bound by the alteration or amendment.

**Attorneys' Fees; Expenses.** Grantor agrees to pay upon demand Lender's costs and expenses, including Lender's attorneys' fees and Lender's legal expenses, incurred in connection with the enforcement of this Agreement. Lender may hire or pay someone else to help enforce this Agreement, and Grantor shall pay the costs and expenses of such enforcement. Costs and expenses include Lender's attorneys' fees and legal expenses whether or not there is a lawsuit, including attorneys' fees and legal expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), appeals, and any anticipated post-judgment collection services. Grantor also shall pay all court costs and such additional fees as may be directed by the court.

**Caption Headings.** Caption headings in this Agreement are for convenience purposes only and are not to be used to interpret or define the provisions of this Agreement.

**Governing Law.** This Agreement will be governed by, construed and enforced in accordance with federal law and the laws of the State of Maine. This Agreement has been accepted by Lender in the State of Maine.

**Joint and Several Liability.** All obligations of Borrower and Grantor under this Agreement shall be joint and several, and all references to Grantor shall mean each and every Grantor, and all references to Borrower shall mean each and every Borrower. This means that each Borrower and Grantor signing below is responsible for all obligations in this Agreement. Where any one or more of the parties is a corporation, partnership, limited liability company or similar entity, it is not necessary for Lender to inquire into the powers of any of the officers, directors, partners, members, or other agents acting or purporting to act on the entity's behalf, and any obligations made or created in reliance upon the professed exercise of such powers shall be guaranteed under this Agreement.

**No Waiver by Lender.** Lender shall not be deemed to have waived any rights under this Agreement unless such waiver is given in writing and signed by Lender. No delay or omission on the part of Lender in exercising any right shall operate as a waiver of such right or any other right. A waiver by Lender of a provision of this Agreement shall not prejudice or constitute a waiver of Lender's right otherwise to demand strict compliance with that provision or any other provision of this Agreement. No prior waiver by Lender, nor any course of dealing between Lender and Grantor, shall constitute a waiver of any of Lender's rights or of any of Grantor's obligations as to any future transactions. Whenever the consent of Lender is required under this Agreement, the granting of such consent by Lender in any instance shall not constitute continuing consent to subsequent instances where such consent is required and in all cases such consent may be granted or withheld in the sole discretion of Lender.

**Notices.** Any notice required to be given under this Agreement shall be given in writing, and shall be effective when actually delivered, when actually received by telefacsimile (unless otherwise required by law), when deposited with a nationally recognized overnight courier, or, if mailed, when deposited in the United States mail, as first class, certified or registered mail postage prepaid, directed to the addresses shown near the beginning of this Agreement. Any party may change its address for notices under this Agreement by giving formal written notice to the other parties, specifying that the purpose of the notice is to change the party's address. For notice purposes, Grantor agrees to keep Lender informed at all times of Grantor's current address. Unless otherwise provided or required by law, if there is more than one Grantor, any notice given by Lender to any Grantor is deemed to be notice given to all Grantors.

**Power of Attorney.** Grantor hereby appoints Lender as Grantor's irrevocable attorney-in-fact for the purpose of executing any documents necessary to perfect, amend, or to continue the security interest granted in this Agreement or to demand termination of filings of other secured parties. Lender may at any time, and without further authorization from Grantor, file a carbon, photographic or other reproduction of any financing statement or of this Agreement for use as a financing statement. Grantor will reimburse Lender for all expenses for the perfection and the continuation of the perfection of Lender's security interest in the Collateral.

**Severability.** If a court of competent jurisdiction finds any provision of this Agreement to be illegal, invalid, or unenforceable as to any circumstance, that finding shall not make the offending provision illegal, invalid, or unenforceable as to any other circumstance. If feasible, the offending provision shall be considered modified so that it becomes legal, valid and enforceable. If the offending provision cannot be so modified, it shall be considered deleted from this Agreement. Unless otherwise required by law, the illegality, invalidity, or unenforceability of any provision of this Agreement shall not affect the legality, validity or enforceability of any other provision of this Agreement.

**Successors and Assigns.** Subject to any limitations stated in this Agreement on transfer of Grantor's interest, this Agreement shall be binding upon and inure to the benefit of the parties, their successors and assigns. If ownership of the Collateral becomes vested in a person other than Grantor, Lender, without notice to Grantor, may deal with Grantor's successors with reference to this Agreement and the Indebtedness by way of forbearance or extension without releasing Grantor from the obligations of this Agreement or liability under the Indebtedness.

**Survival of Representations and Warranties.** All representations, warranties, and agreements made by Grantor in this Agreement shall survive the execution and delivery of this Agreement, shall be continuing in nature, and shall remain in full force and effect until such time as Borrower's Indebtedness shall be paid in full.

**Time is of the Essence.** Time is of the essence in the performance of this Agreement.

**Waive Jury.** Grantor hereby expressly and voluntarily waives any and all rights, whether arising under the Maine constitution, and any Rules of Civil Procedure, common law or otherwise, to demand a trial by jury in any action, suit, proceeding or counterclaim involving Lender as to any matter, claim or cause of action whatsoever arising out of or in any way related to any agreement or loan with Lender or any of the transactions contemplated between the parties.

**DEFINITIONS.** The following capitalized words and terms shall have the following meanings when used in this Agreement. Unless specifically stated to the contrary, all references to dollar amounts shall mean amounts in lawful money of the United States of America. Words and terms used in the singular shall include the plural, and the plural shall include the singular, as the context may require. Words and terms not otherwise defined in this Agreement shall have the meanings attributed to such terms in the Uniform Commercial Code:

**Account.** The word "Account" means a trade account, account receivable, other receivable, or other right to payment for goods sold or services rendered owing to Grantor (or to a third party grantor acceptable to Lender).

**Agreement.** The word "Agreement" means this Commercial Security Agreement, as this Commercial Security Agreement may be amended or modified from time to time, together with all exhibits and schedules attached to this Commercial Security Agreement from time to time.

**Borrower.** The word "Borrower" means 222 Riverside Corp., and all other persons and entities signing the Note in whatever capacity.

**Collateral.** The word "Collateral" means all of Grantor's right, title and interest in and to all the Collateral as described in the Collateral Description section of this Agreement.

**Default.** The word "Default" means the Default set forth in this Agreement in the section titled "Default".

**Environmental Laws.** The words "Environmental Laws" mean any and all state, federal and local statutes, regulations and ordinances relating to the protection of human health or the environment, including without limitation the Comprehensive Environmental Response,

Loan No:

**COMMERCIAL SECURITY AGREEMENT**
**(Continued)**

Page 5

Compensation, and Liability Act of 1980, as amended, 42 U.S.C. Section 9601, et seq. ("CERCLA"), the Superfund Amendments and Reauthorization Act of 1986, Pub. L. No. 99-499 ("SARA"), the Hazardous Materials Transportation Act, 49 U.S.C. Section 1801, et seq., the Resource Conservation and Recovery Act, 42 U.S.C. Section 6901, et seq., the Maine Hazardous Waste Act, the Maine Uncontrolled Substance Site Law, or other applicable state or federal laws, rules, or regulations adopted pursuant thereto.

**Event of Default.** The words "Event of Default" mean any of the events of default set forth in this Agreement in the default section of this Agreement.

**Grantor.** The word "Grantor" means Madawaska Hardscape Products, Inc..

**Guarantor.** The word "Guarantor" means any guarantor, surety, or accommodation party of any or all of the Indebtedness.

**Guaranty.** The word "Guaranty" means the guaranty from Guarantor to Lender, including without limitation a guaranty of all or part of the Note.

**Hazardous Substances.** The words "Hazardous Substances" mean materials that, because of their quantity, concentration or physical, chemical or infectious characteristics, may cause or pose a present or potential hazard to human health or the environment when improperly used, treated, stored, disposed of, generated, manufactured, transported or otherwise handled. The words "Hazardous Substances" are used in their very broadest sense and include without limitation any and all hazardous or toxic substances, materials or waste as defined by or listed under the Environmental Laws. The term "Hazardous Substances" also includes, without limitation, petroleum and petroleum by-products or any fraction thereof and asbestos.

**Indebtedness.** The word "Indebtedness" means the indebtedness evidenced by the Note or Related Documents, including all principal and interest together with all other indebtedness and costs and expenses for which Borrower is responsible under this Agreement or under any of the Related Documents.

**Lender.** The word "Lender" means Banknorth, N.A., its successors and assigns.

**Note.** The word "Note" means the Note executed by 222 Riverside Corp. in the principal amount of $300,000.00 dated March 31, 2003, together with all renewals of, extensions of, modifications of, refinancings of, consolidations of, and substitutions for the note or credit agreement.

**Property.** The word "Property" means all of Grantor's right, title and interest in and to all the Property as described in the "Collateral Description" section of this Agreement.

**Related Documents.** The words "Related Documents" mean all promissory notes, credit agreements, loan agreements, environmental agreements, guaranties, security agreements, mortgages, deeds of trust, security deeds, collateral mortgages, and all other instruments, agreements and documents, whether now or hereafter existing, executed in connection with the Indebtedness.

BORROWER AND GRANTOR HAVE READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS COMMERCIAL SECURITY AGREEMENT AND AGREE TO ITS TERMS. THIS AGREEMENT IS DATED MARCH 31, 2003.

GRANTOR:

MADAWASKA HARDSCAPE PRODUCTS, INC.

By: _____
Daniel Albert, President of Madawaska Hardscape
Products, Inc.

BORROWER:

222 RIVERSIDE CORP.

By: _____
Daniel Albert, President of 222 Riverside Corp.

LENDER:

BANKNORTH, N.A.

x _____
Authorized Signer

LASER PRO Lending, Ver. 5.21.00.003 Copr. Harland Financial Solutions, Inc. 1997, 2002.  All Rights Reserved.  - ME  G:\APPL\CFI\LPL\E148.FC  TR-1513  PR-10



**Peoples**

*A division of Banknorth, N.A.*

# COMMERCIAL GUARANTY

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|---|---|---|---|---|---|---|---|
| | | | | | | 102 | |

References in the shaded area are for Lender's use only and do not limit the applicability of this document to any particular loan or item.
Any item above containing " * * * * " has been omitted due to text length limitations.

**Borrower:** 222 Riverside Corp.
222 Riverside Street
Portland, ME 04102

**Lender:** Banknorth, N.A.
P.O. Box 9540
One Portland Square
Portland, ME 04112-9540

**Guarantor:** Daniel Albert
101 Balfar Drive
Greenville, SC 29615

**AMOUNT OF GUARANTY.** The amount of this Guaranty is Unlimited.

**CONTINUING UNLIMITED GUARANTY.** For good and valuable consideration, Daniel Albert ("Guarantor") absolutely and unconditionally guarantees and promises to pay to Banknorth, N.A. ("Lender") or its order, in legal tender of the United States of America, the Indebtedness (as that term is defined below) of 222 Riverside Corp. ("Borrower") to Lender on the terms and conditions set forth in this Guaranty. Under this Guaranty, the liability of Guarantor is unlimited and the obligations of Guarantor are continuing.

**INDEBTEDNESS GUARANTEED.** The Indebtedness guaranteed by this Guaranty includes any and all of Borrower's Indebtedness to Lender and is used in the most comprehensive sense and means and includes any and all of Borrower's liabilities, obligations and debts to Lender, now existing or hereinafter incurred or created, including, without limitation, all loans, advances, interest, costs, debts, overdraft indebtedness, credit card indebtedness, lease obligations, other obligations, and liabilities of Borrower, or any of them, and any present or future judgments against Borrower, or any of them; and whether any such Indebtedness is voluntarily or involuntarily incurred, due or not due, absolute or contingent, liquidated or unliquidated, determined or undetermined; whether Borrower may be liable individually or jointly with others, or primarily or secondarily, or as guarantor or surety; whether recovery on the Indebtedness may be or may become barred or unenforceable against Borrower for any reason whatsoever; and whether the Indebtedness arises from transactions which may be voidable on account of infancy, insanity, ultra vires, or otherwise.

**DURATION OF GUARANTY.** This Guaranty will take effect when received by Lender without the necessity of any acceptance by Lender, or any notice to Guarantor or to Borrower, and will continue in full force until all Indebtedness incurred or contracted before receipt by Lender of any notice of revocation shall have been fully and finally paid and satisfied and all of Guarantor's other obligations under this Guaranty shall have been performed in full. If Guarantor elects to revoke this Guaranty, Guarantor may only do so in writing. Guarantor's written notice of revocation must be mailed to Lender, by certified mail, at Lender's address listed above or such other place as Lender may designate in writing. Written revocation of this Guaranty will apply only to advances or new Indebtedness created after actual receipt by Lender of Guarantor's written revocation. For this purpose and without limitation, the term "new Indebtedness" does not include Indebtedness which at the time of notice of revocation is contingent, unliquidated, undetermined or not due and which later becomes absolute, liquidated, determined or due. This Guaranty will continue to bind Guarantor for all Indebtedness incurred by Borrower or committed by Lender prior to receipt of Guarantor's written notice of revocation, including any extensions, renewals, substitutions or modifications of the Indebtedness. All renewals, extensions, substitutions, and modifications of the Indebtedness granted after Guarantor's revocation, are contemplated under this Guaranty and specifically will not be considered to be new Indebtedness. This Guaranty shall bind Guarantor's estate as to Indebtedness created both before and after Guarantor's death or incapacity, regardless of Lender's actual notice of Guarantor's death. Subject to the foregoing, Guarantor's executor or administrator or other legal representative may terminate this Guaranty in the same manner in which Guarantor might have terminated it and with the same effect. Release of any other guarantor or termination of any other guaranty of the Indebtedness shall not affect the liability of Guarantor under this Guaranty. A revocation Lender receives from any one or more Guarantors shall not affect the liability of any remaining Guarantors under this Guaranty. It is anticipated that fluctuations may occur in the aggregate amount of Indebtedness covered by this Guaranty, and Guarantor specifically acknowledges and agrees that reductions in the amount of Indebtedness, even to zero dollars ($0.00), prior to Guarantor's written revocation of this Guaranty shall not constitute a termination of this Guaranty. This Guaranty is binding upon Guarantor and Guarantor's heirs, successors and assigns so long as any of the guaranteed Indebtedness remains unpaid and even though the Indebtedness guaranteed may from time to time be zero dollars ($0.00).

**GUARANTOR'S AUTHORIZATION TO LENDER.** Guarantor authorizes Lender, either before or after any revocation hereof, without notice or demand and without lessening Guarantor's liability under this Guaranty, from time to time: (A) prior to revocation as set forth above, to make one or more additional secured or unsecured loans to Borrower, to lease equipment or other goods to Borrower, or otherwise to extend additional credit to Borrower; (B) to alter, compromise, renew, extend, accelerate, or otherwise change one or more times the time for payment or other terms of the Indebtedness or any part of the Indebtedness, including increases and decreases of the rate of interest on the Indebtedness; extensions may be repeated and may be for longer than the original loan term; (C) to take and hold security for the payment of this Guaranty or the Indebtedness, and exchange, enforce, waive, subordinate, fail or decide not to perfect, and release any such security, with or without the substitution of new collateral; (D) to release, substitute, agree not to sue, or deal with any one or more of Borrower's sureties, endorsers, or other guarantors on any terms or in any manner Lender may choose; (E) to determine how, when and what application of payments and credits shall be made on the Indebtedness (F) to apply such security and direct the order or manner of sale thereof, including without limitation, any nonjudicial sale permitted by the terms of the controlling security agreement or deed of trust, as Lender in its discretion may determine; (G) to sell, transfer, assign or grant participations in all or any part of the Indebtedness; and (H) to assign or transfer this Guaranty in whole or in part.

**GUARANTOR'S REPRESENTATIONS AND WARRANTIES.** Guarantor represents and warrants to Lender that (A) no representations or agreements of any kind have been made to Guarantor which would limit or qualify in any way the terms of this Guaranty; (B) this Guaranty is executed at Borrower's request and not at the request of Lender; (C) Guarantor has full power, right and authority to enter into this Guaranty; (D) the provisions of this Guaranty will not conflict with or result in a default under any agreement or other instrument binding upon Guarantor and do not result in a violation of any law, regulation, court decree or order applicable to Guarantor; (E) Guarantor has not and will not, without the prior written consent of Lender, sell, lease, assign, encumber, hypothecate, transfer, or otherwise dispose of all or substantially all of Guarantor's assets, or any interest therein; (F) upon Lender's request, Guarantor will provide to Lender financial and credit information in form acceptable to Lender, and all such financial information which currently has been, and all future financial information which will be provided to Lender is and will be true and correct in all material respects and fairly present Guarantor's financial condition as of the dates the financial information is provided; (G) no material adverse change has occurred in Guarantor's financial condition since the date of the most recent financial statements provided to Lender and no event has occurred which may materially adversely affect Guarantor's financial condition; (H) no litigation, claim, investigation, administrative proceeding or similar action (including those for unpaid taxes) against Guarantor is pending or threatened; (I) Lender has made no representation to Guarantor as to the creditworthiness of Borrower; and (J) Guarantor has established adequate means of obtaining from Borrower on a continuing basis information regarding Borrower's financial condition. Guarantor agrees to keep adequately informed from such means of any facts, events, or circumstances which might in any way affect Guarantor's risks under this Guaranty, and Guarantor further agrees that, absent a request for information, Lender shall have no obligation to disclose to Guarantor any information or documents acquired by Lender in the course of its relationship with Borrower.

**GUARANTOR'S WAIVERS.** Except as prohibited by applicable law, Guarantor waives any right to require Lender (A) to continue lending money or to extend other credit to Borrower; (B) to make any presentment, protest, demand, or notice of any kind, including notice of any nonpayment of the Indebtedness or of any nonpayment related to any collateral, or notice of any action or nonaction on the part of Borrower, Lender, any surety, endorser, or other guarantor in connection with the Indebtedness or in connection with the creation of new or additional loans or obligations; (C) to resort for payment or to proceed directly or at once against any person, including Borrower or any other guarantor; (D) to proceed directly against or exhaust any collateral held by Lender from Borrower, any other guarantor, or any other person; (E) to give notice of Lender's acceptance of this Guaranty, or of any default by Borrower under the Indebtedness or any agreement with Lender; (F) to give terms, time, and place of any public or private sale of personal property security held by Lender or to comply with any other applicable provisions of the Uniform Commercial Code; (F) to pursue any other remedy within Lender's power; or (G) to commit any act or omission of any kind, or at any time, with respect to any matter whatsoever.

Guarantor also waives any and all rights or defenses arising by reason of (A) any "one action" or "anti-deficiency" law or any other law which may prevent Lender from bringing any action, including a claim for deficiency, against Guarantor, before or after Lender's commencement or completion of any foreclosure action, either judicially or by exercise of a power of sale; (B) any election of remedies by Lender which destroys or otherwise adversely affects Guarantor's subrogation rights or Guarantor's rights to proceed against Borrower for reimbursement, including



Ex. 6

**COMMERCIAL GUARANTY**
(Continued)

Loan No:                                                                                                        Page 2

without limitation, any loss of rights Guarantor may suffer by reason of any law limiting, qualifying, or discharging the Indebtedness; (C) any disability or other defense of Borrower, of any other guarantor, or of any other person, or by reason of the cessation of Borrower's liability from any cause whatsoever, other than payment in full in legal tender, of the Indebtedness; (D) any right to claim discharge of the Indebtedness on the basis of unjustified impairment of any collateral for the Indebtedness; (E) any statute of limitations, if at any time any action or suit brought by Lender against Guarantor is commenced, there is outstanding Indebtedness of Borrower to Lender which is not barred by any applicable statute of limitations; or (F) any defenses given to guarantors at law or in equity other than actual payment and performance of the Indebtedness. If payment is made by Borrower, whether voluntarily or otherwise, or by any third party, on the Indebtedness and thereafter Lender is forced to remit the amount of that payment to Borrower's trustee in bankruptcy or to any similar person under any federal or state bankruptcy law or law for the relief of debtors, the Indebtedness shall be considered unpaid for the purpose of the enforcement of this Guaranty.

Guarantor further waives and agrees not to assert or claim at any time any deductions to the amount guaranteed under this Guaranty for any claim of setoff, counterclaim, counter demand, recoupment or similar right, whether such claim, demand or right may be asserted by the Borrower, the Guarantor, or both.

**GUARANTOR'S UNDERSTANDING WITH RESPECT TO WAIVERS.** Guarantor warrants and agrees that each of the waivers set forth above is made with Guarantor's full knowledge of its significance and consequences and that, under the circumstances, the waivers are reasonable and not contrary to public policy or law. If any such waiver is determined to be contrary to any applicable law or public policy, such waiver shall be effective only to the extent permitted by law or public policy.

**RIGHT OF SETOFF.** To the extent permitted by applicable law, Lender reserves a right of setoff in all Guarantor's accounts with Lender (whether checking, savings, or some other account). This includes all accounts Guarantor holds jointly with someone else and all accounts Guarantor may open in the future. However, this does not include any IRA or Keogh accounts, or any trust accounts for which setoff would be prohibited by law. Guarantor authorizes Lender, to the extent permitted by applicable law, to hold these funds if there is a default, and Lender may apply the funds in these accounts to pay what Guarantor owes under the terms of this Guaranty.

**SUBORDINATION OF BORROWER'S DEBTS TO GUARANTOR.** Guarantor agrees that the Indebtedness of Borrower to Lender, whether now existing or hereafter created, shall be superior to any claim that Guarantor may now have or hereafter acquire against Borrower, whether or not Borrower becomes insolvent. Guarantor hereby expressly subordinates any claim Guarantor may have against Borrower, upon any account whatsoever, to any claim that Lender may now or hereafter have against Borrower. In the event of insolvency and consequent liquidation of the assets of Borrower, through bankruptcy, by an assignment for the benefit of creditors, by voluntary liquidation, or otherwise, the assets of Borrower applicable to the payment of the claims of both Lender and Guarantor shall be paid to Lender and shall be first applied by Lender to the Indebtedness of Borrower to Lender. Guarantor does hereby assign to Lender all claims which it may have or acquire against Borrower or against any assignee or trustee in bankruptcy of Borrower; provided however, that such assignment shall be effective only for the purpose of assuring to Lender full payment in legal tender of the Indebtedness. If Lender so requests, any notes or credit agreements now or hereafter evidencing any debts or obligations of Borrower to Guarantor shall be marked with a legend that the same are subject to this Guaranty and shall be delivered to Lender. Guarantor agrees, and Lender is hereby authorized, in the name of Guarantor, from time to time to execute and file financing statements and continuation statements and to execute such other documents and to take such other actions as Lender deems necessary or appropriate to perfect, preserve and enforce its rights under this Guaranty.

**MISCELLANEOUS PROVISIONS.** The following miscellaneous provisions are a part of this Guaranty:

**Amendments.** This Guaranty, together with any Related Documents, constitutes the entire understanding and agreement of the parties as to the matters set forth in this Guaranty. No alteration of or amendment to this Guaranty shall be effective unless given in writing and signed by the party or parties sought to be charged or bound by the alteration or amendment.

**Attorneys' Fees; Expenses.** Guarantor agrees to pay upon demand Lender's costs and expenses, including Lender's attorneys' fees and Lender's legal expenses, incurred in connection with the enforcement of this Guaranty. Lender may hire or pay someone else to help enforce this Guaranty, and Guarantor shall pay the costs and expenses of such enforcement. Costs and expenses include Lender's attorneys' fees and legal expenses whether or not there is a lawsuit, including attorneys' fees and legal expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), appeals, and any anticipated post-judgment collection services. Guarantor also shall pay all court costs and such additional fees as may be directed by the court.

**Caption Headings.** Caption headings in this Guaranty are for convenience purposes only and are not to be used to interpret or define the provisions of this Guaranty.

**Governing Law.** This Guaranty will be governed by, construed and enforced in accordance with federal law and the laws of the State of Maine. This Guaranty has been accepted by Lender in the State of Maine.

**Integration.** Guarantor further agrees that Guarantor has read and fully understands the terms of this Guaranty; Guarantor has had the opportunity to be advised by Guarantor's attorney with respect to this Guaranty; the Guaranty fully reflects Guarantor's intentions and parol evidence is not required to interpret the terms of this Guaranty. Guarantor hereby indemnifies and holds Lender harmless from all losses, claims, damages, and costs (including Lender's attorneys' fees) suffered or incurred by Lender as a result of any breach by Guarantor of the warranties, representations and agreements of this paragraph.

**Interpretation.** In all cases where there is more than one Borrower or Guarantor, then all words used in this Guaranty in the singular shall be deemed to have been used in the plural where the context and construction so require; and where there is more than one Borrower named in this Guaranty or when this Guaranty is executed by more than one Guarantor, the words "Borrower" and "Guarantor" respectively shall mean all and any one or more of them. The words "Guarantor," "Borrower," and "Lender" include the heirs, successors, assigns, and transferees of each of them. If a court finds that any provision of this Guaranty is not valid or should not be enforced, that fact by itself will not mean that the rest of this Guaranty will not be valid or enforced. Therefore, a court will enforce the rest of the provisions of this Guaranty even if a provision of this Guaranty may be found to be invalid or unenforceable. If any one or more of Borrower or Guarantor are corporations, partnerships, limited liability companies, or similar entities, it is not necessary for Lender to inquire into the powers of Borrower or Guarantor or of the officers, directors, partners, managers, or other agents acting or purporting to act on their behalf, and any Loan Indebtedness made or created in reliance upon the professed exercise of such powers shall be guaranteed under this Guaranty.

**Notices.** Any notice required to be given under this Guaranty shall be given in writing, and, except for revocation notices by Guarantor, shall be effective when actually delivered, when actually received by telefacsimile (unless otherwise required by law), when deposited with a nationally recognized overnight courier, or, if mailed, when deposited in the United States mail, as first class, certified or registered mail postage prepaid, directed to the addresses shown near the beginning of this Guaranty. All revocation notices by Guarantor shall be in writing and shall be effective upon delivery to Lender as provided in the section of this Guaranty entitled "DURATION OF GUARANTY." Any party may change its address for notices under this Guaranty by giving formal written notice to the other parties, specifying that the purpose of the notice is to change the party's address. For notice purposes, Guarantor agrees to keep Lender informed at all times of Guarantor's current address. Unless otherwise provided or required by law, if there is more than one Guarantor, any notice given by Lender to any Guarantor is deemed to be notice given to all Guarantors.

**No Waiver by Lender.** Lender shall not be deemed to have waived any rights under this Guaranty unless such waiver is given in writing and signed by Lender. No delay or omission on the part of Lender in exercising any right shall operate as a waiver of such right or any other right. A waiver by Lender of a provision of this Guaranty shall not prejudice or constitute a waiver of Lender's right otherwise to demand strict compliance with that provision or any other provision of this Guaranty. No prior waiver by Lender, nor any course of dealing between Lender and Guarantor, shall constitute a waiver of any of Lender's rights or of any of Guarantor's obligations as to any future transactions. Whenever the consent of Lender is required under this Guaranty, the granting of such consent by Lender in any instance shall not constitute continuing consent to subsequent instances where such consent is required and in all cases such consent may be granted or withheld in the sole discretion of Lender.

**Successors and Assigns.** Subject to any limitations stated in this Guaranty on transfer of Guarantor's interest, this Guaranty shall be binding upon and inure to the benefit of the parties, their successors and assigns.

**Waive Jury.** Guarantor hereby expressly and voluntarily waives any and all rights, whether arising under the Maine constitution, and any Rules of Civil Procedure, common law or otherwise, to demand a trial by jury in any action, suit, proceeding or counterclaim involving Lender as to any matter, claim or cause of action whatsoever arising out of or in any way related to any agreement or loan with Lender or any of the transactions contemplated between the parties.

**DEFINITIONS.** The following capitalized words and terms shall have the following meanings when used in this Guaranty. Unless specifically stated to the contrary, all references to dollar amounts shall mean amounts in lawful money of the United States of America. Words and terms used in the singular shall include the plural, and the plural shall include the singular, as the context may require. Words and terms not otherwise defined in this Guaranty shall have the meanings attributed to such terms in the Uniform Commercial Code:

**Borrower.** The word "Borrower" means 222 Riverside Corp. , and all other persons and entities signing the Note in whatever capacity.

**Guarantor.** The word "Guarantor" means each and every person or entity signing this Guaranty, including without limitation Daniel Albert.

Loan No:

## COMMERCIAL GUARANTY
(Continued)

Page 3

Guaranty. The word "Guaranty" means the guaranty from Guarantor to Lender, including without limitation a guaranty of all or part of the Note.

Indebtedness. The word "Indebtedness" means Borrower's indebtedness to Lender as more particularly described in this Guaranty.

Lender. The word "Lender" means Banknorth, N.A., its successors and assigns.

Note. The word "Note" means the promissory note dated March 31, 2003, in the original principal amount of $300,000.00 from Borrower to Lender, together with all renewals of, extensions of, modifications of, refinancings of, consolidations of, and substitutions for the promissory note or agreement.

Related Documents. The words "Related Documents" mean all promissory notes, credit agreements, loan agreements, environmental agreements, guaranties, security agreements, mortgages, deeds of trust, security deeds, collateral mortgages, and all other instruments, agreements and documents, whether now or hereafter existing, executed in connection with the Indebtedness.

EACH UNDERSIGNED GUARANTOR ACKNOWLEDGES HAVING READ ALL THE PROVISIONS OF THIS GUARANTY AND AGREES TO ITS TERMS. IN ADDITION, EACH GUARANTOR UNDERSTANDS THAT THIS GUARANTY IS EFFECTIVE UPON GUARANTOR'S EXECUTION AND DELIVERY OF THIS GUARANTY TO LENDER AND THAT THE GUARANTY WILL CONTINUE UNTIL TERMINATED IN THE MANNER SET FORTH IN THE SECTION TITLED "DURATION OF GUARANTY". NO FORMAL ACCEPTANCE BY LENDER IS NECESSARY TO MAKE THIS GUARANTY EFFECTIVE. THIS GUARANTY IS DATED MARCH 31, 2003.

GUARANTOR:

X _____
Daniel Albert, Individually

---

## INDIVIDUAL ACKNOWLEDGMENT

STATE OF _____        )
                                         ) SS
COUNTY OF _____        )

On this day before me, the undersigned Notary Public, personally appeared Daniel Albert, to me known to be the individual described in and who executed the Commercial Guaranty, and acknowledged that he or she signed the Guaranty as his or her free and voluntary act and deed, for the uses and purposes therein mentioned.

Given under my hand and official seal this _____ day of _____, 20_____.

By_____        Residing at_____

Notary Public in and for the State of_____        My commission expires_____

LASER PRO Lending, Ver. 5.21.00.004 Copr. Harland Financial Solutions, Inc. 1997, 2003.   All Rights Reserved.   - ME  G:\APPLICATION\LPL\E29.FC  TR-1214  PR-50



**Peoples**
*A division of Bankworth, N.A.*

## COMMERCIAL GUARANTY

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|-----------|-----------|----------|---------|-------------|---------|---------|----------|
|  |  |  |  |  |  | 102 |  |

References in the shaded area are for Lender's use only and do not limit the applicability of this document to any particular loan or item.
Any item above containing "****" has been omitted due to text length limitations.

**Borrower:** 222 Riverside Corp.
222 Riverside Street
Portland, ME 04102

**Lender:** Bankworth, N.A.
P.O. Box 9540
One Portland Square
Portland, ME 04112-9540

**Guarantor:** Keystone Northeast, Inc.
101 Balfer Drive
Greenville, SC 29615

**AMOUNT OF GUARANTY.** The amount of this Guaranty is Unlimited.

**CONTINUING UNLIMITED GUARANTY.** For good and valuable consideration, Keystone Northeast, Inc. ("Guarantor") absolutely and unconditionally guarantees and promises to pay to Bankworth, N.A. ("Lender") or its order, in legal tender of the United States of America, the Indebtedness (as that term is defined below) of 222 Riverside Corp. ("Borrower") to Lender on the terms and conditions set forth in this Guaranty. Under this Guaranty, the liability of Guarantor is unlimited and the obligations of Guarantor are continuing.

**INDEBTEDNESS GUARANTEED.** The Indebtedness guaranteed by this Guaranty includes any and all of Borrower's indebtedness to Lender and is used in the most comprehensive sense and means and includes any and all of Borrower's liabilities, obligations and debts to Lender, now existing or hereinafter incurred or created, including, without limitation, all loans, advances, interest, costs, debts, overdraft indebtedness, credit card indebtedness, lease obligations, other obligations, and liabilities of Borrower, or any of them, and whether any such indebtedness is voluntarily or involuntarily incurred, due or not due, absolute or contingent, liquidated or unliquidated, determined or undetermined; whether Borrower may be liable individually or jointly with others, or primarily or secondarily, or as guarantor or surety; whether recovery on the Indebtedness may be or may become barred or unenforceable against Borrower for any reason whatsoever; and whether the Indebtedness arises from transactions which may be voidable on account of infancy, insanity, ultra vires, or otherwise.

**DURATION OF GUARANTY.** This Guaranty will take effect when received by Lender without the necessity of any acceptance by Lender, or any notice to Guarantor or to Borrower, and will continue in full force and effect until all Indebtedness incurred or contracted before receipt by Lender of any notice of revocation shall have been fully and finally paid and satisfied and all of Guarantor's other obligations under this Guaranty shall have been performed in full. If Guarantor elects to revoke this Guaranty, Guarantor may only do so in writing. Guarantor's written notice of revocation must be mailed to Lender, by certified mail, at Lender's address listed above or such other place as Lender may designate in writing. Written revocation of this Guaranty will apply only to advances or new Indebtedness created after actual receipt by Lender of Guarantor's written revocation. For this purpose and without limitation, the term "new Indebtedness" does not include Indebtedness which at the time of notice of revocation is contingent, unliquidated, undetermined or not due and which later becomes absolute, liquidated, determined or due. This Guaranty will continue to bind Guarantor for all Indebtedness incurred by Borrower or committed by Lender prior to receipt of Guarantor's written notice of revocation, including any extensions, renewals, substitutions or modifications of the Indebtedness. All renewals, extensions, substitutions, and modifications of the Indebtedness granted after Guarantor's revocation, are contemplated under this Guaranty and, specifically will not be considered to be new Indebtedness. This Guaranty shall bind Guarantor's estate as to Indebtedness created both before and after Guarantor's death or incapacity, regardless of Lender's actual notice of Guarantor's death. Subject to the foregoing, Guarantor's executor or administrator or other legal representative may terminate this Guaranty in the same manner as if Guarantor had terminated it and with the same effect. Release of any other guarantor or termination of any other guaranty of the Indebtedness shall not affect the liability of Guarantor under this Guaranty. A revocation Lender receives from any one or more Guarantors shall not affect the liability of any remaining Guarantors under this Guaranty. It is anticipated that fluctuations may occur in the aggregate amount of Indebtedness covered by this Guaranty, and Guarantor specifically acknowledges and agrees that reductions in the amount of Indebtedness, even to zero dollars ($0.00), prior to Guarantor's written revocation of this Guaranty shall not constitute a termination of this Guaranty. This Guaranty is binding upon Guarantor and Guarantor's heirs, successors and assigns so long as any of the guaranteed Indebtedness remains unpaid and even though the Indebtedness guaranteed may from time to time be zero dollars ($0.00).

**GUARANTOR'S AUTHORIZATION TO LENDER.** Guarantor authorizes Lender, either before or after any revocation hereof, without notice or demand and without lessening Guarantor's liability under this Guaranty, from time to time: (A) prior to revocation as set forth above, to make one or more additional secured or unsecured loans to Borrower, to lease equipment or other goods to Borrower, or otherwise to extend additional credit to Borrower; (B) to alter, compromise, renew, extend, accelerate, or otherwise change one or more times the time for payment or other terms of the Indebtedness or any part of the Indebtedness, including increases and decreases of the rate of interest on the Indebtedness; extensions may be repeated and may be for longer than the original loan term; (C) to take and hold security for the payment of this Guaranty or the Indebtedness, and exchange, enforce, waive, subordinate, fail or decide not to perfect, and release any such security, with or without the substitution of new collateral; (D) to release, substitute, agree not to sue, or deal with any one or more of Borrower's sureties, endorsers, or other guarantors on any terms or in any manner Lender may choose; (E) to determine how, when and what application of payments and credits shall be made on the Indebtedness (F) to apply such security and direct the order or manner of sale thereof, including without limitation, any nonjudicial sale permitted by the terms of the controlling security agreement or deed of trust, as Lender in its discretion may determine; (G) to sell, transfer, assign or grant participations in all or any part of the Indebtedness; and (H) to assign or transfer this Guaranty in whole or in part.

**GUARANTOR'S REPRESENTATIONS AND WARRANTIES.** Guarantor represents and warrants to Lender that (A) no representations or agreements of any kind have been made to Guarantor which would limit or qualify in any way the terms of this Guaranty; (B) this Guaranty is executed at Borrower's request and not at the request of Lender; (C) Guarantor has full power, right and authority to enter into this Guaranty; (D) the provisions of this Guaranty do not conflict with or result in a default under any agreement or other instrument binding upon Guarantor and do not result in a violation of any law, regulation, court decree or order applicable to Guarantor; (E) Guarantor has not and will not, without the prior written consent of Lender, sell, lease, assign, encumber, hypothecate, transfer, or otherwise dispose of all or substantially all of Guarantor's assets, or any interest therein; (F) upon Lender's request, Guarantor will provide to Lender financial and credit information in form acceptable to Lender, and all such financial information which currently has been, and all future financial information which will be provided to Lender is and will be true and correct in all material respects and fairly present Guarantor's financial condition as of the dates the financial information is provided; (G) no material adverse change has occurred in Guarantor's financial condition since the date of this financial statements provided to Lender and no event has occurred which may materially adversely affect Guarantor's financial condition; (H) no litigation, claim, investigation, administrative proceeding or similar action (including those for unpaid taxes) against Guarantor is pending or threatened; (I) Lender has made no representation to Guarantor as to the creditworthiness of Borrower; and (J) Guarantor has established adequate means of obtaining from Borrower on a continuing basis information regarding Borrower's financial condition. Guarantor agrees to keep adequately informed from such means of any facts, events, or circumstances which might in any way affect Guarantor's risks under this Guaranty, and Guarantor further agrees that, absent a request for information, Lender shall have no obligation to disclose to Guarantor any information or documents acquired by Lender in the course of its relationship with Borrower.

**GUARANTOR'S WAIVERS.** Except as prohibited by applicable law, Guarantor waives any right to require Lender (A) to continue lending money or to extend other credit to Borrower; (B) to make any presentment, protest, demand, or notice of any kind, including notice of any nonpayment of the Indebtedness or of any nonpayment related to any collateral, or notice of any action or nonaction on the part of Borrower, Lender, any surety, endorser, or other guarantor in connection with the Indebtedness or in connection with the creation of new or additional loans or obligations; (C) to resort for payment or to proceed directly or at once against any person, including Borrower or any other guarantor; (D) to proceed directly against or exhaust any collateral held by Lender from Borrower, any other guarantor, or any other person; (E) to give notice of the terms, time, and place of any public or private sale of personal property security held by Lender from Borrower or any other guarantor, or to comply with any other applicable provisions of the Uniform Commercial Code; (F) to pursue any other remedy within Lender's power; or (G) to commit any act or omission of any kind, or at any time, with respect to any matter whatsoever.

Guarantor also waives any and all rights or defenses arising by reason of (A) any "one action" or "anti-deficiency" law or any other law which may prevent Lender from bringing any action, including a claim for deficiency, against Guarantor, before or after Lender's commencement or completion of any foreclosure action, either judicially or by exercise of a power of sale; (B) any election of remedies by Lender which destroys or otherwise adversely affects Guarantor's subrogation rights or Guarantor's rights to proceed against Borrower for reimbursement, including

# COMMERCIAL GUARANTY
(Continued)

without limitation, any loss of rights Guarantor may suffer by reason of any law limiting, qualifying, or discharging the indebtedness; (C) any disability or other defense of Borrower, of any other guarantor, or of any other person, or by reason of the cessation of Borrower's liability from any cause whatsoever, other than payment in full in legal tender, of the Indebtedness; (D) any right to claim discharge of the Indebtedness on the basis of unjustified impairment of any collateral for the Indebtedness; (E) any statute of limitations, if at any time any action or suit brought by Lender against Guarantor is commenced, there is outstanding Indebtedness of Borrower to Lender which is not barred by any applicable statute of limitations; or (F) any defenses given to guarantors at law or in equity other than actual payment and performance of the Indebtedness. If payment is made by Borrower, whether voluntarily or otherwise, or by any third party, on the Indebtedness and thereafter Lender is forced to remit the amount of that payment to Borrower's trustee in bankruptcy or to any similar person under any federal or state bankruptcy law or law for the relief of debtors, the Indebtedness shall be considered unpaid for the purpose of the enforcement of this Guaranty.

Guarantor further waives and agrees not to assert or claim at any time any deductions to the amount guaranteed under this Guaranty for any claim of setoff, counterclaim, counter demand, recoupment or similar right, whether such claim, demand or right may be asserted by the Borrower, the Guarantor, or both.

**GUARANTOR'S UNDERSTANDING WITH RESPECT TO WAIVERS.**  Guarantor warrants and agrees that each of the waivers set forth above is made with Guarantor's full knowledge of its significance and consequences and that, under the circumstances, the waivers are reasonable and not contrary to public policy or law. If any such waiver is determined to be contrary to any applicable law or public policy, such waiver shall be effective only to the extent permitted by law or public policy.

**RIGHT OF SETOFF.**  To the extent permitted by applicable law, Lender reserves a right of setoff in all Guarantor's accounts with Lender (whether checking, savings, or some other account). This includes all accounts Guarantor holds jointly with someone else and all accounts Guarantor may open in the future. However, this does not include any IRA or Keogh accounts, or any trust accounts for which setoff would be prohibited by law. Guarantor authorizes Lender, to the extent permitted by applicable law, to hold these funds if there is a default, and Lender may apply the funds in these accounts to pay what Guarantor owes under the terms of this Guaranty.

**SUBORDINATION OF BORROWER'S DEBTS TO GUARANTOR.**  Guarantor agrees that the Indebtedness of Borrower to Lender, whether now existing or hereafter created, shall be superior to any claim that Guarantor may now have or hereafter acquire against Borrower, whether or not Borrower becomes insolvent. Guarantor hereby expressly subordinates any claim Guarantor may have against Borrower, upon any account whatsoever, to any claim that Lender may now or hereafter have against Borrower. In the event of insolvency and consequent liquidation of the assets of Borrower, through bankruptcy, by an assignment for the benefit of creditors, by voluntary liquidation, or otherwise, the assets of Borrower applicable to the payment of the claims of both Lender and Guarantor shall be paid to Lender and shall be first applied by Lender to the Indebtedness of Borrower to Lender. Guarantor does hereby assign to Lender all claims which it may have or acquire against Borrower or against any assignee or trustee in bankruptcy of Borrower; provided however, that such assignment shall be effective only for the purpose of assuring to Lender full payment in legal tender of the Indebtedness. If Lender so requests, any notes or credit agreements now or hereafter evidencing any debts or obligations of Borrower to Guarantor shall be marked with a legend that the same are subject to this Guaranty and shall be delivered to Lender. Guarantor agrees, and Lender is hereby authorized, in the name of Guarantor, from time to time to execute and file financing statements and continuation statements and to execute such other documents and to take such other actions as Lender deems necessary or appropriate to perfect, preserve and enforce its rights under this Guaranty.

**MISCELLANEOUS PROVISIONS.**  The following miscellaneous provisions are a part of this Guaranty:

**Amendments.**  This Guaranty, together with any Related Documents, constitutes the entire understanding and agreement of the parties as to the matters set forth in this Guaranty. No alteration of or amendment to this Guaranty shall be effective unless given in writing and signed by the party or parties sought to be charged or bound by the alteration or amendment.

**Attorneys' Fees; Expenses.**  Guarantor agrees to pay upon demand Lender's costs and expenses, including Lender's attorneys' fees and Lender's legal expenses, incurred in connection with the enforcement of this Guaranty. Lender may hire or pay someone else to help enforce this Guaranty, and Guarantor shall pay the costs and expenses of such enforcement. Costs and expenses include Lender's attorneys' fees and legal expenses whether or not there is a lawsuit, including attorneys' fees and legal expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), appeals, and any anticipated post-judgment collection services. Guarantor also shall pay all court costs and such additional fees as may be directed by the court.

**Caption Headings.**  Caption headings in this Guaranty are for convenience purposes only and are not to be used to interpret or define the provisions of this Guaranty.

**Governing Law.**  This Guaranty will be governed by, construed and enforced in accordance with federal law and the laws of the State of Maine. This Guaranty has been accepted by Lender in the State of Maine.

**Integration.**  Guarantor further agrees that Guarantor has read and fully understands the terms of this Guaranty; Guarantor has had the opportunity to be advised by Guarantor's attorney with respect to this Guaranty; the Guaranty fully reflects Guarantor's intentions and parol evidence is not required to interpret the terms of this Guaranty. Guarantor hereby indemnifies and holds Lender harmless from all losses, claims, damages, and costs (including Lender's attorneys' fees) suffered or incurred by Lender as a result of any breach by Guarantor of the warranties, representations and agreements of this paragraph.

**Interpretation.**  In all cases where there is more than one Borrower or Guarantor, then all words used in this Guaranty in the singular shall be deemed to have been used in the plural where the context and construction so require; and where there is more than one Borrower named in this Guaranty or when this Guaranty is executed by more than one Guarantor, the words "Borrower" and "Guarantor" respectively shall mean all and any one or more of them. The words "Guarantor," "Borrower," and "Lender" include the heirs, successors, assigns, and transferees of each of them. If a court finds that any provision of this Guaranty is not valid or should not be enforced, that fact by itself will not mean that the rest of this Guaranty will not be valid or enforced. Therefore, a court will enforce the rest of the provisions of this Guaranty even if a provision of this Guaranty may be found to be invalid or unenforceable. If any one or more of Borrower or Guarantor are corporations, partnerships, limited liability companies, or similar entities, it is not necessary for Lender to inquire into the powers of Borrower or Guarantor or of the officers, directors, partners, managers, or other agents acting or purporting to act on their behalf, and any Loan Indebtedness made or created in reliance upon the professed exercise of such powers shall be guaranteed under this Guaranty.

**Notices.**  Any notice required to be given under this Guaranty shall be given in writing, and, except for revocation notices by Guarantor, shall be effective when actually delivered, when actually received by telefacsimile (unless otherwise required by law), when deposited with a nationally recognized overnight courier, or, if mailed, when deposited in the United States mail, as first class, certified or registered mail postage prepaid, directed to the addresses shown near the beginning of this Guaranty. All revocation notices by Guarantor shall be in writing and shall be effective upon delivery to Lender as provided in the section of this Guaranty entitled "DURATION OF GUARANTY." Any party may change its address for notices under this Guaranty by giving formal written notice to the other parties, specifying that the purpose of the notice is to change the party's address. For notice purposes, Guarantor agrees to keep Lender informed at all times of Guarantor's current address. Unless otherwise provided or required by law, if there is more than one Guarantor, any notice given by Lender to any Guarantor is deemed to be notice given to all Guarantors.

**No Waiver by Lender.**  Lender shall not be deemed to have waived any rights under this Guaranty unless such waiver is given in writing and signed by Lender. No delay or omission on the part of Lender in exercising any right shall operate as a waiver of such right or any other right. A waiver by Lender of a provision of this Guaranty shall not prejudice or constitute a waiver of Lender's right otherwise to demand strict compliance with that provision or any other provision of this Guaranty. No prior waiver by Lender, nor any course of dealing between Lender and Guarantor, shall constitute a waiver of any of Lender's rights or of any of Guarantor's obligations as to any future transactions. Whenever the consent of Lender is required under this Guaranty, the granting of such consent by Lender in any instance shall not constitute continuing consent to subsequent instances where such consent is required and in all cases such consent may be granted or withheld in the sole discretion of Lender.

**Successors and Assigns.**  Subject to any limitations stated in this Guaranty on transfer of Guarantor's interest, this Guaranty shall be binding upon and inure to the benefit of the parties, their successors and assigns.

**Waive Jury.**  Guarantor hereby expressly and voluntarily waives any and all rights, whether arising under the Maine constitution, and any Rules of Civil Procedure, common law or otherwise, to demand a trial by jury in any action, suit, proceeding or counterclaim involving Lender as to any matter, claim or cause of action whatsoever arising out of or in any way related to any agreement or loan with Lender or any of the transactions contemplated between the parties.

**DEFINITIONS.**  The following capitalized words and terms shall have the following meanings when used in this Guaranty. Unless specifically stated to the contrary, all references to dollar amounts shall mean amounts in lawful money of the United States of America. Words and terms used in the singular shall include the plural, and the plural shall include the singular, as the context may require. Words and terms not otherwise defined in this Guaranty shall have the meanings attributed to such terms in the Uniform Commercial Code:

**Borrower.**  The word "Borrower" means 222 Riverside Corp., and all other persons and entities signing the Note in whatever capacity.

**Guarantor.**  The word "Guarantor" means each and every person or entity signing this Guaranty, including without limitation Keystone

Loan No:

# COMMERCIAL GUARANTY
(Continued)

Page 3

Northeast, Inc.

**Guaranty.** The word "Guaranty" means the guaranty from Guarantor to Lender, including without limitation a guaranty of all or part of the Note.

**Indebtedness.** The word "Indebtedness" means Borrower's indebtedness to Lender as more particularly described in this Guaranty.

**Lender.** The word "Lender" means Banknorth, N.A., its successors and assigns.

**Note.** The word "Note" means the promissory note dated March 31, 2003, in the original principal amount of $300,000.00 from Borrower to Lender, together with all renewals of, extensions of, modifications of, refinancings of, consolidations of, and substitutions for the promissory note or agreement.

**Related Documents.** The words "Related Documents" mean all promissory notes, credit agreements, loan agreements, environmental agreements, guaranties, security agreements, mortgages, deeds of trust, security deeds, collateral mortgages, and all other instruments, agreements and documents, whether now or hereafter existing, executed in connection with the indebtedness.

EACH UNDERSIGNED GUARANTOR ACKNOWLEDGES HAVING READ ALL THE PROVISIONS OF THIS GUARANTY AND AGREES TO ITS TERMS. IN ADDITION, EACH GUARANTOR UNDERSTANDS THAT THIS GUARANTY IS EFFECTIVE UPON GUARANTOR'S EXECUTION AND DELIVERY OF THIS GUARANTY TO LENDER AND THAT THE GUARANTY WILL CONTINUE UNTIL TERMINATED IN THE MANNER SET FORTH IN THE SECTION TITLED "DURATION OF GUARANTY". NO FORMAL ACCEPTANCE BY LENDER IS NECESSARY TO MAKE THIS GUARANTY EFFECTIVE. THIS GUARANTY IS DATED MARCH 31, 2003.

GUARANTOR:

KEYSTONE NORTHEAST, INC.

By: _____

Daniel Albert, President of Keystone Northeast, Inc.

## CORPORATE ACKNOWLEDGMENT

STATE OF _____    )
                                     ) SS
COUNTY OF _____    )

On this _____ day of _____, 20 _____, before me, the undersigned Notary Public, personally appeared Daniel Albert, President of Keystone Northeast, Inc., and known to me to be an authorized agent of the corporation that executed the Commercial Guaranty and acknowledged the Guaranty to be the free and voluntary act and deed of the corporation, by authority of its Bylaws or by resolution of its board of directors, for the uses and purposes therein mentioned, and on oath stated that he or she is authorized to execute this Guaranty and in fact executed the Guaranty on behalf of the corporation.

By_____    Residing at_____

Notary Public in and for the State of_____    My commission expires_____

LASER PRO Lending, Ver. 3.31 00.000  Copr. Harland Financial Solutions, Inc. 1997, 2003  All Rights Reserved  - NE  D:\APPL\CFI\CALPL\E72.FC  TR-7311  PR-18



**Peoples**

*A division of Banknorth, N.A.*

## COMMERCIAL GUARANTY

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|-----------|-----------|----------|---------|-------------|---------|---------|----------|
| | | | | | | 102 | |

References in the shaded area are for Lender's use only and do not limit the applicability of this document to any particular loan or item.
Any item above containing "* * * *" has been omitted due to text length limitations.

**Borrower:** 222 Riverside Corp.
222 Riverside Street
Portland, ME 04102

**Lender:** Banknorth, N.A.
P.O. Box 9540
One Portland Square
Portland, ME 04112-9540

**Guarantor:** Madawaska Hardscape Products, Inc.
222 Riverside Street
Portland, ME 04102

**AMOUNT OF GUARANTY.** The amount of this Guaranty is Unlimited.

**CONTINUING UNLIMITED GUARANTY.** For good and valuable consideration, Madawaska Hardscape Products, Inc. ("Guarantor") absolutely and unconditionally guarantees and promises to pay to Banknorth, N.A. ("Lender") or its order, in legal tender of the United States of America, the Indebtedness (as that term is defined below) of 222 Riverside Corp. ("Borrower") to Lender on the terms and conditions set forth in this Guaranty. Under this Guaranty, the liability of Guarantor is unlimited and the obligations of Guarantor are continuing.

**INDEBTEDNESS GUARANTEED.** The Indebtedness guaranteed by this Guaranty includes any and all of Borrower's Indebtedness to Lender and is used in the most comprehensive sense and means and includes any and all of Borrower's liabilities, obligations and debts to Lender, now existing or hereinafter incurred or created, including, without limitation, all loans, advances, interest, costs, debts, overdraft Indebtedness, credit card Indebtedness, lease obligations, other obligations, and liabilities of Borrower, or any of them, and any present or future judgments against Borrower, or any of them; and whether any such Indebtedness is voluntarily or involuntarily incurred, due or not due, absolute or contingent, liquidated or unliquidated, determined or undetermined; whether Borrower may be liable individually or jointly with others, or primarily or secondarily, or as guarantor or surety; whether recovery on the Indebtedness may be or may become barred or unenforceable against Borrower for any reason whatsoever; and whether the Indebtedness arises from transactions which may be voidable on account of infancy, insanity, ultra vires, or otherwise.

**DURATION OF GUARANTY.** This Guaranty will take effect when received by Lender without the necessity of any acceptance by Lender, or any notice to Guarantor or to Borrower, and will continue in full force until all Indebtedness incurred or contracted before receipt by Lender of any notice of revocation shall have been fully and finally paid and satisfied and all of Guarantor's other obligations under this Guaranty shall have been performed in full. If Guarantor elects to revoke this Guaranty, Guarantor may only do so in writing. Guarantor's written notice of revocation must be mailed to Lender, by certified mail, at Lender's address listed above or such other place as Lender may designate in writing. Written revocation of this Guaranty will apply only to advances or new Indebtedness created after actual receipt by Lender of Guarantor's written revocation. For this purpose and without limitation, the term "new Indebtedness" does not include Indebtedness which at the time of notice of revocation is contingent, unliquidated, undetermined or not due and which later becomes absolute, liquidated, determined or due. This Guaranty will continue to bind Guarantor for all Indebtedness incurred by Borrower or committed by Lender prior to receipt of Guarantor's written notice of revocation, including any extensions, renewals, substitutions or modifications of the Indebtedness. All renewals, extensions, substitutions, and modifications of the Indebtedness granted after Guarantor's revocation, are contemplated under this Guaranty and specifically will not be considered to be new Indebtedness. This Guaranty shall bind Guarantor's estate as to Indebtedness created both before and after Guarantor's death or incapacity, regardless of Lender's actual notice of Guarantor's death. Subject to the foregoing, Guarantor's executor or administrator or other legal representative may terminate this Guaranty in the same manner in which Guarantor might have terminated it and with the same effect. Release of any other guarantor or termination of any other guaranty of the Indebtedness shall not affect the liability of Guarantor under this Guaranty. A revocation under this section receives from any one or more Guarantors shall not affect the liability of remaining Guarantors under this Guaranty. It is anticipated that fluctuations may occur in the aggregate amount of Indebtedness covered by this Guaranty, and Guarantor specifically acknowledges and agrees that reductions in the amount of Indebtedness, even to zero dollars ($0.00), prior to Guarantor's written revocation of this Guaranty shall not constitute a termination of this Guaranty. This Guaranty is binding upon Guarantor and Guarantor's heirs, successors and assigns so long as any of the guaranteed Indebtedness remains unpaid and even though the Indebtedness guaranteed from time to time is zero dollars ($0.00).

**GUARANTOR'S AUTHORIZATION TO LENDER.** Guarantor authorizes Lender, either before or after any revocation hereof, without notice or demand and without lessening Guarantor's liability under this Guaranty, from time to time: (A) prior to revocation as set forth above, to make one or more additional secured or unsecured loans to Borrower, to lease equipment or other goods to Borrower, or otherwise to extend additional credit to Borrower; (B) to alter, compromise, renew, extend, accelerate, or otherwise change one or more times the time for payment or other terms of the Indebtedness or any part of the Indebtedness, including increases and decreases of the rate of interest on the Indebtedness; extensions may be repeated and may be for longer than the original loan term; (C) to take and hold security for the payment of this Guaranty or the Indebtedness, and exchange, enforce, waive, subordinate, fail or decide not to perfect, and release any such security, with or without the substitution of new collateral; (D) to release, substitute, agree not to sue, or deal with any one or more of Borrower's sureties, endorsers, or other guarantors on any terms or in any manner Lender may choose; (E) to determine how, when and what application of payments and credits shall be made on the Indebtedness (F) to apply such security and direct the order or manner of sale thereof, including without limitation, any nonjudicial sale permitted by the terms of the controlling security agreement or deed of trust, as Lender in its discretion may determine; (G) to sell, transfer, assign or grant participations in all or any part of the Indebtedness; and (H) to assign or transfer this Guaranty in whole or in part.

**GUARANTOR'S REPRESENTATIONS AND WARRANTIES.** Guarantor represents and warrants to Lender that: (A) no representations or agreements of any kind have been made to Guarantor which would limit or qualify in any way the terms of this Guaranty; (B) this Guaranty is executed at Borrower's request and not at the request of Lender; (C) Guarantor has full power, right and authority to enter into this Guaranty; (D) the provisions of this Guaranty do not conflict with or result in a default under any agreement or other instrument binding upon Guarantor and do not result in a violation of any law, regulation, court decree or order applicable to Guarantor; (E) Guarantor has not and will not, without the prior written consent of Lender, sell, lease, assign, encumber, hypothecate, transfer, or otherwise dispose of all or substantially all of Guarantor's assets, or any interest therein; (F) upon Lender's request, Guarantor will provide to Lender financial and credit information in form acceptable to Lender, and all such financial information which currently has been, and all future financial information which will be provided to Lender is and will be true and correct in all material respects and fairly present Guarantor's financial condition as of the dates the financial information is provided; (G) no material adverse change has occurred in Guarantor's financial condition since the date of the most recent financial statements provided to Lender and no event has occurred which may materially adversely affect Guarantor's financial condition; (H) no litigation, claim, investigation, administrative proceeding or similar action (including those for unpaid taxes) against Guarantor is pending or threatened; (I) Lender has made no representation to Guarantor as to the creditworthiness of Borrower; and (J) Guarantor has established adequate means of obtaining from Borrower on a continuing basis information regarding Borrower's financial condition. Guarantor agrees to keep adequately informed from such means or any facts, events, or circumstances which might in any way affect Guarantor's risks under this Guaranty, and Guarantor further agrees that, absent a request for information, Lender shall have no obligation to disclose to Guarantor any information or documents acquired by Lender in the course of its relationship with Borrower.

**GUARANTOR'S WAIVERS.** Except as prohibited by applicable law, Guarantor waives any right to require Lender: (A) to continue lending money or to extend other credit to Borrower; (B) to make any presentment, protest, demand, or notice of any kind, including notice of any nonpayment of the Indebtedness or of any nonpayment related to any collateral, or notice of any action or nonaction on the part of Borrower, Lender, any surety, endorser, or other guarantor in connection with the Indebtedness or in connection with the creation of new or additional loans or obligations; (C) to resort for payment or to proceed directly or at once against any person, including Borrower or any other guarantor; (D) to proceed directly against or exhaust any collateral held by Lender from Borrower, any other guarantor, or any other person; (E) to give notice of Lender's acceptance of this Guaranty, or of any default by Borrower under the Indebtedness or any agreement with Lender, or of the terms, time, and place of any public or private sale of personal property security held by Lender from Borrower or to comply with any other applicable provisions of the Uniform Commercial Code; (F) to pursue any other remedy within Lender's power; or (G) to commit any act or omission of any kind, or at any time, with respect to any matter whatsoever.

Guarantor also waives any and all rights or defenses arising by reason of: (A) any "one action" or "anti-deficiency" law or any other law which may prevent Lender from bringing any action, including a claim for deficiency, against Guarantor, before or after Lender's commencement or completion of any foreclosure action, either judicially or by exercise of a power of sale; (B) any election of remedies by Lender which destroys or otherwise adversely affects Guarantor's subrogation rights or Guarantor's rights to proceed against Borrower for reimbursement, including

## COMMERCIAL GUARANTY
### (Continued)

without limitation, any loss of rights Guarantor may suffer by reason of any law limiting, qualifying, or discharging the Indebtedness; (C) any disability or other defense of Borrower, of any other guarantor, or of any other person, or by reason of the cessation of Borrower's liability from any cause whatsoever, other than payment in full in legal tender, of the Indebtedness; (D) any right to claim discharge of the Indebtedness on the basis of unjustified impairment of any collateral for the Indebtedness; (E) any statute of limitations, if any time any action or suit brought by Lender against Guarantor is commenced, there is outstanding Indebtedness of Borrower to Lender which is not barred by any applicable statute of limitations; or (F) any defenses given to guarantors at law or in equity other than actual payment and performance of the Indebtedness. If payment is made by Borrower, whether voluntarily or otherwise, or by any third party, on the Indebtedness and thereafter Lender is forced to remit the amount of that payment to Borrower's trustee in bankruptcy or to any similar person under any federal or state bankruptcy law or law for the relief of debtors, the Indebtedness shall be considered unpaid for the purpose of the enforcement of this Guaranty.

Guarantor further waives and agrees not to assert or claim at any time any deductions to the amount guaranteed under this Guaranty for any claim of setoff, counterclaim, counter demand, recoupment or similar right, whether such claim, demand or right may be asserted by the Borrower, the Guarantor, or both.

**GUARANTOR'S UNDERSTANDING WITH RESPECT TO WAIVERS.** Guarantor warrants and agrees that each of the waivers set forth above is made with Guarantor's full knowledge of its significance and consequences and that, under the circumstances, the waivers are reasonable and not contrary to public policy or law. If any such waiver is determined to be contrary to any applicable law or public policy, such waiver shall be effective only to the extent permitted by law or public policy.

**COLLATERAL.** This Guaranty is secured by a security agreement respecting personal property namely (but without limitation) all business assets.

**RIGHT OF SETOFF.** To the extent permitted by applicable law, Lender reserves a right of setoff in all Guarantor's accounts with Lender (whether checking, savings, or some other account). This includes all accounts Guarantor holds jointly with someone else and all accounts Guarantor may open in the future. However, this does not include any IRA or Keogh accounts, or any trust accounts for which setoff would be prohibited by law. Guarantor authorizes Lender, to the extent permitted by applicable law, to hold these funds if there is a default, and Lender may apply the funds in those accounts to pay what Guarantor owes under the terms of this Guaranty.

**SUBORDINATION OF BORROWER'S DEBTS TO GUARANTOR.** Guarantor agrees that the Indebtedness of Borrower to Lender, whether now existing or hereafter created, shall be superior to any claim that Guarantor may now have or hereafter acquire against Borrower, whether or not Borrower becomes insolvent. Guarantor hereby expressly subordinates any claim Guarantor may have against Borrower, upon any account whatsoever, to any claim that Lender may now or hereafter have against Borrower. In the event of insolvency and consequent liquidation of the assets of Borrower, through bankruptcy, by an assignment for the benefit of creditors, by voluntary liquidation, or otherwise, the assets of Borrower applicable to the payment of the claims of both Lender and Guarantor shall be paid to Lender and shall be first applied by Lender to the Indebtedness of Borrower to Lender. Guarantor does hereby assign to Lender all claims which it may have or acquire against Borrower or against any assignee or trustee in bankruptcy of Borrower; provided however, that such assignment shall be effective only to the purpose of assuring to Lender full payment in legal tender of the Indebtedness. If Lender so requests, any notes or credit agreements now or hereafter evidencing any debts or obligations of Borrower to Guarantor shall be marked with a legend that the same are subject to this Guaranty and shall be delivered to Lender. Guarantor agrees, and Lender is hereby authorized, in the name of Guarantor, from time to time to execute and file financing statements and continuation statements and to execute such other documents and to take such other actions as Lender deems necessary or appropriate to perfect, preserve and enforce its rights under this Guaranty.

**MISCELLANEOUS PROVISIONS.** The following miscellaneous provisions are a part of this Guaranty:

**Amendments.** This Guaranty, together with any Related Documents, constitutes the entire understanding and agreement of the parties as to the matters set forth in this Guaranty. No alteration of or amendment to this Guaranty shall be effective unless given in writing and signed by the party or parties sought to be charged or bound by the alteration or amendment.

**Attorneys' Fees; Expenses.** Guarantor agrees to pay upon demand Lender's costs and expenses, including Lender's attorneys' fees and Lender's legal expenses, incurred in connection with the enforcement of this Guaranty. Lender may hire or pay someone else to help enforce this Guaranty, and Guarantor shall pay the costs and expenses of such enforcement. Costs and expenses include Lender's attorneys' fees and legal expenses whether or not there is a lawsuit, including attorneys' fees and legal expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), appeals, and any anticipated post-judgment collection services. Guarantor also shall pay all court costs and such additional fees as may be directed by the court.

**Caption Headings.** Caption headings in this Guaranty are for convenience purposes only and are not to be used to interpret or define the provisions of this Guaranty.

**Governing Law.** This Guaranty will be governed by, construed and enforced in accordance with federal law and the laws of the State of Maine. This Guaranty has been accepted by Lender in the State of Maine.

**Integration.** Guarantor further agrees that Guarantor has read and fully understands the terms of this Guaranty; Guarantor has had the opportunity to be advised by Guarantor's attorney with respect to this Guaranty; the Guaranty fully reflects Guarantor's intentions and parol evidence is not required to interpret the terms of this Guaranty. Guarantor hereby indemnifies and holds Lender harmless from all losses, claims, damages, and costs (including Lender's attorneys' fees) suffered or incurred by Lender as a result of any breach by Guarantor of the warranties, representations and agreements of this paragraph.

**Interpretation.** In all cases where there is more than one Borrower or Guarantor, then all words used in this Guaranty in the singular shall be deemed to have been used in the plural where the context and construction so require; and where there is more than one Borrower named in this Guaranty or when this Guaranty is executed by more than one Guarantor, the words "Borrower" and "Guarantor" respectively shall mean all and any one or more of them. The words "Guarantor," "Borrower," and "Lender" include the heirs, successors, assigns, and transferees of each of them. If a court finds that any provision of this Guaranty is not valid or should not be enforced, that fact by itself will not mean that the rest of this Guaranty will not be valid or enforced. Therefore, a court will enforce the rest of the provisions of this Guaranty even if a provision of this Guaranty may be found to be invalid or unenforceable. If any one or more of Borrower or Guarantor are corporations, partnerships, limited liability companies, or similar entities, it is not necessary for Lender to inquire into the powers of Borrower or Guarantor or of the officers, directors, partners, managers, or other agents acting or purporting to act on their behalf, and any Loan Indebtedness made or created in reliance upon the professed exercise of such powers shall be guaranteed under this Guaranty.

**Notices.** Any notice required to be given under this Guaranty shall be given in writing, and, except for revocation notices by Guarantor, shall be effective when actually delivered, when actually received by telefacsimile (unless otherwise required by law), when deposited with a nationally recognized overnight courier, or, if mailed, when deposited in the United States mail, as first class, certified or registered mail postage prepaid, directed to the addresses shown near the beginning of this Guaranty. All revocation notices to Guarantor shall be in writing and shall be effective upon delivery to Lender as provided in the section of this Guaranty entitled "DURATION OF GUARANTY." Any party may change its address for notices under this Guaranty by giving formal written notice to the other parties, specifying that the purpose of the notice is to change the party's address. For notice purposes, Guarantor agrees to keep Lender informed at all times of Guarantor's current address. Unless otherwise provided or required by law, if there is more than one Guarantor, any notice given by Lender to any Guarantor is deemed to be notice given to all Guarantors.

**No Waiver by Lender.** Lender shall not be deemed to have waived any rights under this Guaranty unless such waiver is given in writing and signed by Lender. No delay or omission on the part of Lender in exercising any right shall operate as a waiver of such right or any other right. A waiver by Lender of a provision of this Guaranty shall not prejudice or constitute a waiver of Lender's right otherwise to demand strict compliance with that provision or any other provision of this Guaranty. No prior waiver by Lender, nor any course of dealing between Lender and Guarantor, shall constitute a waiver of any of Lender's rights or of any of Guarantor's obligations as to any future transactions. Whenever the consent of Lender is required under this Guaranty, the granting of such consent by Lender in any instance shall not constitute continuing consent to subsequent instances where such consent is required and in all cases such consent may be granted or withheld in the sole discretion of Lender.

**Successors and Assigns.** Subject to any limitations stated in this Guaranty on transfer of Guarantor's interest, this Guaranty shall be binding upon and inure to the benefit of the parties, their successors and assigns.

**Waive Jury.** Guarantor hereby expressly and voluntarily waives any and all rights, whether arising under the Maine constitution, any Rules of Civil Procedure, common law or otherwise, to demand a trial by jury in any action, suit, proceeding or counterclaim involving Lender as to any matter, claim or cause of action whatsoever arising out of or in any way related to any agreement or loan with Lender or any of the transactions contemplated between the parties.

**DEFINITIONS.** The following capitalized words and terms shall have the following meanings when used in this Guaranty. Unless specifically stated to the contrary, all references to dollar amounts shall mean amounts in lawful money of the United States of America. Words and terms used in the singular shall include the plural, and the plural shall include the singular, as the context may require. Words and terms not otherwise defined in this Guaranty shall have the meanings attributed to such terms in the Uniform Commercial Code:

Loan No:

## COMMERCIAL GUARANTY
### (Continued)

Page 3

Borrower. The word "Borrower" means 222 Riverside Corp., and all other persons and entities signing the Note in whatever capacity.

Guarantor. The word "Guarantor" means each and every person or entity signing this Guaranty, including without limitation Madawaska Hardscape Products, Inc..

Guaranty. The word "Guaranty" means the guaranty from Guarantor to Lender, including without limitation a guaranty of all or part of the Note.

Indebtedness. The word "Indebtedness" means Borrower's indebtedness to Lender as more particularly described in this Guaranty.

Lender. The word "Lender" means Banknorth, N.A., its successors and assigns.

Note. The word "Note" means the promissory note dated March 31, 2003, in the original principal amount of $300,000.00 from Borrower to Lender, together with all renewals of, extensions of, modifications of, refinancings of, consolidations of, and substitutions for the promissory note or agreement.

Related Documents. The words "Related Documents" mean all promissory notes, credit agreements, loan agreements, environmental agreements, guaranties, security agreements, mortgages, deeds of trust, security deeds, collateral mortgages, and all other instruments, agreements and documents, whether now or hereafter existing, executed in connection with the Indebtedness.

EACH UNDERSIGNED GUARANTOR ACKNOWLEDGES HAVING READ ALL THE PROVISIONS OF THIS GUARANTY AND AGREES TO ITS TERMS. IN ADDITION, EACH GUARANTOR UNDERSTANDS THAT THIS GUARANTY IS EFFECTIVE UPON GUARANTOR'S EXECUTION AND DELIVERY OF THIS GUARANTY TO LENDER AND THAT THE GUARANTY WILL CONTINUE UNTIL TERMINATED IN THE MANNER SET FORTH IN THE SECTION TITLED "DURATION OF GUARANTY". NO FORMAL ACCEPTANCE BY LENDER IS NECESSARY TO MAKE THIS GUARANTY EFFECTIVE. THIS GUARANTY IS DATED MARCH 31, 2003.

GUARANTOR:

MADAWASKA HARDSCAPE PRODUCTS, INC.

By: _____
Daniel Albert, President of Madawaska Hardscape
Products, Inc.

## CORPORATE ACKNOWLEDGMENT

STATE OF _____    )
                                          ) SS
COUNTY OF _____     )

On this _____ day of _____, 20 _____, before me, the undersigned Notary Public, personally appeared Daniel Albert, President of Madawaska Hardscape Products, Inc., and known to me to be an authorized agent of the corporation that executed the Commercial Guaranty and acknowledged the Guaranty to be the free and voluntary act and deed of the corporation, by authority of its Bylaws or by resolution of its board of directors, for the uses and purposes therein mentioned, and on oath stated that he or she is authorized to execute this Guaranty and in fact executed the Guaranty on behalf of the corporation.

By_____    Residing at _____

Notary Public in and for the State of _____    My commission expires _____

# UCC1

**UCC FINANCING STATEMENT**
FOLLOW INSTRUCTIONS CAREFULLY

STATE OF SOUTH CAROLINA FILING FEES:

$ 6.00 - For the FIRST TWO pages    $20.00 – Public Finance Transaction
$ 2.00 - For THIRD page    $20.00 – Manufactured Home Transaction
$ 1.00 - Each ADDITIONAL page after the THIRD page.
For each additional Debtor more than two (2), add $2.00 for each additional Debtor.

A. NAME & PHONE OF CONTACT AT FILER [optional]
*Normajean Huntley 207-761-8673*

B. SEND ACKNOWLEDGMENT TO:  (Name and Address)

*Normajean Huntley*
*TD Bank, N.A.*
*One Portland Square*
*P.O. Box 9540*
*Portland, Maine  04112-9540*

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

**1. DEBTOR'S EXACT FULL LEGAL NAME** - insert only one debtor name (1a or 1b) - do not abbreviate or combine names

| | | | | |
|---|---|---|---|---|
| 1a. ORGANIZATION'S NAME | | | | |
| OR | *Madawaska Hardscape Products, Inc.* | | | |
| 1b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | | SUFFIX |

| 1c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| *3146 Wade Hampton Blvd* | *Taylors* | *SC* | *29687* | *USA* |

| 1d. TAX ID #: (Organization) | ADD'L INFO RE ORGANIZATION DEBTOR | 1e. TYPE OF ORGANIZATION | 1f. JURISDICTION OF ORGANIZATION | 1g. ORGANIZATIONAL ID #, if any | |
|---|---|---|---|---|---|
| (Optional) | | *Business Corporation* | *Maine* | ▬ *D* | ☐NONE |

**2. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME** - insert only one debtor name (2a or 2b) - do not abbreviate or combine names

| | | | | |
|---|---|---|---|---|
| 2a. ORGANIZATION'S NAME | | | | |
| OR | | | | |
| 2b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | | SUFFIX |

| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| | | | | |

| 2d. TAX ID #: (Organization) | ADD'L INFO RE ORGANIZATION DEBTOR | 2e. TYPE OF ORGANIZATION | 2f. JURISDICTION OF ORGANIZATION | 2g. ORGANIZATIONAL ID #, if any | |
|---|---|---|---|---|---|
| (Optional) | | | | | ☐NONE |

**3. SECURED PARTY'S NAME** (or NAME of TOTAL ASSIGNEE of ASSIGNOR S/P) - insert only one secured party name (3a or 3b)

| | | | | |
|---|---|---|---|---|
| 3a. ORGANIZATION'S NAME | | | | |
| OR | *TD Bank, N.A.* | | | |
| 3b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | | SUFFIX |

| 3c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| *P.O. Box 9540* | *Portland* | *ME* | *04112-9540* | *USA* |

**4. This FINANCING STATEMENT covers the following collateral:**

*All personal property of Debtor of every kind and nature, wherever located, whether now owned or hereafter acquired, including without limitation, the following categories of property as defined in Revised Article 9 of the Uniform Commercial Code: goods (including inventory, equipment, fixtures, farm products and any accessions thereto), instruments (including promissory notes), documents, accounts (including health-care-insurance receivables), chattel paper (whether tangible or electronic), deposit accounts, letter-of-credit rights (whether or not the letter of credit is evidenced by a writing), commercial tort claims, securities and all other investment property, general intangibles (including payment intangibles and software), supporting obligations and any and all proceeds of the foregoing. Any term used herein which is defined in either (i) Article 9 of the Uniform Commercial Code as in effect in the jurisdiction in which this financing statement was signed or authenticated by the Debtor at the time it was so signed or authenticated or (ii) Article 9 of the Uniform Commercial Code as in effect at any relevant time in the jurisdiction in which this financing statement is filed, has the meaning to be ascribed thereto with respect to any particular item of property under the more encompassing of the two definitions. This financing statement covers, and is intended to cover, all personal property of the Debtor.*

080706-1119028    UCC-1 FINANCING STATEMENT
Lapse Date: 07/06/2014 11:19:02  Filing Fee: 8 ORIG

| 5. ALTERNATIVE DESIGNATION [if applicable]: | LESSEE/LESSOR | CONSIGNEE |
|---|---|---|
| 6. This FINANCING STATEMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS. Attach Addendum [if applicable] | | |

8. OPTIONAL FILER REFERENCE DATA

*South Carolina Secretary of State - UCC Division*

FILING OFFICE COPY — SC SECRETARY OF STATE'S OFFICE  (FORM UCC1) (7/1/2001)

Ex. #

## UCC FINANCING STATEMENT

FOLLOW INSTRUCTIONS (front and back) CAREFULLY

2001-SEP 7- 8:49

1430401

**A. NAME & PHONE OF CONTACT AT FILER [optional]**
Kimberly N. Baker    207-761-8649

**B. SEND ACKNOWLEDGMENT TO:** (Name and Address)

Kimberly N. Baker
Peoples Heritage Bank, N.A.
One Portland Square
P.O. Box 9540
Portland, Maine 04112-9540

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

**1. DEBTOR'S EXACT FULL LEGAL NAME** - insert only one debtor name (1a or 1b) - do not abbreviate or combine names

| 1a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| Madawaska Hardscape Products, Inc. | | | | |

| 1b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | | SUFFIX |
|---|---|---|---|---|

| 1c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 222 Riverside Street | Portland | ME | 04103 | USA |

| 1d. TAX ID #: SSN OR EIN | ADD'L INFO RE ORGANIZATION DEBTOR | 1e. TYPE OF ORGANIZATION | 1f. JURISDICTION OF ORGANIZATION | 1g. ORGANIZATIONAL ID #, if any |
|---|---|---|---|---|
| | | Business-Corp | Maine | 19990235 D |  ☐ NONE |

**2. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME** - insert only one debtor name (2a or 2b) - do not abbreviate or combine names

| 2a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|

| 2b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | | SUFFIX |
|---|---|---|---|---|

| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|

| 2d. TAX ID #: SSN OR EIN | ADD'L INFO RE ORGANIZATION DEBTOR | 2e. TYPE OF ORGANIZATION | 2f. JURISDICTION OF ORGANIZATION | 2g. ORGANIZATIONAL ID #, if any |
|---|---|---|---|---|

**3. SECURED PARTY'S NAME** (or NAME of TOTAL ASSIGNEE of ASSIGNOR S/P) - insert only one secured party name (3a or 3b)          ☐ NONE

| 3a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| Peoples Heritage Bank, N.A. | | | | |

| 3b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | | SUFFIX |
|---|---|---|---|---|

| 3c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| One Portland Square   P.O. Box 9540 | Portland | ME | 04112-9540 | USA |

**4. This FINANCING STATEMENT covers the following collateral:**

See Schedule A attached hereto and made a part hereof.

This financing statement is intended to cover all future advances.

| 5. ALTERNATIVE DESIGNATION [if applicable]: | LESSEE/LESSOR | CONSIGNEE/CONSIGNOR | BAILEE/BAILOR | SELLER/BUYER | AG. LIEN | NON-UCC FILING |
|---|---|---|---|---|---|---|
| 6. ☐ This FINANCING STATEMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS.    Attach Addendum [if applicable] | | | 7. Check to REQUEST SEARCH REPORT(S) on Debtor(s) [ADDITIONAL FEE] [optional] | All Debtors | Debtor 1 | Debtor 2 |

**8. OPTIONAL FILER REFERENCE DATA**
Secretary of State    August 29, 2001

FILING OFFICE COPY — NATIONAL UCC FINANCING STATEMENT (FORM UCC1) (REV. 07/29/98)

SCHEDULE A
UCC-1 FINANCING STATEMENT

DEBTOR:    Madawaska Hardscape Products, Inc.

1430401

SECURED PARTY:    PEOPLES HERITAGE BANK, N.A.

DATE:    August 29, 2001

Debtor hereby grants to the Secured Party a present and continuing security interest in and valid lien on all of the Debtor's property described below, together with any and all additions and accessions thereto, replacements, proceeds (including without limitation insurance proceeds) and products thereof, and substitutions therefor, wherever the same may be located and whether now existing or hereafter arising or acquired (hereinafter referred to collectively as the "Collateral"):

(a)    All of Debtor's goods, accounts, instruments, chattel paper, documents, investment property, commercial tort claims, letter of credit rights, general intangibles, deposit accounts and money (as these terms are defined in the Maine Uniform Commercial Code) including but not limited to the following:

(b)    all of Debtor's equipment, including all equipment, machinery, furniture, fixtures, trade fixtures, goods, computer hardware and software, motor vehicles, rolling stock and all other tangible personal property of Debtor other than inventory, any parts or accessions for any of the foregoing, and all documents evidencing Debtor's title to any of the foregoing, all whether now owned or hereafter acquired and wherever located, as well as Debtor's right, title and interest in and to any such goods and equipment as may now or hereafter be held or used by Debtor under any lease, lease purchase, conditional sales, use or other agreements pursuant to which Debtor is or may become entitled to the use or possession thereof, with any and all other rights and benefits flowing from or under or in respect of such agreements, all as may be used or useful in connection with the ownership and/or operation of Debtor's business, and any operations incidental to or associated with the same, or otherwise; and

(c)    all of Debtor's inventory, whether now owned or hereafter acquired, including without limitation all goods, merchandise and other personal property of every type held by and intended for sale, use or lease by Debtor or to be furnished by Debtor under contracts of service, and all raw materials, work-in-process, finished goods, materials and other supplies of every nature used or usable in connection with the packing, shipping, advertising, selling, leasing or furnishing of the foregoing, including all goods used or consumed in Debtor's business, and also all goods of said description that are in transit, and all returned, rejected goods of said description and all documents (whether or not negotiable) relating thereto; and

(d)    any and all of Debtor's rights to payments for goods sold or leased or for services rendered whether or not evidenced by instruments or chattel paper and whether or not earned by performance, including without limitation all accounts, accounts receivable, instruments, chattel paper, any other obligations or Indebtedness owed to the Debtor from whatever source arising, all rights of Debtor to receive any payments in money or in kind, and further including without limitation all right, title and interest in and to any and all goods, and/or inventory which give rise to any of the foregoing, and any security for any of the foregoing, and any cash or non-cash proceeds thereof, whether now existing or hereafter arising; and

(e)    all of Debtor's other tangible or intangible personal property of every type or nature not described above, including without limitation, all present and future contract rights (including without limitation any and all rights of Debtor as lessor or lessee under any real property or equipment leases arising from time to time), patents, trademarks, trade names (including Debtor's corporate name and all assumed names), trade secrets, copyright materials, goodwill, computer programs, customer lists, business records, licenses, notes, money, instruments, bills, drafts, chattel paper, acceptances, general intangibles, choses in action, rights to tax refunds, and all debts, obligations and liabilities in whatever form, owing to Debtor from any person, firm or corporation, whether now existing or hereafter arising, now or hereafter received by or belonging or owing to Debtor, and all guaranties and security therefor, all of Debtor's rights as an unpaid vendor or lienor, including the rights of stoppage in transit, replevin and reclamation, and all monies, securities and other property (and any proceeds thereof), now or hereafter held or received by or in transit to the Secured Party from Debtor, whether for safekeeping, pledge, custody, transmission, collection or otherwise and all credits and balances of Debtor at any time existing with the Secured Party.

(f)    Commercial tort claim(s) described as follows: [DESCRIBE SPECIFICALLY]

(g)    other: _____ .

i:\office\shared\loandocs\uccscha.doc – Revised 7/1/2001

# Maine Secretary of State



# Uniform Commercial Code
# Electronic Filing Acknowledgement

## Filing Information:

**UCC-3 File Number:** 2060001797919-61
**Associated UCC-1:** 2010001430401
**Type of Transaction:** Continuation, Amendment (Secured Party Information)
**UCC-3 Filing Date and Time:** 05/08/2006 at 04:05:23 PM
**UCC-1 Filing Expiration Date:** 09/07/2006
**New Expiration Date:** 09/07/2011

## Debtor Information:

MADAWASKA HARDSCAPE PRODUCTS INC
222 RIVERSIDE STREET
PORTLAND, ME USA 04103
Organization ID: 19990235D
Type of Organization: CORP
Jurisdiction: ME

## Secured Party Information:

TD BANKNORTH, N.A.
ONE PORTLAND SQUARE
PO BOX 9540
PORTLAND, ME USA 04112-9540

## Authorizing Party of Amendment:

PEOPLES HERITAGE BANK NA

# UCC FINANCING STATEMENT AMENDMENT
FOLLOW INSTRUCTIONS (front and back) CAREFULLY

A. NAME & PHONE OF CONTACT AT FILER [optional]

Phone (800) 331-3282    Fax (818) 662-4141

B. SEND ACKNOWLEDGEMENT TO (Name and Mailing Address)    13700 TD BANK N.A -C

CT Lien Solutions
P O Box 29071
Glendale, CA 91209-9071

28416822

MEME

**Maine Secretary of State**

**FILE #:**

**2110002072106-52**

Filing Date & Time:
05/25/2011  10:34am

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

| 1a. INITIAL FINANCING STATEMENT FILE # | 1b. This FINANCING STATEMENT AMENDMENT is |
|---|---|
| 2010001430401  07-SEP-2001  SS  ME | to be filed [for record] (or recorded) in the REAL ESTATE RECORDS |

2. ☐ TERMINATION: Effectiveness of the Financing Statement identified above is terminated with respect to security interest(s) of the Secured Party authorizing this Termination Statement.

3. ☐ CONTINUATION: Effectiveness of the Financing Statement identified above with respect to the security interest(s) of the Secured Party authorizing this Continuation Statement is continued for the additional period provided by applicable law

4. ☐ ASSIGNMENT (full or partial) Give name of assignee in item 7a or 7b and address of assignee in item 7c, and also give name of assignor in item 9

5. AMENDMENT (PARTY INFORMATION) This Amendment affects ☐ Debtor or ☒ Secured Party of record Check only one of these two boxes

Also check one of the following three boxes and provide appropriate information in items 6 and/or 7

☒ CHANGE name and/or address Give current record name in item 6a or 6b, also give new name (if name change) in item 7a or 7b and/or new address (if address change) in item 7c.   ☐ DELETE name Give record name to be deleted in item 6a or 6b.   ☐ ADD name Complete item 7a or 7b, and also item 7c, also complete items 7d-7g (if applicable)

6. CURRENT RECORD INFORMATION

| 6a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| TD BANKNORTH, N A | | | |
| **OR** 6b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |

7. CHANGED (NEW) OR ADDED INFORMATION

| 7a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| TD Bank, N A. as successor by merger to TD BANKNORTH, N A | | | |
| **OR** 7b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |

| 7c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 1701 Route 70 East | Cherry Hill | NJ | 08034 | USA |

| 7d. SEE INSTRUCTION | ADD'L INFO RE ORGANIZATION DEBTOR | 7e. TYPE OF ORGANIZATION | 7f. JURISDICTION OF ORGANIZATION | 7g. ORGANIZATIONAL ID #, if any   ☐ NONE |
|---|---|---|---|---|

8. AMENDMENT (COLLATERAL CHANGE): check only one box.

Describe collateral ☐ deleted or ☐ added, or give entire ☐ restated collateral description, or describe collateral ☐ assigned

9. NAME OF SECURED PARTY OF RECORD AUTHORIZING THIS AMENDMENT (name of assignor, if this is an Assignment) If this is an Amendment authorized by a Debtor which adds collateral or adds the authorizing Debtor, or if this is a Termination authorized by a Debtor, check here ☐ and enter name of DEBTOR authorizing this Amendment

| 9a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| TD BANKNORTH, N.A | | | |
| **OR** 9b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |

10. OPTIONAL FILER REFERENCE DATA
28416822  Debtor Name: MADAWASKA HARDSCAPE PRODUCTS, INC.  7300  1520330001  Rel# 7324

FILING OFFICE COPY - NATIONAL UCC FINANCING STATEMENT AMENDMENT (FORM UCC3) (REV 05/22/02)

Prepared by CT Lien Solutions, P.O. Box 29071
Glendale, CA 91209-9071 Tel (800) 331-3282

# UCC FINANCING STATEMENT AMENDMENT

FOLLOW INSTRUCTIONS (front and back) CAREFULLY

**A NAME & PHONE OF CONTACT AT FILER [optional]**
Phone (800) 331-3282       Fax (818) 662-4141

**B SEND ACKNOWLEDGEMENT TO  (Name and Mailing Address)**   13700 TD BANK N A -C

CT Lien Solutions                    28416740
P.O. Box 29071
Glendale, CA 91209-9071              MEME

**Maine Secretary of State**

**FILE #:**

**2110002072113-40**

**Filing Date & Time:**
05/25/2011  10:34am

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

**1a. INITIAL FINANCING STATEMENT FILE #**
20100014304 01   07-SEP-2001  SS  ME

1b [ ] This FINANCING STATEMENT AMENDMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS

**2.** [ ] **TERMINATION**   Effectiveness of the Financing Statement identified above is terminated with respect to security interest(s) of the Secured Party authorizing this Termination Statement

**3.** [X] **CONTINUATION**   Effectiveness of the Financing Statement identified above with respect to the security interest(s) of the Secured Party authorizing this Continuation Statement is continued for the additional period provided by applicable law

**4.** [ ] **ASSIGNMENT** (full or partial)  Give name of assignee in item 7a or 7b and address of assignee in item 7c, and also give name of assignor in item 9

**5. AMENDMENT (PARTY INFORMATION)** This Amendment affects [ ] Debtor or [ ] Secured Party of record  Check only one of these two boxes.
Also check one of the following three boxes and provide appropriate information in items 6 and/or 7.
[ ] CHANGE name and/or address  Give current record name in item 6a or 6b, also give new name (if name change) in item 7a or 7b and/or new address (if address change) in item 7c
[ ] DELETE name  Give record name to be deleted in item 6a or 6b
[ ] ADD name  Complete item 7a or 7b  and also item 7c, also complete items 7d-7g (if applicable)

**6  CURRENT RECORD INFORMATION:**

| 6a  ORGANIZATIONS NAME | | | |
|---|---|---|---|
| OR | | | |
| 6b  INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |

**7. CHANGED (NEW) OR ADDED INFORMATION:**

| 7a  ORGANIZATIONS NAME | | | |
|---|---|---|---|
| OR | | | |
| 7b  INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
| 7c  MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |

| 7d SEE INSTRUCTION | ADD'L INFO RE ORGANIZATION DEBTOR | 7e  TYPE OF ORGANIZATION | 7f JURISDICTION OF ORGANIZATION | 7g  ORGANIZATIONAL ID #, if any |
|---|---|---|---|---|
| | | | | [ ] NONE |

**8. AMENDMENT (COLLATERAL CHANGE):** check only one box.
Describe collateral [ ] deleted or [ ] added, or give entire [ ] restated collateral description, or describe collateral [ ] assigned

**9  NAME OF SECURED PARTY OF RECORD AUTHORIZING THIS AMENDMENT** (name of assignor, if this is an Assignment)  If this is an Amendment authorized by a Debtor which adds collateral or adds the authorizing Debtor, or if this is a Termination authorized by a Debtor, check here [ ]  and enter name of DEBTOR authorizing this Amendment

| 9a  ORGANIZATIONS NAME | | | |
|---|---|---|---|
| PEOPLES HERITAGE BANK NA | | | |
| OR | | | |
| 9b  INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |

**10 OPTIONAL FILER REFERENCE DATA**
28416740  Debtor Name: MADAWASKA HARDSCAPE PRODUCTS, INC. 7300  1520330001  Ref# 7324

FILING OFFICE COPY - NATIONAL UCC FINANCING STATEMENT AMENDMENT (FORM UCC3) (REV 05/22/02)
Prepared by CT Lien Solutions  P O Box 29071
Glendale, CA 91209-9071 Tel (800) 331-3282

# UCC FINANCING STATEMENT

FOLLOW INSTRUCTIONS (front and back) CAREFULLY

2001 SEP 7 8:4

1430402

**A. NAME & PHONE OF CONTACT AT FILER [optional]**
Kimberly N. Baker          207-761-8649

**B. SEND ACKNOWLEDGMENT TO:  (Name and Address)**

Kimberly N. Baker
Peoples Heritage Bank, N.A.
One Portland Square
P.O. Box 9540
Portland, Maine 04112-9540

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

**1. DEBTOR'S EXACT FULL LEGAL NAME** - insert only one debtor name (1a or 1b) - do not abbreviate or combine names

| 1a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| Madawaska Hardscape Products, Inc. | | | | |

| 1b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | | SUFFIX |
|---|---|---|---|---|

| 1c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 222 Riverside Street | Portland | ME | 04103 | USA |

| 1d. TAX ID #:  SSN OR EIN | ADD'L INFO RE ORGANIZATION DEBTOR | 1e. TYPE OF ORGANIZATION | 1f. JURISDICTION OF ORGANIZATION | 1g. ORGANIZATIONAL ID #, if any |
|---|---|---|---|---|
| | | Business-Corp | Maine | 19990235 D |

**2. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME** - insert only one debtor name (2a or 2b) - do not abbreviate or combine names     ☐ NONE

| 2a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|

| 2b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | | SUFFIX |
|---|---|---|---|---|

| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|

| 2d. TAX ID #:  SSN OR EIN | ADD'L INFO RE ORGANIZATION DEBTOR | 2e. TYPE OF ORGANIZATION | 2f. JURISDICTION OF ORGANIZATION | 2g. ORGANIZATIONAL ID #, if any |
|---|---|---|---|---|

**3. SECURED PARTY'S NAME** (or NAME of TOTAL ASSIGNEE of ASSIGNOR S/P) - insert only one secured party name (3a or 3b)     ☐ NONE

| 3a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| Peoples Heritage Bank, N.A. | | | | |

| 3b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | | SUFFIX |
|---|---|---|---|---|

| 3c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| One Portland Square     P.O. Box 9540 | Portland | ME | 04112-9540 | USA |

**4. This FINANCING STATEMENT covers the following collateral:**

A 1998 Daewoo G25 Fork Lift
Vin# 1208676

**5. ALTERNATIVE DESIGNATION [if applicable]:**  ☐ LESSEE/LESSOR  ☐ CONSIGNEE/CONSIGNOR  ☐ BAILEE/BAILOR  ☐ SELLER/BUYER  ☐ AG. LIEN  ☐ NON-UCC FILING

**6.** This FINANCING STATEMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS.    Attach Addendum [if applicable]

**7.** Check to REQUEST SEARCH REPORT(s) on Debtor(s) [ADDITIONAL FEE] [optional]    ☐ All Debtors  ☐ Debtor 1  ☐ Debtor 2

**8. OPTIONAL FILER REFERENCE DATA**
Secretary of State Maine    August 29, 2001

FILING OFFICE COPY — NATIONAL UCC FINANCING STATEMENT (FORM UCC1) (REV. 07/29/98)

# UCC FINANCING STATEMENT AMENDMENT
FOLLOW INSTRUCTIONS (front and back) CAREFULLY

A NAME & PHONE OF CONTACT AT FILER [optional]

Phone (800) 331-3282        Fax (818) 662-4141

B SEND ACKNOWLEDGEMENT TO (Name and Mailing Address)    13700 TD BANK N A -C

CT Lien Solutions                **28417001**
P.O Box 29071
Glendale, CA 91209-9071            **MEME**

**Maine Secretary of State**

FILE #:

**2110002072107-63**

Filing Date & Time:
05/25/2011  10:34am

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

| 1a INITIAL FINANCING STATEMENT FILE # | 1b This FINANCING STATEMENT AMENDMENT is |
|---|---|
| 2010001430402  07-SEP-2001  SS  ME | ☐ to be filed [for record] (or recorded) in the REAL ESTATE RECORDS |

2. ☐ **TERMINATION:**  Effectiveness of the Financing Statement identified above is terminated with respect to security interest(s) of the Secured Party authorizing this Termination Statement

3. ☐ **CONTINUATION:**  Effectiveness of the Financing Statement identified above with respect to the security interest(s) of the Secured Party authorizing this Continuation Statement is continued for the additional period provided by applicable law

4. ☐ **ASSIGNMENT** (full or partial) Give name of assignee in item 7a or 7b and address of assignee in 7c, and also give name of assignor in item 9

5. **AMENDMENT (PARTY INFORMATION)** This Amendment affects ☐ Debtor or ☒ Secured Party of record  Check only **one** of these two boxes.
Also check **one** of the following three boxes **and** provide appropriate information in items 6 and/or 7

☒ CHANGE name and/or address  Give current record name in item 6a or 6b; also give new name (if name change) in item 7a or 7b and/or new address (if address change) in item 7c | ☐ DELETE name  Give record name to be deleted in item 6a or 6b | ☐ ADD name  Complete item 7a or 7b, and also item 7c; also complete items 7d-7g (if applicable)

6. **CURRENT RECORD INFORMATION:**

| 6a ORGANIZATION'S NAME |
|---|
| TD BANKNORTH, N.A. |

OR

| 6b INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|
| | | | |

7. **CHANGED (NEW) OR ADDED INFORMATION:**

| 7a ORGANIZATION'S NAME |
|---|
| TD Bank, N A. as successor by merger to TD BANKNORTH, N.A |

OR

| 7b INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|
| | | | |

| 7c MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 1701 Route 70 East | Cherry Hill | NJ | 08034 | USA |

| 7d SEE INSTRUCTION | ADD'L INFO RE ORGANIZATION DEBTOR | 7e TYPE OF ORGANIZATION | 7f JURISDICTION OF ORGANIZATION | 7g ORGANIZATIONAL ID #, if any | ☐ NONE |
|---|---|---|---|---|---|

8. **AMENDMENT (COLLATERAL CHANGE)** check only **one** box

Describe collateral ☐ deleted or ☐ added, or give entire ☐ restated collateral description, or describe collateral ☐ assigned

9. **NAME OF SECURED PARTY OF RECORD AUTHORIZING THIS AMENDMENT** (name of assignor, if this is an Assignment) If this is an Amendment authorized by a Debtor which adds collateral or adds the authorizing Debtor, or if this is a Termination authorized by a Debtor, check here ☐ and enter name of DEBTOR authorizing this Amendment

| 9a ORGANIZATION'S NAME |
|---|
| TD BANKNORTH, N A |

OR

| 9b INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|
| | | | |

10 OPTIONAL FILER REFERENCE DATA
28417001  Debtor Name. MADAWASKA HARDSCAPE PRODUCTS, INC.  7300  1520330001  Rel #7324

FILING OFFICE COPY - NATIONAL UCC FINANCING STATEMENT AMENDMENT (FORM UCC3) (REV 05/22/02)

Prepared by CT Lien Solutions  P O Box 29071
Glendale, CA  91209-9071 Tel (800) 331-3282

# UCC FINANCING STATEMENT AMENDMENT

**FOLLOW INSTRUCTIONS (front and back) CAREFULLY**

A. NAME & PHONE OF CONTACT AT FILER [optional]

Phone (800) 331-3282    Fax (818) 662-4141

B. SEND ACKNOWLEDGEMENT TO   (Name and Mailing Address)   13700 TD BANK N A -C

CT Lien Solutions          28416926
P.O. Box 29071
Glendale, CA 91209-9071    MEME

**Maine Secretary of State**

FILE #:

**2110002072114-51**

Filing Date & Time:
05/25/2011  10:34am

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1a. INITIAL FINANCING STATEMENT FILE #

2010001430402  07-SEP-2001  SS  ME

1b. ☐ This FINANCING STATEMENT AMENDMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS

2. ☐ **TERMINATION:** Effectiveness of the Financing Statement identified above is terminated with respect to security interest(s) of the Secured Party authorizing this Termination Statement

3. ☒ **CONTINUATION:** Effectiveness of the Financing Statement identified above with respect to the security interest(s) of the Secured Party authorizing this Continuation Statement is continued for the additional period provided by applicable law

4. ☐ **ASSIGNMENT (full or partial)** Give name of assignee in item 7a or 7b and address of assignee in 7c, and also give name of assignor in item 9

5. **AMENDMENT (PARTY INFORMATION)** This Amendment affects ☐ Debtor or ☐ Secured Party of record Check only one of these two boxes.

Also check one of the following three boxes and provide appropriate information in items 6 and/or 7

☐ CHANGE name and/or address Give current record name in item 6a or 6b, also give new name (if name change) in item 7a or 7b and/or new address (if address change) in item 7c

☐ DELETE name Give record name to be deleted in item 6a or 6b

☐ ADD name Complete item 7a or 7b and also item 7c, also complete items 7d-7g (if applicable)

6. CURRENT RECORD INFORMATION

| 6a ORGANIZATION'S NAME | | | |
|---|---|---|---|

OR

| 6b INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|

7. CHANGED (NEW) OR ADDED INFORMATION.

| 7a ORGANIZATION'S NAME | | | |
|---|---|---|---|

OR

| 7b INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|

| 7c MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|

| 7d SEE INSTRUCTION | ADD'L INFO RE ORGANIZATION DEBTOR | 7e TYPE OF ORGANIZATION | 7f JURISDICTION OF ORGANIZATION | 7g ORGANIZATIONAL ID #, if any |
|---|---|---|---|---|

8. AMENDMENT (COLLATERAL CHANGE): check only one box.

Describe collateral ☐ deleted or ☐ added, or give entire ☐ restated collateral description, or describe collateral ☐ assigned   ☐ NONE

9 NAME of SECURED PARTY of RECORD AUTHORIZING THIS AMENDMENT (name of assignor, if this is an Assignment) If this is an Amendment authorized by a Debtor which adds collateral or adds the authorizing Debtor, or if this is a Termination authorized by a Debtor, check here ☐ and enter name of DEBTOR authorizing this Amendment

| 9a ORGANIZATION'S NAME | | | |
|---|---|---|---|
| PEOPLES HERITAGE BANK NA | | | |

OR

| 9b INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|

10 OPTIONAL FILER REFERENCE DATA

28416926 Debtor Name: MADAWASKA HARDSCAPE PRODUCTS, INC. 7300  1520330001  Rel #7324

FILING OFFICE COPY - NATIONAL UCC FINANCING STATEMENT AMENDMENT (FORM UCC3) (REV 05/22/02)

Prepared by CT Lien Solutions  P.O. Box 29071
Glendale, CA 91209-9071 Tel (800) 331-3282

## UCC FINANCING STATEMENT

FOLLOW INSTRUCTIONS (front and back) CAREFULLY

**A. NAME & PHONE OF CONTACT AT FILER** (optional)
Jim Lajoie 828-7574

**B. SEND ACKNOWLEDGMENT TO:** (Name and Address)

Banknorth, N.A.
One Portland Sq.
P.O. Box 9540
Portland, ME  04112-9540

**FILE #:**

**2020001547359-58**

Filing Date & Time:
08/21/2002  12:00pm

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

**1. DEBTOR'S EXACT FULL LEGAL NAME** - Insert only one debtor name (1a or 1b) - do not abbreviate or combine names

| | | | | |
|---|---|---|---|---|
| **1a. ORGANIZATION'S NAME** Madawaska Hardscape Products, Inc. | | | | |

| 1b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | | SUFFIX |
|---|---|---|---|---|

| 1c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 222 Riverside Street | Portland | ME | 04103 | |

| 1d. TAX ID #:  SSN OR EIN | ADD'L INFO RE ORGANIZATION DEBTOR | 1e. TYPE OF ORGANIZATION | 1f. JURISDICTION OF ORGANIZATION | 1g. ORGANIZATIONAL ID #, if any |
|---|---|---|---|---|
| | | S- Corp | Maine | 19990235 D    ☐ NONE |

**2. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME** - Insert only one debtor name (2a or 2b) - do not abbreviate or combine names

| | | | | |
|---|---|---|---|---|
| **2a. ORGANIZATION'S NAME** | | | | |

| 2b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | | SUFFIX |
|---|---|---|---|---|

| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|

| 2d. TAX ID #:  SSN OR EIN | ADD'L INFO RE ORGANIZATION DEBTOR | 2e. TYPE OF ORGANIZATION | 2f. JURISDICTION OF ORGANIZATION | 2g. ORGANIZATIONAL ID #, if any |
|---|---|---|---|---|
| | | | | ☐ NONE |

**3. SECURED PARTY'S NAME** (or NAME of TOTAL ASSIGNEE of ASSIGNOR S/P) - Insert only one secured party name (3a or 3b)

| | | | | |
|---|---|---|---|---|
| **3a. ORGANIZATION'S NAME** Banknorth, N.A. | | | | |

| 3b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | | SUFFIX |
|---|---|---|---|---|

| 3c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| P.O. Box 9540 | Portland | ME | 04112-9540 | |

**4.** This FINANCING STATEMENT covers the following collateral:

See Attached Schedule A attached hereto and made a part hereof

(1)

| 5. ALTERNATIVE DESIGNATION (if applicable): | ☐ LESSEE/LESSOR | ☐ CONSIGNEE/CONSIGNOR | ☐ BAILEE/BAILOR | ☐ SELLER/BUYER | ☐ AG. LIEN | ☐ NON-UCC FILING |
|---|---|---|---|---|---|---|
| 6. ☐ This FINANCING STATEMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS.    Attach Addendum [if applicable] | | | 7. Check to REQUEST SEARCH REPORT(S) on Debtor(s) [ADDITIONAL FEE] [optional] | | All Debtors | ☐ Debtor 1  ☐ Debtor 2 |
| 8. OPTIONAL FILER REFERENCE DATA Secretary of State | | | | | | |

FILING OFFICE COPY — NATIONAL UCC FINANCING STATEMENT (FORM UCC1) (REV. 07/29/98)

## SCHEDULE A
### UCC-1 FINANCING STATEMENT

**DEBTOR:**    <u>Madawaska Hardscape Products, Inc.</u>

**SECURED PARTY:**    BANKNORTH, N.A.

**DATE:**    <u>Augusta   , 2002</u>

Debtor hereby grants to the Secured Party a present and continuing security interest in and valid lien on all of the Debtor's property described below, together with any and all additions and accessions thereto, replacements, proceeds (including without limitation insurance proceeds) and products thereof, and substitutions therefor, wherever the same may be located and whether now existing or hereafter arising or acquired (hereinafter referred to collectively as the "Collateral"):

(g) other: <u>2003 Kenworth T800 Vin # 1NKDXUEX63J706185, 2002 Moffett Mounty Forklift Model # M5000 Serial # B22361,</u>
<u>Taskmaster Truck Body Model TM 24096, Serial # V47069.1.</u>

i:\office\shared\loandocs\uccscha.doc - Revised 1/1/2002



# MAINE VALUATION COMPANY
### COMMERCIAL REAL ESTATE APPRAISAL, REVIEW, AND CONSULTING

March 7, 2012

Mark L. Plourde, MAI
Joan M. Anthony, CPA
Donald P. Bamman, SRA
Charles D. Cragin, ASA
Derek A. Hanley
Paul C. Linehan, MAI
Scott G. McMullin, MAI
Brendan M. Powers
Edward J. Valena
Jennifer L. Vincent
Jon Wales

Mr. James Shackley, VP
Commercial Appraisal Department
TD Bank, N.A.
P.O. Box 9540
Portland, Maine 04112

Re:      Summary Appraisal Report of:
         Madawaska Brick-Stone
         222 Riverside Street
         Portland, Maine 04103
         TD Bank, N.A. File #

Dear Mr. Shackley:

We have prepared and present you herewith this Summary Appraisal Report. The purpose of this appraisal was to develop our professional opinion of the Market Value of the Fee Simple interest in the real property referenced above as of the effective date of value. The intended use of this appraisal report is for loan underwriting and-or credit decisions by TD Bank, N.A., and-or participants. Any other reader or use is not intended.

The Scope of Work for this assignment included consideration of all three of the traditional approaches to value, namely the Cost Approach, the Sales Comparison Approach, and the Income Capitalization Approach. Based upon communications with the Client and evaluation of the appraisal problem to be solved, the applicable methods and techniques deemed necessary by the appraiser for credible results were developed and are presented in this report.

The analyses, opinions, and conclusions contained within this report are based upon primary market research, interviews with knowledgeable participants, and market data available to the appraiser as of the date of value.   The accompanying report has been prepared in accordance with the *Uniform Standards of Professional Appraisal Practice* of the Appraisal Foundation, the *Code of Professional Ethics* and the *Standards of Professional Appraisal Practice* of the Appraisal Institute, and *FIRREA* (the Financial Institutions Reform Recovery and Enforcement Act).

The opinions of value presented in this report are made subject to General Assumptions and Limiting Conditions, and also to certain Extraordinary Assumptions and/or Hypothetical Conditions when applicable.  The client and intended users of this appraisal report are urged to review and consider the impact of each assumption and each condition prior to making any decisions based on the results of this appraisal and report.

---

MVC Project File # 2012125bmp



TD Bank, N.A.
March 7, 2012

Based upon the market data and analyses developed within the Scope of Work performed for this appraisal assignment, and subject to all of the General and Extraordinary Assumptions, Limiting and Hypothetical Conditions stated herein, it is our professional opinion that the Market Value of the Fee Simple interest of the subject property, as of February 23, 2012    was –

$430,000

**FOUR HUNDRED THIRTY THOUSAND DOLLARS**

Thank you for this opportunity to provide professional valuation services in this matter. Upon review, should you have any questions or require further clarification, please contact Maine Valuation Company at 207-642-3336, or via Email at info@mainevaluation.com.

Respectfully submitted,
MAINE VALUATION COMPANY

*Brendan M. Powers*

Brendan M. Powers
Maine Certified General Appraiser #CG-2982

*Mark L. Plourde*

Mark L. Plourde, MAI
Maine Certified General Appraiser #CG-258

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF SOUTH CAROLINA

IN RE:                                    )
                                          )        CHAPTER 11
MADAWASKA HARDSCAPE                        )
PRODUCTS, INC.,                           )        Case No. 12-01093-jw
                                          )

## CERTIFICATION OF FACTS

In the above-entitled proceeding, in which relief is sought from the automatic stay provided by 11 U.S.C. § 362, I do hereby certify to the best of my knowledge the following:

(1)    <u>Nature of Movant's Interest</u>.

TD Bank, N.A. holds a perfected security interest in all business assets of Debtor, including but not limited to the following:
- All deposit accounts (Schedule B-2).
- All accounts receivable (Schedule B-16).
- The following vehicles/machinery (Schedule B-25):
  - 1998 Utility Flatbed Trailer.
  - 2001 Reitnour Flatbed Trailer.
  - Princeton PB50, Piggyback Forklift.
  - Teledyne D5000, Piggyback Forklift.
  - Moffett M5000, Piggyback Forklift.
  - Moffett M5000, Piggyback Forklift.
  - Yale GLP060 Forktrucks (2).
  - Daewoo G30P-3 Forktrucks (2).
  - JCB 210-S, Loader/Backhoe.
  - Volvo L35B-210 Compact Wheel Loader.
- All office equipment (Schedule B-28).
- All machinery and equipment (Schedule B-29).
- All inventory (Schedule B-30).
- All other personal property (Schedule B-35).

(2)    <u>Brief Description of Security Agreement, copy attached (if applicable)</u>.

See Security Agreements and UCC Financing Statements attached to 362 Motion.

(3)    <u>Description of Property Encumbered by Stay (include serial number, lot and block number, etc.)</u>.

See Exhibits attached to 362 Motion.

1

(4)    <u>Basis for Relief (property not necessary for reorganization, debtor has no equity, property not property of estate, etc.) include applicable subsection of 11 U.S.C. § 362)</u>.

No equity; no adequate protection; no cash collateral order in place; no payment; cause.

(5)    <u>Prior Adjudication by Other Courts, copy attached (Decree of Foreclosure, Order for Possession, Levy of Execution, etc., if applicable)</u>.

Action was pending in the State of Maine at the time of the filing of the Chapter 11.

(6)    <u>Valuation of Property, copy of Valuation attached (Appraisal, Blue Book, etc.)</u>:

Fair Market Value                                             $376,048.85

| | | |
|---|---|---|
| Bank Acct.: | $11,653.85 | |
| Accts. Rec.: | $15,000.00 | |
| Veh./Mach.: | $103,000.00 | |
| Ofc. Equip.: | $9,350.00 | |
| Equip.: | $36,545.00 | |
| Inventory: | $200,000.00 | |
| Sign: | $500.00 | |

| | |
|---|---|
| Liens (Mortgages) | $596,456.12[1] |
| | $210,584.81[2] |
| Equity Before Exemption | $0.00 |
| Debtor's Exemption (-) | $0.00 |
| Net Equity | $0.00 |

Source/Basis of Value:  Debtor's schedules.[3]

(7)    <u>Amount of Debtor's Estimated Equity (using figures from paragraph 6, supra)</u>.

0.00

(8)    <u>Month and Year in Which First Direct Post-petition Payment Came Due to Movant (if applicable)</u>.

---

[1] Plus interest, fees, and costs from February 22, 2012.
[2] Plus interest, fees, and costs from February 22, 2012.
[3] Debtor is in possession of the collateral.  Movant has no basis/source of evaluating the value of the collateral other than Debtor's schedules.

2

N/A – the debt matured on October 30, 2009.

(9)    (a)    <u>For Movant/Lienholder (if applicable): List or attach a list of all post-petition payments received directly from debtor(s), clearly showing date received, amount, and month and year for which each such payment was applied.</u>

None.

(b)    <u>For Objecting Party (if applicable): List or attach a list of all post-petition payments included in the Movant's list from (a) above which objecting party disputes as having been made.    Attach written proof of such payment(s) or a statement as to why such proof is not available at the time of filing this objection.</u>

N/A.

(10)    <u>Month and Year for Which Post-petition Account of Debtor(s) is Due as of the Date of this Motion:</u>

N/A – the debt matured on October 30, 2009.

/s/ James H. Cassidy, Federal Ct. ID# 73
/s/ Dana M. Lahey, Federal Ct. ID #8018
Roe Cassidy Coates & Price, PA
Attorneys for Creditor TD Bank, N.A.
Post Office Box 10529
Greenville, SC  29603
Phone: 864-349-2600
Fax: 864-349-0303
jcassidy@roecassidy.com
dlahey@roecassidy.com

Date: April 4, 2012

3

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF SOUTH CAROLINA

IN RE:                                    )
                                          )        CHAPTER 11
MADAWASKA HARDSCAPE                       )
PRODUCTS, INC.,                           )        Case No. 12-01093-jw

CERTIFICATE OF SERVICE

IT IS HEREBY CERTIFIED that copies of Creditor TD Bank, N.A.'s Notice of

Motion for Relief From Stay, Motion for Relief From Stay,  Certification of Fact, and this

Certificate of Service were served upon the within parties by depositing copies of the

same in the United States Mail, with sufficient postage annexed thereto, addressed as

follows:

Madawaska Hardscape Products, Inc.          Robert A. Pohl
3146 Wade Hampton Boulevard                 Stodghill Law Firm Chartered
Taylors, SC 29687                           201 East McBee Avenue, Suite 300A
                                            Greenville, SC 29601

U.S. Trustee
US Trustee's Office                         20 Largest Unsecured Creditors
Strom Thurmond Federal Bldg.                (See Attached Exhibit A)
1835 Assembly St., Suite 953
Columbia, SC 29201

on April 4, 2012.


By:    _____
               Donna D. Allen, Paralegal to:
               Dana M. Lahey, #8018
               James H. Cassidy, #73
               Roe Cassidy Coates & Price, P.A.
               P. O. Box 10529
               Greenville, S.C. 29603
               864-349-2600
               dlahey@roecassidy.com
               jcassidy@roecassidy.com
               Attorneys for Creditor TD Bank, N.A.

B4 (Official Form 4) (12/07)

# United States Bankruptcy Court
## District of South Carolina

In re    **Madawaska Hardscape Products, Inc.**

Debtor(s)

Case No.

Chapter    **11**

## LIST OF CREDITORS HOLDING 20 LARGEST UNSECURED CLAIMS

Following is the list of the debtor's creditors holding the 20 largest unsecured claims. The list is prepared in accordance with Fed. R. Bankr. P. 1007(d) for filing in this chapter 11 [or chapter 9] case. The list does not include (1) persons who come within the definition of "insider" set forth in 11 U.S.C. § 101, or (2) secured creditors unless the value of the collateral is such that the unsecured deficiency places the creditor among the holders of the 20 largest unsecured claims. If a minor child is one of the creditors holding the 20 largest unsecured claims, state the child's initials and the name and address of the child's parent or guardian, such as "A.B., a minor child, by John Doe, guardian." Do not disclose the child's name. See 11 U.S.C. § 112; Fed. R. Bankr. P. 1007(m).

| (1)<br>Name of creditor and complete mailing address including zip code | (2)<br>Name, telephone number and complete mailing address, including zip code, of employee, agent, or department of creditor familiar with claim who may be contacted | (3)<br>Nature of claim (trade debt, bank loan, government contract, etc.) | (4)<br>Indicate if claim is contingent, unliquidated, disputed, or subject to setoff | (5)<br>Amount of claim [if secured, also state value of security] |
|---|---|---|---|---|
| Al's Garden Art<br>P.O. Box 111<br>Colton, CA 92324 | Al's Garden Art<br>P.O. Box 111<br>Colton, CA 92324 | Business Debt | | 8,000.00 |
| Ayers Supply, Inc.<br>2036 Newton Ransom Boulevard<br>Clarks Summit, PA 18411 | Ayers Supply, Inc.<br>2036 Newton Ransom Boulevard<br>Clarks Summit, PA 18411 | Business Debt | | 22,625.51 |
| Bank of America<br>P.O. Box 15710<br>Wilmington, DE 19886-5710 | Bank of America<br>P.O. Box 15710<br>Wilmington, DE 19886-5710 | Business Debt | | 31,545.74 |
| Boyd Stone & Quarries<br>P.O. Box 579<br>Marion, NC 28752 | Boyd Stone & Quarries<br>P.O. Box 579<br>Marion, NC 28752 | Business Debt | | 6,080.00 |
| Filler & Associates<br>P.O. box 4177<br>Portland, ME 04101 | Filler & Associates<br>P.O. box 4177<br>Portland, ME 04101 | Business Debt | | 11,000.00 |
| Fire Rock Products, LLC<br>P.O. Box 272<br>Fairfield, AL 35064 | Fire Rock Products, LLC<br>P.O. Box 272<br>Fairfield, AL 35064 | Business Debt | | 15,657.88 |
| Geo. Schofield Co.<br>488 Madison Avenue<br>Suite 800<br>New York, NY 10022 | Geo. Schofield Co.<br>488 Madison Avenue<br>Suite 800<br>New York, NY 10022 | Business Debt | | 10,358.45 |
| Goria Enterprises<br>Oldcastle Architectural, Inc.<br>P.O. Box 281479<br>Atlanta, GA 30384-1479 | Goria Enterprises<br>Oldcastle Architectural, Inc.<br>P.O. Box 281479<br>Atlanta, GA 30384-1479 | Business Debt | | 116,316.01 |
| Granit Orford<br>10295 Rue Panorama<br>Sherbrooke, QC<br>J1N 0G8 Canada | Granit Orford<br>10295 Rue Panorama<br>Sherbrooke, QC | Business Debt | | 14,978.92 |
| Henri Roy Transport<br>60 Maple Street<br>Stanstead<br>QC J0B 3EO<br>Canada | Henri Roy Transport<br>60 Maple Street<br>Stanstead<br>Canada | Business Debt | | 12,000.00 |

B4 (Official Form 4) (12/07) - Cont.

In re   **Madawaska** Hardscape Products, Inc.
_____
Debtor(s)

Case No. _____

# LIST OF CREDITORS HOLDING 20 LARGEST UNSECURED CLAIMS
## (Continuation Sheet)

| (1)<br>*Name of creditor and complete mailing address including zip code* | (2)<br>*Name, telephone number and complete mailing address, including zip code, of employee, agent, or department of creditor familiar with claim who may be contacted* | (3)<br>*Nature of claim (trade debt, bank loan, government contract, etc.)* | (4)<br>*Indicate if claim is contingent, unliquidated, disputed, or subject to setoff* | (5)<br>*Amount of claim [if secured, also state value of security]* |
|---|---|---|---|---|
| Herb Kilmer & Sons, Inc.<br>P.O. box 129<br>**Kingsley, PA 18826** | Herb Kilmer & Sons, Inc.<br>P.O. box 129<br>**Kingsley, PA 18826** | **Business Debt** | | 8,969.76 |
| Jurgie's Inc.<br>P.O. box 461386<br>**Escondido, CA 92046-1386** | Jurgie's Inc.<br>P.O. box 461386<br>**Escondido, CA 92046-1386** | **Business Debt** | | 8,000.00 |
| Landscaper's Depot, Inc.<br>59 Route 125<br>**Kingston, NH 03848** | Landscaper's Depot, Inc.<br>59 Route 125<br>**Kingston, NH 03848** | **Business Debt** | | 6,281.00 |
| Oldcastle<br>Foster-Southeastern<br>Oldcastle Architectural, Inc.<br>P.O. Box 281479<br>**Atlanta, GA 30384-1479** | Oldcastle Foster-Southeastern<br>Oldcastle Architectural, Inc.<br>P.O. Box 281479<br>Atlanta, GA 30384-1479 | **Business Debt** | | 27,739.11 |
| Pavestone, LLC<br>P.O. Box 930134<br>**Atlanta, GA 31193-0134** | Pavestone, LLC<br>P.O. Box 930134<br>**Atlanta, GA 31193-0134** | **Business Debt** | | 104,766.90 |
| Portland Stone Ware Co., Inc.<br>50 McGrath Road<br>P.O. Box 670<br>**Dracut, MA 01826** | Portland Stone Ware Co., Inc.<br>50 McGrath Road<br>P.O. Box 670<br>Dracut, MA 01826 | **Business Debt** | | 12,216.21 |
| Steve Goodine<br>19 Hinckley Hill Road<br>**Carmel, ME 04419** | Steve Goodine<br>19 Hinckley Hill Road<br>**Carmel, ME 04419** | **Business Debt** | | 176,000.00 |
| Stoney Creek<br>11073 Peach Avenue<br>**Grant, MI 49327** | Stoney Creek<br>11073 Peach Avenue<br>**Grant, MI 49327** | **Business Debt** | | 21,258.53 |
| TD Bank, N.A.<br>P.O. Box 5600<br>Lewiston, ME 04243-5600 | TD Bank, N.A.<br>P.O. Box 5600<br>Lewiston, ME 04243-5600 | **1995 Mack Truck VIN#1M2B212C6S M003332, Moffett Forklift, VIN#B22361, Daewoo Forktruck, VIN#D2-01639, Daewoo Forktruck, VIN#D2-01816, JCB Loader/Backhoe** | Disputed | 595,795.96<br><br>(348,050.00 secured) |
| Transpave, Inc.<br>500 Rue St-Eustache<br>St-Eustache QC J7R 7E7<br>**Canada** | Transpave, Inc.<br>500 Rue St-Eustache<br>St-Eustache QC J7R 7E7<br>**Canada** | **Business Debt** | | 7,025.74 |